**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, MEMBER SOURCE MEDIA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>                Plaintiff,<br><br>     vs.<br><br>**MEMBER SOURCE MEDIA, LLC,** *et al.*,<br><br>                Defendants. | Case No. CV-08-1321 EMC<br><br>**MEMBER SOURCE MEDIA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SECURITY FOR COSTS INCLUDING ATTORNEYS' FEES**<br><br>Date: June 11, 2008<br>Time: 10:30 AM<br>Ctrm: C, 15th Floor |

Case No. CV-08-1321 EMC          **MEMBER SOURCE MEDIA'S MPA IN SUPPORT OF MOT. FOR SECURITY**

# INTRODUCTION

The purpose of CAN-SPAM's security provision, 15 U.S.C. §7706(g)(4), is twofold: First, it serves to protect a defendant from the costs of litigation by ensuring that the defendant will be able to recover its costs and attorneys' fees if it prevails. Second, it discourages plaintiffs from bringing frivolous lawsuits, by requiring them to put their money where their mouth is. Both of these purposes are fully realized in this case.

Plaintiff, ASIS Internet Services ("ASIS") is a CAN-SPAM litigation mill. Over the last couple of years, ASIS has brought eight, nearly identical, CAN-SPAM lawsuits. Despite its aggressive litigation strategy, the Honorable Joseph C. Spero recently ruled that ASIS has **no standing to bring these CAN-SPAM claims**. However, ASIS had already forced settlements from the vast majority of the twenty defendants in that case.

Judge Spero's decision likely precludes ASIS from even bringing this case. Even so, Defendant Member Source Media, LLC ("Member Source") reasonably fears that it will be forced to spend hundreds of thousands of dollars in litigation costs and fees before it can establish ASIS's lack of standing and/or prevail on the merits. Unfortunately, these expenses are sometimes a reality of litigation. This is precisely why Congress enacted the security provision in CAN-SPAM. Because ASIS has no standing to bring this case, and because ASIS has admitted that it is on the brink of bankruptcy, the Court should require ASIS to post a significant security bond.

# BACKGROUND

**1. ASIS's History Of Bringing CAN-SPAM Lawsuits.**

ASIS is a small, struggling ISP based in Eureka, California with a handful of employees and a proportionate number of customers. (Declaration of Henry M. Burgoyne in Support of Motion for Security for Costs Including Attorneys' Fees ("Burgoyne Decl.") ¶4.) A few years ago, ASIS and its attorneys hatched a plan to bring numerous CAN-SPAM lawsuits, based on emails sent to ASIS's former customers—from whom ASIS never received consent to review their emails.[1]

---

[1] AzoogleAds.com, Inc.—a defendant in one of ASIS's previous CAN-SPAM

Case No. CV-08-1321 EMC         1         MEMBER SOURCE MEDIA'S MPA IN
                                            SUPPORT OF MOT. FOR SECURITY

ASIS has now churned out eight CAN-SPAM lawsuits. (*Id.* ¶5-12 & Exs. B-H.) The complaints for the eight lawsuits are nearly identical. ASIS has taken a shell complaint and substituted in different defendants. (*Id.*) And while ASIS has not received a single favorable ruling regarding the merits for any of its eight cases—and in fact, has been found to lack standing to bring CAN-SPAM cases in general—ASIS has managed to scare the majority of the named defendants into quick settlements by the potential costs of litigation.

In the one ASIS case that has been disposed of on the merits, the Honorable Joseph C. Spero dismissed all of ASIS's claims on several grounds. (*Id.* ¶2 & Ex. A.) As an initial matter, Judge Spero found that **ASIS had no standing to bring its claims** because ASIS had not suffered any adverse effect resulting from the alleged unlawful emails, a predicate requirement to bring a CAN-SPAM claim. Moreover, Judge Spero found that even if ASIS did have standing, it could not establish any connection between the sender of the emails and the defendant. (*Id.*) Despite the seemingly preclusive effect of this decision on ASIS's standing, ASIS is still aggressively pursuing its remaining CAN-SPAM cases.

**2. Member Source's Business.**

Member Source is an Internet marketing company, which assists clients such as Blockbuster, Discover Card, and Columbia House in the online promotion of their goods and services. (Declaration of Christopher Sommer in Support of Motion for Security for Costs Including Attorneys' Fees ("Sommer Decl.") ¶2.) Member Source has pioneered online incentivized advertising, where marketers employ advertisements coupled with gifts, such as gift cards. (*Id.*) These advertisements are delivered to consumers through the use of banner ads, pop up ads, and lawful email advertisements. (*Id.* ¶3.) Member Source does not send the vast majority of the emails promoting its clients' goods and

---

cases—raised the issue that ASIS's practice of reviewing its users' emails violates the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq.* While the Court in that case did not address the issue before dismissing ASIS's case, Member Source believes ASIS's actions remain a significant concern.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  services.  (*Id.* ¶4.)  Rather, Member Source enters into arms length contracts with affiliate networks to send out these emails, providing the networks with the creative material to be included in the emails.  (*Id.*) As part of these contracts, the affiliate networks warrant that they will adhere to the law, including the requirements of CAN-SPAM, in their performance under the contract.  (*Id.* ¶5.)

