**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, MEMBER SOURCE MEDIA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**MEMBER SOURCE MEDIA, LLC,** *et al.*,<br><br>    Defendants. | Case No. CV-08-1321 EMC<br><br>**MEMBER SOURCE MEDIA, LLC'S REPLY IN SUPPORT OF MOTION FOR SECURITY**<br><br>Date: June 11, 2008<br>Time: 10:30 AM<br>Ctrm: C, 15th Floor |

Case No. CV-08-1321 EMC                               **MEMBER SOURCE MEDIA'S REPLY IN SUPPORT OF MOT. FOR SECURITY**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    I. The Undisputed Evidence Demonstrates that ASIS Will File For Bankruptcy if it Loses this Case ................................................................................................. 2

    II. ASIS's Argument that it Cannot Be Required to Pay Costs and Attorneys' Fees if its Case Is Dismissed for Lack of Standing Rests on an Obvious and Fundamental Misreading of Federal Law ........................................................ 3

    III. ASIS's CAN-SPAM Litigation History Evidences a Pattern and Practice of Abusive Discovery and Frivolous Motions that Will Drive Member Source's Costs and Fees Well into the Six Digits ......................................................... 4

    IV. ASIS's Merits Argument Contravenes Three Prior Opinions on Standing ....... 7

    V. ASIS Assumes the Merits of its Case and then Slings Mud at Member Source in an Attempt to Bolster its Opposition ............................................................ 8

CONCLUSION ............................................................................................................... 9

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

# TABLE OF AUTHORITIES

*ASIS Internet Services v. Optin Global, Inc.,* No. 05-5124, 2006 WL 1820902, *7 (N.D. Cal. June 30, 2006)..................................................................................................7

*Brosnan v. Alki Mortgage, LLC,* No. 07-4339, 2008 WL 413732, slip. op. (N.D. Cal. Feb. 13, 2008)..................................................................................................7

*Gordon v. Virtumondo, Inc.*, Case No. 06-0204, 2007 WL 1459395 (W.D. Wash. May 15, 2007)..................................................................................................7

*Credit Managers Ass'n of Southern California v. Kennesaw Life and Acc. Ins. Co.*, 25 F.3d 743 (9th Cir. 1994)..................................................................................................3, 4

*Kourtis v. Cameron*, 419 F.3d 989, 995, n.3 (9th Cir. 2005)..................................................7

*Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005)..................................................................................................7

*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998)..................................7

## STATUTES AND RULES

CAN-SPAM, 15 U.S.C. §7706 *et. seq.* ..................................................................*passim*

Federal Rule of Evidence 408 ..................................................................................3

# INTRODUCTION

Plaintiff ASIS Internet Services ("ASIS") admits that it "is not financially able to post a $200,000 cost bond." Nevertheless, ASIS argues that because it isn't "on the brink of bankruptcy," it should be allowed to proceed with this litigation without security. ASIS can't have it both ways: Either ASIS has the financial ability to reimburse Defendant Member Source Media, LLC ("Member Source") for Member Source's certain costs and fees, in which case there is no reason to deny Member Source's motion; or ASIS does not have that financial ability, in which case the relevant test and this Court's judgment that ASIS lacks CAN-SPAM standing all but compel the Court to order security.

ASIS does not argue that $200,000 is an excessive amount of security. Nor could it, since ASIS's history of CAN-SPAM litigation demonstrates a pattern and practice of abusive discovery and frivolous motions that drove the out-of-pocket cost for one defendant to $1.5 million. As a result of its conduct in the prior case involving that defendant (*ASIS v. Optin Global, et al.* No. 05-5124, the "Prior Case"), ASIS currently faces a motion for costs, fees and other sanctions totaling more than $900,000. ASIS repeatedly has represented that if any portion of that amount is awarded, it will declare bankruptcy. There is no reason to believe that ASIS won't attempt the same "If I win, I win, and if I lose, I still win" strategy here.