## ARGUMENT

In an action filed under CAN-SPAM, "the court may, in its discretion, require an undertaking for the payment of such action, and assess reasonable costs, including reasonable attorneys' fees against any party."  15 U.S.C. §7706(g)(4).  Moreover, Local Civil Rule 65.1-1 authorizes the Court, "[u]pon demand of any party, where authorized by law and for good cause shown," to "require any party to furnish security for costs which can be awarded against such party in an amount and on such terms as the Court deems appropriate."  Ninth Circuit jurisprudence has also established the inherent power of the Court to require a plaintiff to post security for costs.  *See In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987).

Courts consider several factors in determining whether to require a party to post a bond for costs and fees, including: 1) the financial condition and ability to pay of the party who would post the bond (the "Posting Party"); 2) the merits of the Posting Party's underlying claims; 3) the extent and scope of the Posting Party's anticipated discovery; 4) the legal costs expected to be incurred by the non-Posting Party; and 5) the Posting Party's compliance with past court orders.  *See RLS Associates, LLC v. United Bank of Kuwait PLC*, 464 F.Supp.2d 206, 220 (S.D.N.Y. 2006).  Notwithstanding the foregoing factors, a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond.  *Id.*  In the case at hand, these factors overwhelmingly weigh in favor of requiring ASIS to post a substantial bond to cover the costs and fees that Member Source will incur in defending and dismissing this lawsuit.

ASIS is no stranger to CAN-SPAM litigation.  Nor is ASIS a stranger to CAN-

Kronenberger Burgoyne, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

SPAM's provisions geared to protecting defendants from meritless claims brought by ISPs. In one of ASIS's prior CAN-SPAM cases, a defendant requested that the Court require ASIS to post security to cover the defendant's costs and fees. In addressing this motion, the Honorable Claudia Wilken warned ASIS, "[i]f you had included them in your amended complaint, you better give that some thought and discuss it with your clients because I will not hesitate to award attorneys' fees for [the defendant] if it turns out that they weren't properly included." (Burgoyne Decl. ¶13 & Ex. I.) While Judge Wilken chose to leave ASIS with this stern warning instead of requiring a bond, this occurred before ASIS had brought seven additional, nearly identical cases, and been found to have no standing in the one case resolved on the merits. The Court should not hesitate to require ASIS to post a substantial bond in this case.

### 1. ASIS Is On The Brink Of Bankruptcy.

ASIS's financial condition and ability to pay Member Source's costs and attorneys' fees is a paramount concern in deciding whether to require security. Member Source rightfully has serious concerns about ASIS's solvency. ASIS is a small business with limited assets and revenue. More significantly, on multiple occasions, over the course of a year, counsel for ASIS stated that should ASIS be forced to pay costs and attorneys' fees in the action before Judge Spero, **ASIS would declare bankruptcy**. (Burgoyne Decl. ¶14.) As stated above, ASIS recently lost this case and now faces a significant bill of costs along with a request for attorneys' fees and other monetary sanctions. Because the solvency of ASIS is a paramount concern in deciding whether to require security, ASIS's tenuous financial condition weighs heavily in favor of a requirement for security pursuant to 15 U.S.C. §7706(g)(4).

### 2. ASIS Has No Standing To Bring CAN-SPAM Claims, And Could Not Prove Such Claims Even If It Did Have Standing.

This is not ASIS's first CAN-SPAM case by a long shot. ASIS has brought **seven** other, nearly identical, CAN-SPAM actions over the last couple of years. Like its seven prior CAN-SPAM complaints, ASIS's Complaint here contains unsupported allegations of

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

adverse effects and conspiracy between the defendant and unnamed doe parties. There is no reason to believe the merits of this case are any stronger than ASIS's other cookie-cutter suits.

First and foremost, ASIS almost certainly does not have standing to bring this suit. CAN-SPAM only allows an Internet Access Service ("IAS") to bring an action where it is "adversely affected" by a violation of the statute. ASIS has not, to date, been able to proffer any evidence of an adverse effect—and in fact, may be collaterally stopped from trying to do so. In assessing ASIS's supposed adverse effect in a prior CAN-SPAM case, Judge Spero relied on *Gordon v. Virtumondo*, 2007 WL 1459395 (W.D. Wash. May 15, 2007). In *Gordon*, the court stated, "[n]ot only must CAN-SPAM private plaintiffs allege a particular type of harm, the adverse effect they allege must be significant. To hold otherwise would lead to absurd results." In applying the adverse effect requirement to ASIS, Judge Spero found:

> No reasonable jury could find, based on the undisputed evidence that the [12,000 emails at issue] caused any significant adverse effect to ASIS. While there is some evidence that spam generally has imposed costs on ASIS over the years, there is *no* evidence that the Emails at issue in this action resulted in adverse effects to ASIS: there is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by [ASIS's spam filtering service]) or were the subject of complaints to ASIS' there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Emails. . . . As a result, [ASIS] does not have standing to assert its claims under CAN-SPAM. (emphasis in original) (Burgoyne Decl. ¶2 & Ex. A.)