ASIS attempts to hide behind Judge Wilken's denial in the Prior Case of a motion for security, claiming the requirement of security would chill CAN-SPAM litigation. What ASIS neglects to mention is that Judge Wilken, who denied that motion, specifically warned ASIS that if ASIS "had included [the moving defendant] in your amended complaint, you better give that some thought and discuss it with your clients because I will not hesitate to award attorneys' fees for [the moving defendant] if it turns out that they weren't properly included." (Declaration of Henry M. Burgoyne, III in Support of Member Source Media, LLC's Motion for Security for Costs Including Attorneys' Fees ("Opening Burgoyne Decl.") ¶13 & Ex. I at 16:17-21.) At the time, neither Judge Wilken

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

nor anyone else could foresee that ASIS would be found to lack CAN-SPAM standing . . . or that despite that lack of standing ASIS would file another seven CAN-SPAM lawsuits.

It is difficult to imagine a situation in which security would be more appropriate. To ASIS, litigation is akin to gambling: It files repeated highly speculative lawsuits in the hopes that it will win enough in quick settlements to cover the costs of claims litigated on the merits. It would be entirely unfair to force Member Source to bear the costs of ASIS's gambit, in particular when this Court already has held that ASIS has no standing to even bring CAN-SPAM claims. If Congress didn't intend for a security requirement in a case such as this, it wouldn't have incorporated a security provision into CAN-SPAM. For those and other reasons articulated herein, the Court should grant Member Source's motion.

## ARGUMENT

### I. The Undisputed Evidence Demonstrates that ASIS Will File for Bankruptcy if Member Source Is Entitled to its Costs and Fees.

On multiple occasions, counsel for ASIS said that ASIS would declare bankruptcy if ordered to pay costs or attorneys' fees in the Prior Case. (Opening Burgoyne Decl. ¶14.) When asked at deposition if this was true, ASIS's Chief Executive Officer refused to answer, stating: "Well I haven't really made a decision about something that hasn't happened and is probably not likely to happen in my opinion." (Declaration of Henry M. Burgoyne, III in Support of Member Source Media, LLC's Reply in Support of Motion for Security ("Reply Burgoyne Decl.") ¶3 & Ex. A.) As the record reveals, ASIS lost that nearly identical case on multiple issues, and is now facing a $40,000 bill of costs and a motion for attorneys' fees and sanctions in excess of $900,000. (Reply Burgoyne Decl. ¶¶4-5 & Exs. B-C.) If, as ASIS admits, it cannot post a $200,000 bond, how does it plan to pay these costs and fees and still have resources to reimburse Member Source for the hundreds of thousands of dollars Member Source certainly will spend in defending this suit? The answer, of course, is that ASIS intends to walk away from any defeat no

Case No. CV-08-1321 EMC   2   **MEMBER SOURCE MEDIA'S REPLY IN SUPPORT OF MOT. FOR SECURITY**

1  worse for the wear, by vehemently resisting any request for costs and fees and, if that
2  doesn't work, by declaring bankruptcy.

3      In its Opposition, ASIS argues that statements concerning its plans to file
4  bankruptcy in relation to the Prior Case are "inaccurate." (Opp. at 2:20-21.) However,
5  ASIS never explains how these statements are inaccurate, and fails to provide a shred
6  of evidence refuting their accuracy. ASIS could have provided a declaration by its
7  counsel that he never made the statements in question. So, too, could ASIS have
8  provided certified balance sheets, income statements, and tax returns to show that it will
9  be able to reimburse Member Source for the costs and fees Member Source certainly
10  will incur. ASIS has done none of this. Its kneejerk dismissal of its likely bankruptcy is
11  simply not sufficient assurance of ASIS's solvency.

12      ASIS relies on Federal Rule of Evidence 408 to claim that its counsel's multiple
13  statements regarding ASIS's plan to file bankruptcy are inadmissible. (Opp. at 2:21-24.)
14  ASIS completely misunderstands Rule 408. This Rule only bars the admissibility of
15  statements "when offered to prove liability for, invalidity of, or amount of a claim that was
16  disputed as to validity or amount, or to impeach through a prior inconsistent statement or
17  contradiction." None of these categories is at issue here, in particular because the
18  statements were made in reference to the Prior Case and not this action. ASIS's
19  argument is simply a last-ditch effort to withdraw unwise statements made in an attempt
20  to shield itself from unrelated liability.