CAN-SPAM requires that the adverse effects specifically relate to the alleged emails; generalized costs—such as spam filtering services and routine software and hardware upgrades—will not be sufficient to support a CAN-SPAM claim. Regardless ASIS has already admitted—in the case before Judge Spero—that it did not incur any such adverse effects. Moreover, because ASIS selectively segregated the emails at issue from its spam filtering service, it is hard to believe that ASIS could ever attribute any adverse effect to those emails at issue alone. As with its prior cases, ASIS cannot

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

produce any evidence that it has suffered a real and significant harm as a result of the alleged emails. If ASIS had any such evidence, it would have produced it in its previous cases. As such ASIS knows that it does not have standing to bring this case. CAN-SPAM's security provision is designed to protect a defendant from precisely this sort of baseless litigation.

Moreover, like in ASIS's prior CAN-SPAM complaints, ASIS seeks to connect Member Source to the emails at issue by alleging that Member Source engaged in a conspiracy with unnamed parties to send the emails. However, such unfounded allegations of a conspiracy are insufficient to state a CAN-SPAM case. Thus, Judge Spero found: "[t]he evidence cited by ASIS to establish knowledge on [the defendant's] part is entirely speculative." (Burgoyne Decl. ¶2 & Ex. A.) ASIS failed to submit any evidence to establish that the defendant had "made a deliberate choice not to know" that third parties were sending out unlawful emails on its behalf. (*Id.*) Because ASIS has continued to rely on its speculative conspiracy claims to connect defendants to the alleged misconduct, the requirement for security is particularly appropriate here.

**3. ASIS's Prior Sweeping Discovery.**

In its prior CAN-SPAM cases, ASIS has employed extensive—and abusive—discovery. While ostensibly served to flesh out the facts of its cases, the extreme breadth of ASIS's discovery reveals a thinly-guised attempt to identify other parties that it could add as defendants in its CAN-SPAM conspiracy claims. Such discovery not only imposes significant direct expenses on a defendant, but also has collateral effects on a defendant's relationship with business partners. Specifically, ASIS has not only engaged in extensive discovery toward the defendants in its CAN-SPAM cases, but has also propounded significant discovery to numerous third parties who have relationships with these defendants, and are often none too pleased to be receiving burdensome subpoenas.

As a limited example, in *ASIS v. Optin Global, et al.*, ASIS took 11 depositions and propounded 23 interrogatories, 43 requests for admission, and 46 requests for

Case No. CV-08-1321 EMC  6  **MEMBER SOURCE MEDIA'S MPA IN SUPPORT OF MOT. FOR SECURITY**

production, seeking every conceivable document related to Azoogle's business, even where no tangible connection existed to the subject matter of the lawsuit. (Burgoyne Decl. ¶¶15-17 & Exs. J-L.) Perhaps most alarming is that ASIS issued in excess of 120 third party subpoenas to business affiliates of the defendant, in hopes of digging up any dirt. (Burgoyne Decl. ¶18 & Ex. M.) In the vast majority of cases, there was absolutely no connection between the subpoenaed party and the emails at issue in the case. This problem became so troublesome for the defendant, that it was forced to seek a protective order, which the court granted. (*Id.* ¶19 & Ex. N.)

Given ASIS's extensive and inappropriate use of discovery in its prior CAN-SPAM cases, a posting of security is appropriate to ensure that ASIS understands the seriousness of bringing a CAN-SPAM lawsuit.

**4. Member Source Reasonably Expects Significant Costs & Fees.**

Member Source believes that ASIS's lawsuit is frivolous, and it expects to move to dismiss at the motion on the pleadings or summary judgment stage. Nonetheless, Member Source does not underestimate the costs it will likely incur during this process. This calculation is based on the costs incurred by defendants in ASIS's prior cases, caused by ASIS's aggressive discovery and motion practice. As the Court is well aware, the costs of discovery and motion practice can quickly escalate into the hundreds of thousands of dollars. Accordingly, Member Source believes that a conservative estimate of $200,000 is an appropriate value for a security requirement.

**CONCLUSION**

For all of the reasons set forth above, the Court should require ASIS to post a bond in the form of security for costs and fees in the amount of $200,000.

1  Dated: May 6, 2008

        Henry M. Burgoyne, III
        Karl S. Kronenberger
        Jeffrey M. Rosenfeld
        Kronenberger Burgoyne, LLP

By: _____/s/_____
        Jeffrey M. Rosenfeld

Attorneys for Defendant,
MEMBER SOURCE MEDIA, LLC