21  **II.  ASIS's Argument that it Cannot Be Required to Pay Costs and Attorneys'
22  Fees if its Case Is Dismissed for Lack of Standing Rests on an Obvious and
   Fundamental Misreading of Federal Law.**

23      In this case, as in others, ASIS argues that if its claims are dismissed "on the
24  basis of lack of Standing, the Defendant cannot recover attorneys' fees." ASIS's
25  position rests on an obvious conflation of constitutional standing and statutory standing.
26  The Ninth Circuit has expressly ruled that where a plaintiff has been found to lack
27  statutory standing, the court nevertheless retains jurisdiction to award costs and fees.
28  *Credit Managers Ass'n of Southern California v. Kennesaw Life and Acc. Ins. Co.*, 25

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

F.3d 743 (9th Cir. 1994).  "[I]t would be unjust to permit [a plaintiff] to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims."  *Id.*  ASIS's "have-its-cake-and-eat-it-too" attitude, in this and other actions, grows tiring.  The Court should put an end to it by requiring ASIS to post security as requested by Member Source.

**III.    ASIS's CAN-SPAM Litigation History Evidences a Pattern and Practice of Abusive Discovery and Frivolous Motions that Will Drive Member Source's Costs and Fees Well into the Six Digits.**

While ASIS glibly claims that "Defendant will not incur any significant recoverable costs," the record of ASIS's past litigation conduct contradicts this statement.  ASIS does not—and cannot—dispute that in the Prior Case, the defendant incurred attorneys' fees and costs in excess of $1.5 million dollars, most of which was incurred in responding to ASIS's burdensome discovery and abusive motion practice.

With regard to discovery, ASIS's record in the Prior Case speaks for itself.  For example, ASIS propounded written discovery requests to a single defendant seeking:

- All agreements between the defendant and its 20,000 plus affiliates (Opening Burgoyne Decl. ¶17 & Ex. L at Nos. 4, 6);

- All documents relating to payments the defendant made to any of its 20,000 plus affiliates from August 2005 to the present (*Id.* at No. 7);

- All correspondence between the defendant and its 20,000 plus affiliates (*Id.* at No. 8);

- All of the defendant's business plans for a two-and-a-half year period (*Id.* at Nos. 21-23);

- All of the defendant's documents relating to its mortgage marketing program (*Id.* at No. 41);

- All emails that the defendant received in its spam traps for over a year (*Id.* at No. 46);

- The name, address, and telephone number for each of the defendant's 20,000 plus affiliates (*Id.* ¶15 & Ex. J at No. 9); and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

- The amount of money that the defendant paid and received for leads since 2005 (*Id.* at Nos. 11-12).

In the face of ASIS's refusal to narrow *any* of those requests, the defendant filed its first motion for a protective order. (Reply Burgoyne Decl. ¶6 & Ex. D.)  During an *in-camera* meet-and-confer regarding that motion, the court observed that ASIS's requests would have to be "narrowed dramatically."  (*Id.*)

ASIS's oppressive discovery practices did not end there, but in fact worsened, culminating with its service of over 120 third party subpoenas to the defendant's affiliates, business partners and service providers, and to wholly unrelated entities. (Opening Burgoyne Decl. ¶18 & Ex. M.)  Those subpoenas demanded, among other things, documents concerning any "SPAM complaint[s] regarding or relating to [the defendant]."  (Reply Burgoyne Decl. ¶7 & Ex. E.)  Ultimately, the defendant was forced to seek another protective order from the court.  The court granted that order, quashing all of ASIS's then-outstanding subpoenas and concluding:

> **[I]t is apparent that Plaintiff has abused the privilege of serving discovery on non-parties.**  Plaintiff has served approximately 121 subpoenas on non-parties in this matter.  Those subpoenas, as demonstrated in the case management conference statement, are not limited to the subject matter of this action, let alone to the claims raised in this action.  To the contrary, **those subpoenas are overbroad and oppressive, and seek information regarding [the defendant] that has nothing to do with this lawsuit.**  (Opening Burgoyne Decl. ¶19 & Ex. N) (emphasis added).)

As for ASIS's motions practice, not counting ASIS's *ex parte* discovery communications and administrative requests to file documents under seal, ASIS filed eight motions in the Prior Case, not a single one of which was granted, and several of which were denied without oral argument and/or with critical remarks from the court.  As limited examples:

- **ASIS's Motion for Summary Adjudication of Issues**:  ASIS disregarded the stipulated order specifying the issues to be briefed, and addressed issues of its own choosing.  In support of its arguments, ASIS filed 40 pages of briefing and 184 pages of

1  exhibits. The court denied ASIS's motion in its entirety, stating: "I certainly think that the
2  way that, Mr. Singleton, you couched your motions, is completely inappropriate for
3  summary judgment. It's not a summary judgment motion. I'll also take you to task, but
4  I'll leave it at that, for defying the stipulation you entered into—Completely Improper."
5  (Reply Burgoyne Decl. ¶8 & Ex. F at 2:12-17.)

- **ASIS's Motion for Issuance of Letters Rogatory**: ASIS asked the court to authorize the issuance of a foreign subpoena by the Quebec, Canada judicial authority. ASIS claimed the subpoena—directed to a small, unrelated third party—was necessary to prove that the defendant violated CAN-SPAM. The court denied ASIS's motion, finding that ASIS had "not provided any justification" for the supposed connection between the third party and the defendant. The court concluded: "[I]t appears that this discovery request is a 'wholly exploratory operation.'" (Reply Burgoyne Decl. ¶9 & Ex. G at 6.)

- **ASIS's Motion for Evidentiary Sanctions for Failure to Produce Witness at Deposition**: ASIS took the deposition of Jennifer Evans after several delays caused by scheduling conflicts, unexpected medical difficulties and a death in Ms. Evans' family. Immediately after taking the deposition, ASIS moved the court for evidentiary sanctions arising out of the scheduling difficulties. In denying ASIS's motion without oral argument, the court observed: "[I]t is clear to the Court that both sides bear some measure of responsibility in the difficulty in scheduling Ms. Evans' deposition." (Reply Burgoyne Decl. ¶10 & Ex. H.)

It is unusual for a party to file eight motions. It is extraordinary for a party to file eight motions and lose every one. In light of ASIS's record, and the frivolousness of so many of ASIS's supporting arguments, it cannot be denied that ASIS's motion practice imposed significant and unnecessary litigation expenses on the defendant. The Court should require appropriate security to prevent ASIS from imposing these sort of costs on Member Source and then seeking to avoid paying them when its case fails. As even

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

ASIS does not dispute, a bond of $200,000 is a more than fair undertaking to provide this assurance.

### IV. ASIS's Merits Argument Contravenes Three Prior Opinions on Standing.

Three federal courts have now held that for an ISP to have standing under CAN-SPAM it must have suffered a significant adverse effect of the type uniquely experienced by providers of Internet Access Services. *ASIS Internet Services v. Optin Global, Inc.*, No. 05-05124, 2008 WL 1902217, slip. op. (N.D. Cal. April 29, 2008; *Brosnan v. Alki Mortgage, LLC*, No. 07-4339, 2008 WL 413732, slip. op. (N.D. Cal. Feb. 13, 2008); *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2006 WL 3873368, slip. op. (W.D. Wash. Dec. 8, 2006). In fact, one of these decisions found that ASIS, itself, could prove no such adverse effect. Specifically, the court found that after a year-and-a-half of prosecuting its case:

> There is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by Postini) or were the subject of complaints to ASIS; there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Email. . . . In short, ASIS suffered no meaningful adverse effect as a result of the Emails of any kind. *ASIS Internet Services*, 2008 WL 1902217 at *17 (emphasis in original).

Nevertheless, in its Opposition, ASIS spends five pages disputing these legal authorities, citing a Senate committee report and an FTC staff report. (Opp. at 6-8.) ASIS also concludes that Judge Spero's decision finding that ASIS lacked standing is not preclusive here because "a court cannot assume the truth of the facts presented on a prior decision." (Opp. at 4:17-20.) Again, ASIS has fundamentally misconstrued the relevant law. A well-established exception to this limitation on judicial notice exists where a court is engaging in a collateral estoppel inquiry. *See, e.g.*, *Kourtis v. Cameron*, 419 F.3d 989, 995, n.3 (9th Cir. 2005); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998).

Ultimately, none of ASIS's diatribe is relevant to Member Source's request for

Case No. CV-08-1321 EMC | 7 | **MEMBER SOURCE MEDIA'S REPLY IN SUPPORT OF MOT. FOR SECURITY**

security. Regardless of what the Senate committee report says about CAN-SPAM, ASIS has admitted that it cannot afford, or simply will not pay, any costs or attorneys' fees in relation to its CAN-SPAM litigation activities. Furthermore, ASIS's history of litigating CAN-SPAM actions illustrates a pattern and practice of abusive conduct that is sure to drive Member Source's out-of-pocket defense costs well into the six figures. These are the relevant factors in assessing a request for security, not what an FTC staff report said about spam filtering services. Because the relevant factors point to ASIS's inability to reimburse Member Source for its likely attorneys' fees, a requirement of security is all but compelled.

## V.  ASIS Assumes the Merits of its Case and then Slings Mud at Member Source in an Attempt to Bolster its Opposition.

ASIS goes to great lengths arguing the merits of its case, but can't verify the truth of its allegations. ASIS has a pattern and practice of including allegations in its pleadings that are not credible, if not outright false. Each and every one of ASIS's eight CAN-SPAM complaints has contained nearly identical allegations of conspiracy, agency relationships, and the use of specific technical devices. (Opening Burgoyne Decl. ¶¶6-12 & Exs. B-H.) In its Prior Case, ASIS made these allegations with no evidentiary basis, and persisted with them long after it possessed evidence foreclosing them. There's no reason to believe that ASIS's allegations in this Complaint are any more credible. As in ASIS's Prior Case, it is unlikely, if not impossible, that ASIS has any evidence or information supporting the following allegations:

- **Paragraph 7:** Member Source conspired with unnamed parties to violate CAN-SPAM;
- **Paragraphs 9:** Member Source sent or caused to have sent 5006 commercial emails to ASIS's computers;
- **Paragraph 10:** ASIS suffered an adverse effect from the sending of the 5006 emails at issue;
- **Paragraphs 15, 16:** Member Source used a "harvest directory attack or used an

1 automated creation of multiple email accounts" in connection with its alleged
2 wrongdoing;

3 - **Paragraph 24:** The owners of the accounts that received the emails at issue had
4 not solicited these emails;

5 ASIS set forth nearly identical allegations in its Prior Case. (Opening Burgoyne Decl. ¶6
6 & Ex. B.) On summary judgment, ASIS could not produce a shred of evidence to
7 support these allegations, and the court found the same in granting summary judgment
8 against ASIS. *ASIS Internet Services*, 2008 WL 1902217 at *passim*.

9 In its Opposition, ASIS seeks to bolster the merits of its case by attacking
10 Member Source's reputation. (Opp. at 1:14-25.) This is nothing new for ASIS. In effect,
11 ASIS argues that Member Source is not entitled to security because a single, unrelated
12 plaintiff brought a string of small claims actions against Member Source. Member
13 Source is contesting the validity of these judgments, which were the result of an
14 apparent default. In any event, it is unclear how these facts are in any way relevant to
15 the issues here: *i.e.* ASIS's solvency, its past discovery and motion practices, the legal
16 costs expected to be incurred by Member Source, or the seven other nearly identical
17 CAN-SPAM cases ASIS has brought. ASIS's arguments about these small claims
18 defaults are exactly what they appear to be: last-ditch mudslinging. Because ASIS has
19 failed to set forth any credible reason why it should not post security, the Court should
20 require a bond, as expressly provided for in CAN-SPAM.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

**CONCLUSION**

For all of the reasons set forth above, the Court should require ASIS to post a bond in the form of security for costs and fees in the amount of $200,000.

Dated: May 28, 2008

Henry M. Burgoyne, III
Karl S. Kronenberger
Jeffrey M. Rosenfeld
Margarita Calpotura
Kronenberger Burgoyne, LLP

By: _____/s/_____
　　　　　Jeffrey M. Rosenfeld

Attorneys for Defendant,
MEMBER SOURCE MEDIA, LLC