**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant Member Source Media, LLC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**MEMBER SOURCE MEDIA, LLC,** *et al.*,<br><br>Defendants. | CASE NO. CV-08-1321-EMC<br><br>**DECLARATION OF HENRY M. BURGOYNE, III IN SUPPORT OF MEMBER SOURCE MEDIA, LLC'S REPLY IN SUPPORT OF MOTION FOR SECURITY**<br><br>Date: June 11, 2008<br>Time: 10:30 AM<br>Ctrm: C, 15th Floor |

I, Henry M. Burgoyne, III, declare as follows:

1. I am an attorney admitted to practice in the State of California and the United States District Court for the Northern District of California.  I am a partner at the law firm of Kronenberger Burgoyne, LLP, counsel of record for Defendant Member Source Media, LLC. ("Member Source").  Unless otherwise stated, I have personal knowledge of the facts stated herein.

//

1

2.  I served as lead counsel for Defendant, AzoogleAds.com, Inc. ("Azoogle") in the case *ASIS Internet Services, Inc. v. Optin Global, Inc. et al.*, Case No. 05-5124 JCS (the "Prior Case").

3.  Attached hereto as Exhibit A is a true and correct copy of an excerpt from the certified deposition transcript of Nella White, taken in the Prior Case.

4.  Attached hereto as Exhibit B is a true and correct copy of the Bill of Costs filed in the Prior Case.

5.  Attached hereto as Exhibit C is a true and correct copy of AzoogleAds.com, Inc's Memorandum of Points and Authorities in Support of Motion for Sanctions filed in the Prior Case, and supporting declarations.

6.  Attached hereto as Exhibit D is a true and correct copy of Defendant AzoogleAds.com, Inc.'s Motion for 1) Protective Order and 2) Leave to Amend Discovery Responses filed in the Prior Case.  During a March 20, 2007, *in-camera* meet-and-confer regarding this motion, the Court commented that ASIS's first round of written discovery requests would have to be "narrowed dramatically."

7.  Attached hereto as Exhibit E is a true and correct copy of the attachment to the 120-plus third party subpoenas issued by ASIS in the Prior Case.

8.  Attached hereto as Exhibit F is a true and correct excerpt from the hearing before the Honorable Joseph C. Spero on June 1, 2007 in the Prior Case.

9.  Attached hereto as Exhibit G is a true and correct copy of the Order Denying Motion for Issuance of Letters Rogatory issued in the Prior Case.

10. Attached hereto as Exhibit H is a true and correct copy of the Order Denying Plaintiff's Motion for Evidentiary Sanctions for Failure to Produce Witness at Deposition issued in the Prior Case.

//

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

DECLARATION OF H. BURGOYNE ISO
REPLY TO OPP. TO MTN. FOR SECURITY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct and that this Declaration was executed on May 28, 2008, at San Francisco, California.

By:_____/s/_____

Henry M. Burgoyne, III

3

**DECLARATION OF H. BURGOYNE ISO
REPLY TO OPP. TO MTN. FOR SECURITY**

Exhibit A

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

IN UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASIS INTERNET SERVICES,           )
a California corporation,         )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )   No. C-05-5124 JCS
                                  )
OPTIN GLOBAL, INC., a Delaware    )
Corporation, also dba Vision      )
Media Limited Corp., USA          )
Lenders Network, USA Lenders,     )
and USA Debt Consolidation        )
Service; et al.,                  )
                                  )
        Defendants.               )
_____ )

**ORIGINAL**

**CONFIDENTIAL**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

DEPOSITION OF NELLA WHITE

San Francisco, California

Wednesday, June 20, 2007

Volume I

Reported by:

GINA GLANTZ

CSR No. 9795, RPR, RMR

JOB No. 74962

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:46:25 | 1 | paying legal judgments, all kinds of things. |
| 11:46:27 | 2 | MR. SINGLETON:  Don't answer those.  It's a |
| 11:46:28 | 3 | compound question. |
| 11:46:29 | 4 | (Instruction not to answer.) |
| 11:46:29 | 5 | BY MR. BURGOYNE: |
| 11:46:30 | 6 | Q   Do you consider your capitalization sufficient? |
| 11:46:30 | 7 | MR. SINGLETON:  It's argumentative, not |
| 11:46:30 | 8 | relevant to the subject matter of the action. |
| 11:46:30 | 9 | THE WITNESS:  We don't have -- |
| 11:46:30 | 10 | MR. SINGLETON:  I'll have you -- excuse me. |
| 11:46:36 | 11 | I'll instruct the witness not to answer until you |
| 11:46:38 | 12 | rephrase or break it down. |
| 11:46:38 | 13 | (Instruction not to answer.) |
| :46:38 | 14 | BY MR. BURGOYNE: |
| 11:46:40 | 15 | Q   Do you consider your capitalization sufficient |
| 11:46:42 | 16 | for a business of your size? |
| 11:46:44 | 17 | A   Yes. |
| 11:46:44 | 18 | MR. SINGLETON:  Yes or no. |
| 11:46:44 | 19 | BY MR. BURGOYNE: |
| 11:46:45 | 20 | Q   Yes, you do? |
| 11:46:46 | 21 | A   Yes, I do. |
| 1:46:46 | 22 | Q   We've been informed by your counsel several |
| 1:46:49 | 23 | times that if Azoogle wins financial sanctions, |
| 1:46:57 | 24 | including attorneys' fees, against ASIS, that ASIS will |
| 1:47:03 | 25 | declare bankruptcy; is that true?  Yes or no? |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:47:07 | 1 | MR. SINGLETON:  Hold on there. |
| 11:47:08 | 2 | THE WITNESS:  That's a legal question, and I'm |
| 11:47:10 | 3 | not sure what the circumstances are that you declare |
| 11:47:13 | 4 | bankruptcy. |
| 11:47:13 | 5 | MR. SINGLETON:  Calls for a legal conclusion, |
| 11:47:14 | 6 | and also invades the attorney-client privilege. |
| 11:47:17 | 7 | BY MR. BURGOYNE: |
| 11:47:17 | 8 | Q   I'm asking you if you intend -- in the event |
| 11:47:20 | 9 | that Azoogle wins monetary sanctions against ASIS, do |
| 11:47:24 | 10 | you intend to declare bankruptcy? |
| 11:47:26 | 11 | A   Well, I haven't really made a decision about |
| 11:47:29 | 12 | something that hasn't happened and is probably not |
| 11:47:32 | 13 | likely to happen, in my opinion. |
| :47:33 | 14 | Q   We've been informed by your counsel that you |
| 11:47:36 | 15 | have made a decision.  Is that -- |
| 11:47:37 | 16 | MR. SINGLETON:  Mis- -- assumes facts not in |
| 11:47:40 | 17 | evidence. |
| 11:47:40 | 18 | BY MR. BURGOYNE: |
| 11:47:41 | 19 | Q   Your counsel has informed us several times that |
| 11:47:44 | 20 | ASIS intends to declare bankruptcy -- |
| 11:47:46 | 21 | MR. SINGLETON:  Asked and answered. |
| 11:47:46 | 22 | BY MR. BURGOYNE: |
| 11:47:47 | 23 | Q   -- in the event sanctions are awarded against |
| 11:47:49 | 24 | ASIS. |
| 11:47:49 | 25 | A   Well, I certainly would do it if he advised me |

1

2

3

4          I, the undersigned, a Certified Shorthand

5     Reporter of the State of California, do hereby

6     certify:

7          That the foregoing proceedings were taken

8     before me at the time and place herein set forth; that

9     any witnesses in the foregoing proceedings, prior to

10    testifying, were placed under oath; that a verbatim

11    record of the proceedings was made by me using machine

12    shorthand which was thereafter transcribed under my

13    direction; further, that the foregoing is an accurate

14    transcription thereof.

15         I further certify that I am neither

16    financially interested in the action nor a relative or

17    employee of any attorney of any of the parties.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20    Dated: _____ JUL 1 2 2007

21

22

23    _____

24    GINA GLANTZ
      CSR No. 9795, RPR, RMR

25

Exhibit B

AO 133 (Rev. 03/08) Bill of Costs

# UNITED STATES DISTRICT COURT

for the

Northern  District of California

| | |
|---|---|
| Asis Internet Services | ) |
| | ) |
| v. | )    Case No.: C-05-5124 JCS |
| | ) |
| Optin Global, Inc., et al. | ) |

## Bill of Costs

Judgment having been entered in the above entitled action   <u>04/28/2008</u>   against   <u>Asis Internet Services</u> ,
Date

the Clerk is requested to tax the following as costs:

| | |
|---|---:|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |
| Fees for service of summons and subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | 502.52 |
| Fees and disbursements for printing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Fees for witnesses (itemize on page two) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,009.32 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case . . . . . . . . . . . . | 1,226.87 |
| Docket fees under 28 U.S.C. 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 . . . . . | |
| Other costs (please itemize) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35,703.90 |
| TOTAL   $ | 38,442.61 |

SPECIAL NOTE:  Attach to your bill an itemization and documentation for requested costs in all categories.

## Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.  A copy of this bill has been served on all parties in the following manner:

☑   Electronic service by e-mail as set forth below and/or.

☐   Conventional service by first class mail, postage prepaid as set forth below.

s/ Attorney:   <u>s/Jeffrey M. Rosenfeld</u>

Name of Attorney:   <u>Jeffrey M. Rosenfeld</u>

For:   <u>AzoogleAds.com, Inc.</u>     Date:   <u>05/13/2008</u>
Name of Claiming Party

Costs are taxed in the amount of   <u>     </u>   and included in the judgment.

By:   <u>     </u>

| | | |
|---|---|---|
| <u>     </u> | <u>     </u> | <u>     </u> |
| Clerk of Court | Deputy Clerk | Date |

AO 133 (Rev. 03/08) Bill of Costs

# UNITED STATES DISTRICT COURT

| | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | |
|---|---|---|---|---|---|---|---|
| **Witness Fees (computation, cf. 28 U.S.C. 1821 for statutory fees)** | | | | | | | |
| NAME , CITY AND STATE OF RESIDENCE | Days | Total Cost | Days | Total Cost | Miles | Total Cost | Total Cost Each Witness |
| please see attached spreadsheet | | | | | | | $0.00 |
| Nick Grabowski | 1 | 31.00 | | | | | $31.00 |
| Ryan McVey | 1 | 978.32 | | | | | $978.32 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | **TOTAL** | $1,009.32 |

## NOTICE

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**
"Sec. 1924. Verification of bill of costs."
    "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**
    "A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**
**RULE 54(d)(1)**

Costs Other than Attorneys' Fees.
    Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 1 day's notice. On motion served within the next 5 days, the court may review the clerk's action

**RULE 6**

(d) Additional Time After Certain Kinds of Service.

    When a party may or must act within a specified time after service and service is made under Rule5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a).

**RULE 58(e)**

Cost or Fee Awards:

    Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2),  the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

Exhibit C

**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, AZOOGLEADS.COM, INC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>      Plaintiff,<br><br>      vs.<br><br>**OPTIN GLOBAL, INC.,** a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,<br><br>      Defendants. | Case No. C-05-5124 JCS<br><br>**AZOOGLEADS.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:     June 20, 2008<br>Time:    1:30 AM<br>Ctrm:   A, 15th Floor |

**AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .......................................................................................................3

I. Procedural Background ...................................................................................3

II. Azoogle's Attorneys' Fees & Costs ...............................................................3

III. Azoogle's Notice to ASIS of Azoogle's Intent to Seek Sanctions, and the Parties' Meet and Confer Efforts ............................................................................................4

ARGUMENT ..........................................................................................................5

I. Under 15 U.S.C. §7706(g)(4), Costs and Fees Should Be Awarded against ASIS as a Matter of Course ....................................................................................................5

II. ASIS and Singleton's Unsupported, and Unsupportable, Allegations and Arguments Violated Rule 11 .......................................................................................................7

A. The SAC's Allegations Were Unsupported and Unsupportable ...............………..…………8

1. ASIS and Singleton Never Possessed Information to Support the SAC's Allegations ........................................................................................................................8

2. ASIS and Singleton Made No Effort to Investigate or Verify the SAC's Allegations........10

B. ASIS and Singleton Ignored Obvious Precedent, Basing their Legal Arguments on Inapposite or No Authority ....................................................................................11

C. Circumstances Compel the Conclusion that ASIS and Singleton Filed the SAC for the Purpose of Coercing Settlements ...........................................................................14

III. Singleton Vexatiously Multiplied this Litigation ...................................................15

A. Singleton Filed Eight Frivolous Motions, and Lost Every One...................................15

B. Singleton Engaged in Abusive Discovery Practices .................................................19

C. Singleton Failed to Comply with its Discovery Obligations................................................21

D. Singleton Engaged in Purposefully Obstructionist and Dilatory Tactics ...............23

E. Singleton Indiscriminately Named Nearly 20 Defendants, which Led To    Convoluted

Inter-Party Communications, Negotiations & Filings ……………………..............................25

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

*An-Port, Inc. v. MBR Industries*, 142 F.R.D. 47 (D.P.R. 1992) .................................................. 15

*B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) ............................................. 15

*Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) ............................5

*Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)......................................................................7

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ......................................................8

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).........................................................7

*Cross & Cross Properties, Ltd.* v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989) .............7

*Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) ......................11, 12

*EMI Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 76 (D. P.R. 2006)...................5

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) .............................................................5

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987) ............................................................7

*Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 2253296, (W.D. Wash. Aug. 1, 2007).5, 6, 12

*Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 220-21 (2d Cir. 2002) .......................................7

*Hale v. Harney*, 786 F.2d 688, 692 (5th Cir. 1986) .......................................................................8

*Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987) ......................................... 12

*Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) ............................................................ 12

*Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern California,* 790 F.2d

    1421, 1427 (9th Cir. 1987) ................................................................................................. 14

*Phillips v. Worldwide Internet Solutions, Inc.*, No. 05-5125, 2007 WL 184719 (N.D. Cal. Jan 22,

    2007)…………… ........................................................................................................6, 7

*Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) ............5

*Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986).........................7

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987) ..................... 12

*Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990) ..............................7

*Truesdell v. Southern Cal. Permanente Med. Group*, 293 F.3d 1146, 1153-54 (9th Cir. 2002)....7

## OTHER AUTHORITIES

15 U.S.C. §7701 *et. seq.*("CAN-SPAM").............................................................................. *passim*

28 U.S.C. §1927 .................................................................................................................. *passim*

FED. R. CIV. PROC. 11 ......................................................................................................... *passim*

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

**INTRODUCTION**

For purposes of this motion, defendant AzoogleAds.com, Inc. ("Azoogle") does not dispute that plaintiff ASIS Internet Services ("ASIS") received unsolicited commercial emails (the "Emails"). What Azoogle does dispute is that ASIS had a right to pursue claims arising therefrom against nearly 20 defendants with the thinnest imaginable connection to those Emails, and then to force those claims to a judgment months and months after it became apparent that ASIS couldn't even demonstrate its own standing. ASIS's irrational persistence in this litigation had predictable and significant financial consequences, in that Azoogle was forced to spend more than $1 million on its defense. By this motion, Azoogle asks the Court to shift some of that burden back to ASIS.[1]

ASIS's tactics in this litigation—a broadly-brushed, cumulative pleading, followed by threats of multi-million dollar judgments against a score of mostly unrelated entities—strongly suggest an intention to coerce settlements. To a frightening extent, those tactics worked, in that all but two defendants settled. (The other, Leads Limited, never appeared and was ultimately voluntarily dismissed by ASIS.) ASIS's intention to strong-arm settlements did not go unnoticed. Two years ago, in denying a motion for security brought by a defendant (Quicken Loans, Inc.) all but identically situated to Azoogle, Judge Claudia Wilken warned ASIS: "If you had included them in your amended complaint, you better give that some thought and discuss it with your clients because I will not hesitate to award attorneys' fees for [the defendant] if it turns out that they weren't properly included." (Burgoyne Decl. ¶2 & Ex. A at 16:17-21.) ASIS, of course, persisted, and Quicken later settled.

---

[1] Including fees paid to consulting experts and New York counsel, who consulted with Azoogle and managed discovery and indemnity issues, Azoogle's out-of-pocket expenses reached approximately $1.5 million. (Declaration of Henry M. Burgoyne, III in Support of AzoogleAds, Inc.'s Motion for Sanctions ("Burgoyne Decl.") ¶28 & Ex. M; Declaration of Stephen Fox in Support of AzoogleAds, Inc.'s Motion for Sanctions ("Fox Decl.") ¶¶2-7 & Exs. A-E.) By this motion, however, Azoogle only seeks to recover those fees charged by appearing counsel Kronenberger Burgoyne and by testifying expert Dr. Frederick Cohen, as well as non-taxable costs not included in Azoogle's Bill of Costs, filed concurrently with this motion.

Case No. C-05-5124 JCS                    1          **AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

1  ASIS's bullying tactics were evident in its motions practice and written discovery.
2  Not including administrative requests to file documents under seal, ASIS brought eight
3  motions, all of which were denied by the Court.  ASIS also served written discovery so
4  sweeping as to encompass nearly every document relating to Azoogle's lead provider
5  business.   (The Court observed during an *in-camera* meet-and-confer that ASIS's
6  requests would have to be "narrowed dramatically.")  Perhaps most illustrative, ASIS
7  issued more than 120 third-party subpoenas demanding documents concerning any
8  "SPAM complaint[s] regarding or relating to Azoogle."  Eventually, the Court issued a
9  protective order concluding that ASIS's third-party discovery was "overbroad and
10  oppressive," and that ASIS had "abused the privilege of serving discovery on non-
11  parties."  The damage to Azoogle's reputation and business interests, however, already
12  was done.

13  CAN-SPAM, Rule 11, and 28 U.S.C. Section 1927 all were intended to deter this
14  sort of groundless litigation, and to compensate parties harmed as a result of this sort of
15  bullying.  CAN-SPAM's attorneys' fees provision, located at 15 U.S.C. §7706(g)(4), has
16  been applied under the even-handed approach, such that awards of fees are the rule
17  and not the exception.  Accordingly, the Court need not find ASIS's intentions to have
18  been questionable or its claims to have been frivolous in order to award Azoogle the full
19  measure of its sought-after fees and costs.

20  This is one of eight CAN-SPAM cases brought by ASIS, six others of which
21  remain pending.  Despite its inability to prove its standing, ASIS continues to persist in
22  those cases and to inflict these same sorts of harms on other defendants.  ASIS and its
23  attorneys of record, the Singleton Law Group ("Singleton"), need to understand that their
24  actions have caused, and continue to cause, real harm to real parties.  Refusing to grant
25  Azoogle some measure of its fees and non-taxable costs would impose on Azoogle the
26  entire burden of defending this case, and would send the clear message that litigation
27  conduct of this sort is to be tolerated.  For those and other reasons described herein, the
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-Law.com

1  Court should award against ASIS and its attorneys some or all of Azoogle's fees and

2  costs in defending this action.

**BACKGROUND**

**I.    Procedural Background.**

ASIS filed its initial Complaint on December 12, 2005, its First Amended
Complaint on July 14, 2006, and its Second Amended Complaint ("SAC") on October 4,
2006, adding Azoogle as a defendant.  Since the inception of this action, ASIS has filed
eight motions, none of which was granted, and several of which were denied without oral
argument.  ASIS has also engaged in sweeping abusive discovery, issuing, for example,
in excess of 120 third party subpoenas.  (Order Re August 7, 2007 Joint Letter [D.E.
250].)  On March 27, 2008, the Court granted Azoogle's motion for summary judgment,
thereby dismissing all of ASIS's claims.

**II.   Azoogle's Attorneys' Fees & Costs.**

Azoogle incurred considerable expense in defending this lawsuit.  Over the year-
and-a-half of litigation, Azoogle was forced to engage in substantial offensive and
defensive discovery and motions practice.  In addition to the fees and costs Azoogle
paid to appearing counsel Kronenberger Burgoyne, LLP and to testifying expert Dr.
Frederick Cohen, Azoogle incurred additional expenses from New York-based counsel
retained to advise Azoogle on the litigation and to manage discovery, and to negotiate
and defend indemnification claims by other defendants.  (Fox Decl. ¶¶2-7 & Exs. A-E.)
Nonetheless, Azoogle seeks to recover only its non-taxable costs and those fees paid to
Kronenberger Burgoyne and Dr. Frederick Cohen, in a total amount of $912,413.84, or
such portion of this sum as the Court believes is equitable and just.[2]  (Burgoyne Decl.
¶28 & Ex. M; Fox Decl. ¶6 & Ex. E.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.aw.com

---

[2] This sum does not include taxable court costs, which have been submitted to the Court
with Azoogle's Bill of Costs, filed concurrently with this motion.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

### III. Azoogle's Notice to ASIS of Azoogle's Intent to Seek Sanctions, and the Parties' Meet and Confer Efforts.

On December 15, 2006, during Azoogle's first status conference, Azoogle informed the Court and ASIS of Azoogle's intention to seek sanctions in connection with the filing of the SAC. (Declaration of Henry M. Burgoyne, III in Support of AzoogleAds.com, Inc.'s Motion for Rule 11 Sanctions [D.E. #224] ("Burgoyne Rule 11 Decl.") ¶17 & Ex. Q.) On January 4, 2007, Azoogle provided written notice of that intention by means of a letter to ASIS. (Burgoyne Rule 11 Decl. ¶11 & Ex. L.) Azoogle has repeated its intention to seek sanctions at every stage of this litigation, including in multiple papers filed with the Court. On May 11, 2007, Azoogle served a draft motion for Rule 11 sanctions on counsel for ASIS. (Burgoyne Rule 11 Decl. ¶23.) Three weeks later, on June 1, Azoogle filed its initial Rule 11 motion with the Court. (AzoogleAds.com, Inc.'s Motion for Rule 11 Sanctions [D.E. #223]). On October 10, 2007, the Court denied Azoogle's motion *without prejudice*, with the assumption that these issues could be revisited after the disposition of the merits of the case. (Order Denying Defendant's Motion for Rule 11 Sanctions [D.E. #261].) Azoogle here renews that motion, and files concurrent motions under CAN-SPAM and 28 U.S.C. Section 1927.

On April 10, 2008, counsel for Azoogle met-and-conferred with counsel for ASIS regarding Azoogle's planned requests for attorneys' fees, with the hopes of resolving this issue without the need for a motion. During this conference, counsel for ASIS stated that ASIS would not agree to pay a dime in costs or fees, and would file for bankruptcy if any award of costs or fees was granted. (Burgoyne Decl. ¶17.) Nevertheless, in an attempt to settle the issue, on April 16 Azoogle served a written offer that ASIS pay Azoogle $450,000 in satisfaction of Azoogle's costs and fees, and potential related claims, arising from ASIS's two cases against Azoogle. (*Id.* ¶3 & Ex. B.) ASIS never responded to that offer. (*Id.*)

**AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

**ARGUMENT**

I.   **Under 15 U.S.C. §7706(g)(4), Costs and Fees Should Be Awarded against ASIS as a Matter of Course.**

CAN-SPAM provides that in a private action, the "court may, in its discretion, require an undertaking for the payment of costs of the action, and assess reasonable costs, including reasonable attorneys' fees against any party."  15 U.S.C. §7706(g)(4). The *Gordon* case, relied on by the Court in finding that of ASIS lacked standing, applied the evenhanded approach in assessing the prevailing party's request for attorneys' fees under CAN-SPAM.  *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 2253296, at *3-4, (W.D. Wash. Aug. 1, 2007).  The *Gordon* Court analogized the attorneys' fees provision in CAN-SPAM to the one in the Copyright Act, to which the Supreme Court had previously applied the evenhanded approach. In so analogizing, the *Gordon* court recognized that Congress had acknowledged that defendants in CAN-SPAM actions "have an interest in establishing that their practices are legitimate," and that the "[p]romotion of prolific private CAN-SPAM litigation is not what Congress intended." *Id.* at *4.  *Gordon* went on to find that "preventing abuse of [CAN-SPAM's] limited private right of action is entirely appropriate." *Id.*

Under the evenhanded approach, the grant of fees and costs is the rule rather than the exception, and fees should be awarded routinely. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008), *quoting Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) (quotations omitted).  The Court does not need to apply a specific standard or make a finding of "frivolousness" to apply attorneys' fees under the evenhanded approach.  *EMI Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 76 (D. P.R. 2006).  Rather, the Court need only be equitable in its evaluation, and may consider other factors such as "motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in some cases to advance considerations of compensation and deterrence."  *Id.*, *citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (internal quotations omitted).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-Law.com

5

As relevant to Azoogle's request for fees and non-taxable costs, the facts in this case closely parallel the facts in *Gordon*. As in *Gordon*, it is obvious that ASIS is "testing [its] luck at making [its] 'spam business' extraordinarily lucrative through a strategy of spam collection and serial litigation."[3] *Gordon*, 2007 WL 2253296, at *5. Here, ASIS has brought eight nearly identical CAN-SPAM lawsuits, all seeking huge sums in statutory damages.[4] In each of these cases, ASIS has relied on broadly-brushed, vague conspiracy and other allegations such as those contained in the SAC. In the present case, ASIS's strategy was unfortunately successful, in that ASIS managed to coerce settlements from all appearing defendants except Azoogle. When the merits of this case eventually were examined, however, it became apparent that ASIS had no information—much less admissible evidence—to support its allegations, or even to demonstrate its own standing. As in *Gordon*, ASIS's "instant lawsuit is an excellent example of the ill-motivated, unreasonable, and frivolous type of lawsuit that justifies an award of attorneys' fees." *Gordon*, 2007 WL 2253296, at *6.

During the parties' meet-and-confer, ASIS relied on *Phillips v. Worldwide Internet Solutions, Inc.*, No. 05-5125, 2007 WL 184719 (N.D. Cal. Jan 22, 2007)—another unsuccessful CAN-SPAM action brought by Singleton, though on behalf of another client—for the proposition that under CAN-SPAM, fees were to be awarded only in the context of a patently frivolous action. In fact, the *Phillips* Court found it unnecessary to address what standard to apply, given the early dismissal of the case for lack of

---

[3] As in *Gordon*, it is also significant that ASIS "did not seek actual damages in the instant litigation, because none exist, and that [it] is instead seeking solely statutory damages for each e-mail sent." *Gordon*, 2007 WL 2253296, at *5.

[4] The eight CAN-SPAM lawsuits brought by ASIS include: *ASIS Internet Services v. Optin Global, Inc.* (12/12/05) (Case 3:05-cv-05124-JCS); *ASIS Internet Services v. Valueclick, Inc. et al.* (6/21/07) (Case 3:07-cv-03261-PJH); *ASIS Internet Services v. Azoogle.com, Inc.* (9/7/07) (Case 07-cv-04630-JSW); *ASIS Internet Services v. IMarketing Consultants, Inc.* (10/19/07) (Case 4:07-cv-05357-CW); *ASIS Internet Services v. All In, LLC* (11/9/07) (Case 3:07-cv-05717-JSW); *ASIS Internet Services v. Active Response Group, Inc. et al.* (12/7/07) (Case 3:07-cv-06211-TEH); *ASIS Internet Services v. Pure Ads, LLC* (3/21/08) (Case 3:08-cv-01566-SC); and *ASIS Internet Services v. Member Source Media, LLC* (3/7/08) (Case 3:08-cv-01321-EMC).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenbergerlaw.com

6

personal jurisdiction. The *Philips* Court did conclude, though, that the Singleton Law Group had "utterly failed to meet [its] 'high' burden of establishing that this Court has general jurisdiction over Worldwide." *Id.* at *4. The fact that a prior Singleton client escaped an order to pay costs and fees in a prior improvident CAN-SPAM action is no excuse for ASIS's failure to pay sanctions here. Accordingly, the Court should order ASIS to pay the full measure of Azoogle's sought-after costs and fees.

## II. ASIS and Singleton's Unsupported, and Unsupportable, Allegations and Arguments Violated Rule 11.

Federal Rule of Civil Procedure 11 is intended to deter dilatory and abusive pretrial tactics and to streamline litigation by excluding baseless filings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The baseless filings targeted by Rule 11 include "expeditionary pleadings" and complaints "filed in a speculative effort to find someone financially liable for plaintiffs' injuries . . ." *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986); *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).[5] While Rule 11 is not intended to chill creative advocacy, it requires creativity to be tempered with a good faith application of the law and a reasonable investigation of the facts. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987); *Truesdell v. Southern Cal. Permanente Med. Group*, 293 F.3d 1146, 1153-54 (9th Cir. 2002).

Rule 11 imposes sanctions even where only certain portions of a pleading violate the Rule's requirements. *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 220-21 (2d Cir. 2002). Thus, unsubstantiated allegations or claims may be sanctioned despite other colorable claims in the pleading. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989). Similarly, a colorable claim against one defendant does not justify adding other defendants against whom the claim is frivolous. *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990).

---

[5] The "shotgun approach to pleadings [citation omitted], where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged." *Rodgers v. Lincoln Towing Service, Inc.*, 596 F. Supp. 13, 27 (D.C. Ill. 1984), quoting *Whiten v. Ryder Truck Lines, Inc.*, 520 F. Supp. 1174, 1176 (1981).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-Law.com

7

1    The Court has previously indicated that Azoogle will need to demonstrate its

2    entitlement to an award of sanctions under Rule 11.  Azoogle respectfully submits that a

3    review of the record satisfies the Court's charge.  Azoogle therefore requests that the

4    Court order ASIS and Singleton to compensate Azoogle for the full measure of its

5    sought-after costs and fees.

6    **A.    The SAC's Allegations Were Unsupported and Unsupportable.**

7    Under Rule 11, the presentation of a pleading or other paper certifies that,

8    to the best of the filer's knowledge and belief, formed after an inquiry reasonable under

9    the circumstances, the factual contentions in the paper have evidentiary support, *or if*

10   *specifically so identified*, are likely to have evidentiary support after a reasonable

11   opportunity for further investigation or discovery.  FED. R. CIV. P. 11(b)(3)*; Christian v.*

12   *Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  It is not acceptable for a party to file

13   suit first and find out later whether or not it has a case. *Hale v. Harney*, 786 F.2d 688,

14   692 (5th Cir. 1986).[6]   Contentions based on information and belief do not relieve a

15   plaintiff from its obligation to conduct an appropriate investigation. Fed. R. Civ. P. 11(b).

16   Furthermore, if "evidentiary support is not obtained after a reasonable opportunity for

17   further investigation or discovery," a plaintiff has a "duty under the rule not to persist with

18   that contention." Committee Notes on Amendments to Federal Rules of Civil Procedure

19   (1993) 146 FRD 401, 585-86.

20   **1.    ASIS and Singleton Never Possessed Information to Support the SAC's Allegations.**

21   The SAC contains allegation after allegation in relation to which ASIS and

22   Singleton never possessed, and still do not possess, any information.  Most of those

23   allegations were made not on information and belief, but on *actual knowledge*.

24   Moreover, ASIS and Singleton persisted in those allegations long after they possessed

25

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

---

26   [6] A reasonable inquiry requires attorneys to seek credible information rather than to

27   proceed on mere suspicion or supposition. *Cooter & Gell*, 496 U.S. at 393.  It requires
     the plaintiff to interview available witnesses and review relevant documents. *King v.*

28   *Idaho Funeral Services Ass'n*, 862 F.2d 744, 747-48 (9th Cir. 1988); *Wold v. Minerals*
     *Engineering Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983).

Case No. C-05-5124 JCS                          8          **AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

evidence foreclosing them, or had exhausted the means to prove them.  Examples of ASIS and Singleton's unsupported, and unsupportable, allegations include:

- **Paragraphs 9 & 11:**   Azoogle hired and managed the activities of the "SPAMMERS" (*i.e.* the senders of the Emails);

- **Paragraphs 11, 21, 30, 49:**  The "SPAMMERS" were at all times acting as Azoogle's "employees or agents";

- **Paragraph 18:**    Azoogle and the other defendants—including the "SPAMMERS"—were engaged in a "joint venture and common enterprise" to violate CAN-SPAM;

- **Paragraphs 21-22, 24-26, 31-32, 34-36, 51-21:**  Azoogle sent or transmitted, or caused or initiated the sending or transmission of, the Emails;

- **Paragraphs 21, 30, 49:**  The "SPAMMERS" transmitted the Emails "for and in the hire of" Azoogle;

- **Paragraph 27:**  Azoogle used a "harvest directory attack or used an automated creation of multiple email accounts" in connection with its alleged wrongdoing;

- **Paragraph 31:**  Azoogle stole or "hijacked" the "email identities" to which the Emails were sent;

- **Paragraph 13:** Azoogle conspired with the "SPAMMERS" in their misconduct; and

- **Paragraphs 13 &16:**  Azoogle conspired with Quicken Loans Inc. and other mortgage brokers in the sending of the Emails.

On summary judgment, ASIS and Singleton couldn't produce evidence of ASIS's standing, an issue that would have been strictly within ASIS and Singleton's knowledge.[7]

---

[7] In applying the adverse effect requirement to ASIS, Judge Spero found:

No reasonable jury could find, based on the undisputed evidence that the [12,000 emails at issue] caused any significant adverse effect to ASIS.  While there is some evidence that spam generally has imposed costs on ASIS over the years, there is *no* evidence that the Emails at issue in this action resulted in adverse effects to ASIS:  there is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by [ASIS's spam filtering service]) or were the subject of complaints to ASIS' there is *no* evidence

9

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   In fact, ASIS and Singleton couldn't even produce information supporting ASIS's verified

2   discovery response relating to adverse effects.[8]   In retrospect, it is hard to identify any

3   allegation in relation to which ASIS and Singleton ultimately offered admissible proof.

### 2. ASIS and Singleton Made No Effort to Investigate or Verify the SAC's Allegations.

5   The likely reason that ASIS and Singleton ended up with no information

6   supporting the SAC's allegations is that they made no effort to verify those allegations

7   before filing ASIS's claims.   Joshua Mohland and Carl Scoles, the lay persons who

8   conducted ASIS's "studies" regarding the origins of and relationships between the

9   Emails, did not begin their work until at least the late winter or spring of 2007.

10  (Burgoyne Decl. ¶¶5-6 & Ex. D at 22:20-23:5, Ex. E at 44:9-17, 45:4-47:4.)  ASIS and

11  Singleton made no effort to review ASIS or others' server logs, or to contact the

12  operators of the computers supposedly used to send the Emails, or to determine the

13  actual use or ownership of any of the supposedly involved IP addresses and domain

14  names.  ASIS and Singleton didn't even attempt to determine the date or circumstances

15  of the supposed "directory harvest" of email addresses on which ASIS based its claim for

16  aggravated CAN-SPAM damages.  (Burgoyne Decl. ¶15 & Ex. L at 250:1-251:1, 251:14-

17  252:19, 260:25-262:6.)

18  In the months after the SAC was filed, the only information Singleton could point

19  to and linking Azoogle to the Emails was the supposed presence of Azoogle and its

in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Emails. . . .  As a result, [ASIS] does not have standing to assert its claims under CAN-SPAM.  (Order Granting Defendant's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment and Dismissing Action ("MSJ Order") [D.E. #401] (emphasis in original).)

[8] In its verified response to Azoogle's Third Set of Interrogatories (Rog No. 39), ASIS stated:

Plaintiff has incurred adverse effect and monetary loss in the form of: the purchase of SPAM filtering services, a necessity to increase bandwidth, consumption of employee time to address client complaints regarding spam, and to configure solutions to the false positive and false negative aspect of spam filtering, a necessity to increase server capacity, increased service charges, and a partial disruption of services to its clients.  (Burgoyne Decl. ¶4 & Ex. C.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   affiliates on Spamhaus' ROKSO—a non-governmental spam watchdog list.  Thus, in a

2   January 8, 2007 email responding to a request that ASIS withdraw the SAC, Singleton

3   suggested that Azoogle "ask [its] client how many Spamhaus and Rokso listings it, and

4   its affiliates, have."  (Burgoyne Decl. ¶7 & Ex. F.)  As ASIS and Singleton conceded

5   months later, the answer to that question, including at the time the SAC was filed, was

6   "zero."  Most ironic, had ASIS and Singleton bothered to actually check ROKSO before

7   purporting to rely on it, they almost certainly would have discovered that _ROKSO_

8   _specifically linked three-fourths of the domain names contained in the Emails to a known_

9   _individual spammer based in the Ukraine and with no connection to Azoogle_.  (_See_

10  Declaration of Adam Schneider in Opposition to Plaintiff ASIS Internet Services, Inc.'s

11  Motion for Summary Adjudication of Issues [D.E. #345] ¶¶2-5 & Ex. A.)

12      ASIS was under no deadline to file claims against Azoogle. Dispositive

13  information was readily available, if not already in ASIS and Singleton's hands.  ASIS

14  and Singleton nevertheless filed suit against Azoogle and began asking questions later.

15  It is no defense that Singleton drafted the SAC's sweeping conspiracy and vicarious

16  liability allegations to insulate the SAC from a motion to dismiss, or that ASIS and

17  Singleton hoped to unearth some factual support for their claims by means of industry-

18  wide third-party discovery.   Any reasonable litigant would have dropped this case

19  months prior to summary judgment.  ASIS and Singleton, by contrast, chose to pursue

20  this case to a disposition on the merits.  They cannot now claim wash their hands of

21  responsibility for that decision and its inevitable financial consequences.

22      **B.    ASIS and Singleton Ignored Obvious Precedent, Basing their Legal**
23      **Arguments on Inapposite or No Authority.**

24      A complaint violates Rule 11 where there is "absolutely no chance of success

25  under the existing precedents, and where no reasonable argument can be advanced to

26  extend, modify or reverse the law as it stands." _Eastway Const. Corp. v. City of New_

27  _York_, 762 F.2d 243, 254 (2d Cir. 1985).  In assessing a Rule 11 violation premised on

28  allegedly frivolous legal arguments, a court should consider the extent to which a litigant

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger-law.com

1   has researched the issues and found some support for them. Committee Notes on

2   Amendments to Federal Rules of Civil Procedure (1993) 146 FRD 401, 587. The

3   "'ostrich-like tactic of pretending that potentially dispositive authority against a litigant's

4   contention does not exist'" is, in of itself, sanctionable. *Szabo Food Service, Inc. v.*

5   *Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987), *quoting Hill v. Norfolk & Western*

6   *Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987). A claim for conspiracy fails to comply with

7   prevailing standards where, for example, it is unsupported by any supposed act in

8   furtherance of the alleged conspiracy. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir.

9   2005) (upholding Rule 11 sanctions where conspiracy plaintiff failed to plead act in

10  furtherance).

11         Several of ASIS and Singleton's legal arguments went beyond the bounds of

12  reasonable advocacy, relying on peripheral secondary sources or no authority at all,

13  while ignoring primary authority that disposed of ASIS's position.  As an example, during

14  the pendency of this litigation, two different federal judges interpreted CAN-SPAM's

15  standing provision to require a provider of Internet Access Services ("IAS") to have

16  suffered real and substantial adverse effects of a type uniquely experienced by an IAS.

17  Rather than dismissing its claims or even attempting to meaningfully distinguish the facts

18  of this case, ASIS and Singleton ultimately rested on the naked conclusion that "both the

19  *Hypertouch* and *Gordon* courts are wrong."   (Opposition to Motion for Summary

20  Judgment or in the Alternative Summary Adjudication of Issues [D.E. #335] ("ASIS Op.

21  to MSJ") at 4.)  A plea to ignore relevant authority is no argument at all.

22         As another example, before they filed the SAC, ASIS and Singleton knew that

23  Azoogle did not send the Emails, and that Azoogle's CAN-SPAM liability hinged on

24  whether Azoogle "procured" those Emails.  Also before the SAC was filed, this Court

25  issued an opinion–*Hypertouch, Inc. v. Kennedy-Western Univ.*, No. C 04-05203, 2006

26  WL 648688, at *5-6 (N.D. Cal., March 8, 2006)—clarifying that a plaintiff could satisfy the

27  CAN-SPAM's procurement requirement only by proffering admissible evidence "that [the

28  defendant] had actual knowledge or consciously avoided knowledge of a current or

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1  future violation of the CAN-SPAM Act by anyone who sent the emails at issue."

2  (Emphasis added.)  Despite an utter lack of information regarding Azoogle's alleged

3  knowledge, ASIS and Singleton plowed ahead with their case, arguing that Azoogle's

4  liability could be premised instead on Azoogle's failure to properly vet and manage its

5  lead providers.  By the time of the parties' summary judgment hearing, ASIS and

6  Singleton's only authority supporting that "vendor management" theory was a speech on

7  behalf of two individual lawmakers, made the year *after* CAN-SPAM had been passed.

8  And that speech, as the Court observed, did not represent the text of CAN-SPAM.[9]

9       ASIS and Singleton's legal argument in support of their California Business &

10  Professions Code Section 17529.5 claim fared no better.  ASIS and Singleton's

11  definition of "advertising"—culled from a concurrence in a 1925 California Court of

12  Appeal case—would have defined an advertiser as any person or entity that received

13  any benefit from an advertisement.  (ASIS Op. to MSJ at 25.)  That nonsensical

14  definition would have imposed liability on any defendant who arguably benefited from

15  alleged unlawful emails, regardless of whether the defendant knew about or had

16  anything to do with them.  Before the filing of the SAC, Judge Wilken dismissed ASIS

17  and Singleton's theory, concluding that ASIS's Section 17529.5 claim would stand only if

18  ASIS could "truthfully" assert that a defendant "advertised [its] services in the allegedly

19  fraudulent emails."  *ASIS Internet Services v. Optin Global, Inc.*, No. C 05-5124 CW,

20  2006 WL 2792436, *5 (N.D. Cal. Sept. 27, 2006).  In disregard of Judge Wilken's

21  admonishment, ASIS and Singleton filed the SAC and then renewed their bankrupt

22  "benefit"  argument in front of Your Honor, only to have Your Honor dismiss it not once

23  but twice on separate summary adjudication motions.  But for ASIS and Singleton's

24  indifference to Judge Wilken's admonition, Azoogle would never have incurred the

25  expense of defending against ASIS's Section 17529.5 claim.  On that basis alone, the

---

26  [9] At the hearing for the motion for summary judgment, counsel for ASIS stated as to the
27  interpretation of the conscious disregard requirement: "The statute is too new.  The only
thing we have is John Dingell's speech, which says exactly that."  The Court responded:
28  "Yeah, I understand.  Thank you very much Congressman Dingell, but that's not the
statute."  (Burgoyne Decl. ¶8 & Ex. G at 19:10-14.)

Case No. C-05-5124 JCS                    **AZOOGLE'S MPA IN SUPPORT OF MOTION
                                          FOR SANCTIONS**

13

1   Court should impose sanctions against ASIS and Singleton in the amount of Azoogle's

2   sought-after fees and costs.

### C. Circumstances Compel the Conclusion that ASIS and Singleton Filed the SAC for the Purpose of Coercing Settlements.

By signing a pleading, an attorney certifies that the pleading "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED. R. CIV. P. 11(b)(1). A lack of factual and legal merit to a pleading suggests that it was filed for an improper purpose, particularly where it has caused unnecessary delay and expense to other parties. W. Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* ¶17:349 (2008). An improper purpose may also be inferred from an attorney's expertise. When an experienced attorney asserts a meritless claim, a "strong inference arises" that an action was brought for an improper purpose. *Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern California*, 790 F.2d 1421, 1427 (9th Cir. 1987). The signer's "purpose" is to be tested by an objective standard.

The SAC constitutes a thinly-guised effort to coerce quick settlements from numerous defendants. Singleton represents itself to be uniquely qualified and highly experienced at "spam litigation." (Burgoyne Decl. ¶9 & Ex. H.) Despite that experience, the only proof ultimately offered in support of the SAC's sweeping allegations was a single sales lead and a range of inadmissible speculation. On summary judgment, ASIS and Singleton couldn't even muster an expert declaration or other admissible evidence connecting the Emails to each other, let alone to the almost 20 named defendants. In a January 2007 meet-and-confer, Singleton admitted that ASIS named several defendants for the sole purpose of extracting information and settlements. (Burgoyne Decl. ¶10.) True to Singleton's word, ASIS and Singleton culled settlements from every appearing defendant but Azoogle.

Had ASIS and Singleton intended to litigate this case on the merits, they would have invested in a *bona fide* expert analysis, and made a cursory attempt to identify the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-law.com

1   sender, and otherwise conducted an investigation permitting ASIS to make at least a

2   prima facie showing on summary judgment.   ASIS and Singleton's failure to do so,

3   particularly in light of Singleton's expertise and the number of named defendants, is

4   sufficient to demonstrate ASIS and Singleton's intention to use this litigation to strong-

5   arm settlements.   On that basis alone, the Court should require ASIS and Singleton to

6   pay Rule 11 sanctions in the amount of Azoogle's sought-after fees and costs.

7   **III.      Singleton Vexatiously Multiplied this Litigation.**

8   Pursuant to 28 U.S.C. Section 1927, "[a]ny attorney . . . who so multiplies the

9   proceedings in any case unreasonably and vexatiously may be required by the court to

10  satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

11  because of such conduct."   The Ninth Circuit has held that an attorney need not act in

12  bad faith for Section 1927 to apply.   Rather, when an attorney acts recklessly in

13  multiplying the proceedings, Section 1927 sanctions are warranted.   *B.K.B. v. Maui*

14  *Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002).   The test is whether an attorney's

15  conduct is objectively harassing or annoying, such that it reflects a serious disregard for

16  the orderly process of justice.   *An-Port, Inc. v. MBR Industries*, 142 F.R.D. 47 (D.P.R.

17  1992).   As explained below, throughout the course of this litigation, Singleton has

18  engaged in reckless conduct with no ostensible purpose except to harass Azoogle and

19  multiply Azoogle's costs of defense.   That conduct, as further explained below, warrants

20  an award of Azoogle's costs and fees.

21  **A.      Singleton Filed Eight Frivolous Motions, and Lost Every One.**

22  Not counting *ex parte* discovery communications and administrative requests to

23  file documents under seal, Singleton filed eight motions, not a single one of which was

24  granted, and several of which were denied without oral argument and/or with critical

25  remarks from the Court.

26  • **ASIS's Motion for Summary Adjudication of Issues** [D.E. #199] (filed on

27  04/11/07):   Singleton disregarded the stipulated order specifying the issues to be

28  briefed, and addressed issues of its own choosing.   In support of its arguments,

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   Singleton filed 40 pages of briefing and 184 pages of exhibits.   The Court denied

2   Singleton's motion, stating:   "I certainly think that the way that, Mr. Singleton, you

3   couched your motions, is completely inappropriate for summary judgment.   It's not a

4   summary judgment motion.   I'll also take you to task, but I'll leave it at that, for defying

5   the stipulation you entered into—Completely Improper."   (Burgoyne Decl. ¶29 & Ex. N at

6   2:12-17.)   The Court also warned Singleton:

7
8
9
10
11

> I don't see, Mr. Singleton, how you can prove your case unless you can find
> who sent the e-mails.  I don't believe that - - I don't believe you can, under the
> statute.  I think in order for there to be a procurement of an unlawful e-mail,
> there must be an identity of the specific sender of the email; that you can
> prove that this defendant procured the specific activity and knowingly or in
> conscious disregard of the fact that that third party was going to, had, or did,
> act in violation of the CAN-SPAM Act.  I don't see how you can possibly prove
> this case without that.  (*Id.* at 4:7-16.)

12   • **Motion for Issuance of Letters Rogatory** [D.E. #220] (filed on 05/14/07):

13   Singleton asked the Court to authorize the issuance of a foreign subpoena by the

14   Quebec, Canada judicial authority.   Singleton claimed the subpoena—directed to a

15   small, unrelated third party—was necessary to prove that Azoogle violated CAN-SPAM.

16   The Court denied Singleton's motion, finding that Singleton had "not provided any

17   justification" for the supposed connection between the third party and Azoogle.   The

18   Court concluded:   "[I]t appears that this discovery request is a 'wholly exploratory

19   operation.'"   (Order Denying Motion for Issuance of Letters Rogatory [D.E. #241] at 6.)

20   • **Motion to Supplement the Second Amended Complaint** [D.E. 231] (filed on

21   06/08/07):   A year-and-a-half after Singleton initiated this action, Singleton moved for

22   leave to supplement the SAC, claiming that searches of its spam database had revealed

23   7,000 additional emails supposedly connected to Azoogle.   The Court denied the

24   motion.   (Order Denying Plaintiff's Motion to Supplement the Second Amended

25   Complaint and Further Case Management Conference and Pretrial Order [D.E. #249].)

26   Singleton currently continues to prosecute a separate lawsuit based on those emails,

27   despite this Court's finding that ASIS lacks standing.

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

- **Motion for Preliminary Injunction Ordering the Return or Destruction of Sensitive Materials** [D.E. #268] (filed on 10/25/07):    During discovery, Azoogle requested that ASIS produce relevant server logs and other electronic evidence. Singleton refused.    Azoogle then successfully subpoenaed some of the same documents from ASIS's third party systems administrator, FalconKnight, Inc.  Singleton refused Azoogle's offer to treat the subpoenaed documents as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, and instead moved for an order requiring the documents to be returned or destroyed.  Again, the Court denied Singleton's motion without oral argument finding:

> [I]f this document is designated as "Attorneys' Eyes Only," Plaintiff has not demonstrated that it will suffer any injury as a result of the disclosure of this document. . . .  In light of the fact that these documents may be relevant to the issues in this case, it is Plaintiff's burden to show that injury would result from the disclosure of this information to [Azoogle's Expert]. This, Plaintiff has failed to do.  (Order Granting In Part and Denying In Part Motion for Preliminary Injunction and Granting In Part and Denying In Part Counter-Motion to Disclose Documents to Expert Witness [D.E. #309] at 2.)

- **Motion to Shorten Time to Hear Plaintiff's Motion for Preliminary Injunction Ordering Return or Destruction of Sensitive Materials** [D.E. #269] (filed on 10/25/07): Along with its motion for preliminary injunction, Singleton moved the Court for an expedited hearing schedule.  Again, without oral argument, the Court denied Singleton's motion.  (Order Denying Plaintiff's Motion to Shorten Time to Hear Plaintiff's Motion for Preliminary Injunction and Setting Hearing on Plaintiff's Motion for Preliminary Injunction [D.E. #277].)

- **Motion for Exclusion of Azoogle's Expert Witness** [D.E. #272] (filed on 10/26/07):    Singleton brought this procedurally improper motion seeking to exclude Azoogle's expert witness report; Azoogle had not submitted this expert report to the Court as evidence—or for any other purpose.   In support of this motion, Singleton submitted over 85 pages of exhibits.  In response, Azoogle explained:

> [ASIS's] motion is not recognized under statutory or common law. It isn't even clear what relief ASIS is seeking. If ASIS is dissatisfied with the content of Dr. Cohen's Rebuttal Report and Supplemental Report (collectively, the

**AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

"Reports"), it should move the Court for an order compelling the expert to provide the information required by Rule 26. If, on the other hand, ASIS believes that Dr. Cohen intends to give improper testimony on specific topics, ASIS must bring a motion in limine to exclude such testimony. Until ASIS chooses one of these procedurally sanctioned paths, the Court should refuse relief. (AzoogleAds.com, Inc.'s Opposition to Motion for Exclusion of Expert Witness [D.E. #282] at 5 (internal citations omitted).)

The Court denied oral argument and ultimately disregarded the motion.

- **Motion for Evidentiary Sanctions for Failure to Produce Witness at Deposition** [D.E. #285] (filed on 11/16/08):  Singleton took the deposition of Jennifer Evans after several delays caused by scheduling conflicts, unexpected medical difficulties and a death in Ms. Evans' family.  Immediately after taking the deposition, Singleton moved the Court for evidentiary sanctions arising out of the scheduling difficulties.  In denying Singleton's motion without oral argument, the Court observed: "[I]t is clear to the Court that both sides bear some measure of responsibility in the difficulty in scheduling Ms. Evans' deposition."  (Order Denying Plaintiff's Motion for Evidentiary Sanctions for Failure to Produce Witness at Deposition [D.E. #312].)

- **Motion for Summary Adjudication of Issues** [D.E. #318] (filed on 01/18/08):  In addition to opposing Azoogle's motion for summary judgment, ASIS filed its own motion for summary adjudication.  The Court denied Singleton's motion in its entirety, finding that Singleton had failed to meet its burden of production as to several issues, including ASIS's standing to bring a CAN-SPAM claim.  Specifically, the Court found that after a year-and-a-half of prosecuting its case:

> There is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by Postini) or were the subject of complaints to ASIS; there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Email. . . . In short, ASIS suffered no meaningful adverse effect as a result of the Emails of any kind. (MSJ Order at 26 (emphasis in original).)

It is unusual for a party to file eight motions.  It is extraordinary for a party to file eight motions and lose every one.  In light of Singleton's record, and the frivolousness of so many of Singleton's supporting arguments, it cannot be said that Singleton's motions

Kronenberger Burgoyne, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.law.com

1    practice was intended to advance ASIS's case.   Each and every one of Singleton's

2    reckless and unreasonable motions cost Azoogle time and money.   The Court should

3    shift that burden back to Singleton by awarding Azoogle sanctions equal to its sought-

4    after costs and fees.

5    **B.    Singleton Engaged in Abusive Offensive Discovery.**

6    Singleton's offensive discovery reveals a thinly-guised effort to impose costs on

7    Azoogle while conjuring up unrelated litigation.   As the Court is well aware, the sole

8    connection between the Emails and Azoogle was a single mortgage lead provided to

9    Azoogle from a single vendor, namely Seamless Media Corp.  This lead did not involve

10   any of Azoogle's affiliates, it did not involve ROKSO or Spamhaus, and it did not involve

11   Azoogle's telecommunication service providers.     Nevertheless, Singleton served

12   Azoogle with sweeping discovery requests, seeking all but every document relating to

13   Azoogle's lead provider business.  As limited examples, Singleton sought:

14   • All agreements between Azoogle and its 20,000 plus affiliates (RFPs No. 4, 6);

15   • All documents relating to payments Azoogle made to any of its 20,000 plus
16     affiliates from August 2005 to the present (RFP No. 7);

17   • All correspondence between Azoogle and its 20,000 plus affiliates (RFP No. 8);

18   • All of Azoogle's business plans for a two-and-a-half year period (RFPs No. 21-
19     23);

20   • All of Azoogle's documents relating to its mortgage vertical marketing program
21     (RFP No. 41);

22   • All emails that Azoogle received in its spam traps for over a year (RFP No. 46);

23   • The name, address, and telephone number for each of Azoogle's 20,000 plus
24     affiliates (Rog No. 9); and

25   • The amount of money that Azoogle paid and received for leads since 2005 (Rogs
26     No. 11-12).  (Burgoyne Decl. ¶¶11-12 & Exs. I-J.)

27   In the face of Singleton's refusal to narrow *any* of those requests, Azoogle filed its first

28   motion for protective order.  During an *in-camera* meet-and-confer regarding that motion,

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.com

1   the Court observed that Singleton's requests would have to be "narrowed dramatically."

2   (*Id.* ¶13.)

3        Nearly a year after Singleton filed the SAC, it switched its focus away from

4   Azoogle's 20,000 plus affiliates (none bearing any relation to the Bruce Wolf Lead) to

5   Azoogle's lead vendors.  Singleton demanded that Azoogle produce vendor lists—

6   including a ranking of the ten that provided Azoogle the most sales leads.  Azoogle

7   spent considerable time and money collecting this information for Singleton.  Yet, in its

8   70 pages of summary judgment briefing, Singleton did not mention any of these

9   materials, or even reference a single Azoogle lead vendor other than Seamless Media

10  Corp.

11       Singleton's abusive discovery climaxed with its service of 120 third party

12  subpoenas to Azoogle's affiliates, business partners and service providers, and to wholly

13  unrelated entities.  Those subpoenas demanded, among other things, documents

14  concerning any "SPAM complaint[s] regarding or relating to Azoogle."  (Burgoyne Decl.

15  ¶14 & Ex. K.)  Ultimately, Azoogle was forced to seek another protective order from the

16  Court.  The Court granted that order, quashing all of Singleton's then-outstanding

17  subpoenas and concluding:

18         **[I]t is apparent that Plaintiff has abused the privilege of serving

19  discovery on non-parties.**  Plaintiff has served approximately 121
    subpoenas on non-parties in this matter.  Those subpoenas, as

20  demonstrated in the case management conference statement, are not limited
    to the subject matter of the action, let alone to the claims raised in this

21  action.  To the contrary, **those subpoenas are overbroad and oppressive,
    and seek information regarding Azoogle that has nothing to do with**

22  **this lawsuit.**  (Order Re August 7, 2007 Joint Letter [D.E. #250] (emphasis

23  added).)

24       As a final, but by no means insignificant, discovery issue, Singleton engaged in

25  unreasonable and vexatious expert discovery.  The overblown "studies" on which ASIS

26  based its case were not performed by ASIS expert Jeffrey Posluns, but rather by two

27  Singleton clerical employees, Joshua Mohland and Carl Scoles.  As Azoogle briefed

28  extensively in its summary judgment papers, Mohland and Scoles's lack of expertise

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-law.com

1 was apparent in their analyses, in that both relied on inaccurate sources of information

2 and unreliable methodologies that rendered their "studies" and accompanying

3 declarations inherently unreliable. (*See* AzoogleAds.com, Inc.'s Objections to ASIS

4 Internet Services' Summary Judgment/Summary Adjudication Evidence ("Objections to

5 Evidence") [D.E. #374] at 9:1-10:16.) Still, through the spring of 2007, Singleton refused

6 to permit depositions of Mohland and Scoles, claiming they were undesignated

7 "experts." In an effort to untangle Singleton's haphazard technical arguments, Azoogle

8 was forced to retain Dr. Frederick Cohen, and to participate in three expert depositions.

9 Notwithstanding its technical bluster, on summary judgment Singleton failed to submit

10 any expert testimony—a circumstance that, in-and-of-itself, doomed ASIS's case.

11 Singleton's sweeping discovery required Azoogle to expend considerable time

12 and resources researching, reviewing, and responding to Singleton's requests. In the

13 end, none of Singleton's discovery provided any substantive support to ASIS's

14 allegations. Singleton's offensive discovery served only to multiply the costs of litigation,

15 and to harass Azoogle. Accordingly, Singleton's offensive discovery is sanctionable

16 under 28 U.S.C. §1927.

17 **C. Singleton Failed to Search for Discovery Materials, and Withheld**
18 **Existent and Obviously Relevant Electronic Evidence.**

19 At the same time Singleton was engaging in abusive offensive discovery, he and

20 ASIS were failing to fulfill their own discovery obligations. This case focused on emails

21 purportedly received through ASIS's email servers. Yet, prior to this litigation—and

22 during its pendency—ASIS and Singleton undertook no apparent efforts to preserve or

23 produce relevant electronic documents that must have existed. Examples of these

24 documents include:

25 • **Postini Records:** ASIS services provider Postini generated monthly invoices and

26 various service logs, which would have demonstrated whether and when the

27 Emails arrived and how they were routed. Singleton produced none of that

28 information.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

- **FalconKnight Records:** Other than the few pages provided through ASIS's expert Posluns, Singleton produced no server configuration data, severely limiting Azoogle's ability to track the routing of and receipt of the Emails.

- **Server Logs:** Internet servers generate a complex of "server" and "daemon" logs, including as demonstrate the receipt and routing of email. Singleton produced none of these documents.

(*See* AzoogleAds.com Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff ASIS Internet Services, Inc.'s Motion for Summary Adjudication of Issues [D.E. #338] at 11:7-12:8.) Indeed, witness after ASIS witness, including ASIS CEO Nella White, testified that Singleton made no meaningful effort to locate responsive information, and produced only hand-picked document on Singleton-selected topics. (*See, e.g.*, Burgoyne Decl. ¶¶5-6, 15, Ex. L at 138:8-23, 142:23-143:4, 143:10-145:21, 146:9-147:5, 149:4-15, Ex. D at 104:15-25, Ex. E at 71:22-72:13.) The only electronic information produced to Azoogle came not from ASIS but from ASIS's systems administrator FalconKnight. Ironically, Singleton demanded that Azoogle return or destroy the documents produced by FalconKnight, and filed a motion to accomplish the same. (The Court, as described above, denied Singleton's motion.)

By the summer of 2007, Azoogle became so worried about Singleton's failure to produce electronic documents and other information that it raised the issue with the Court. In response, the Court ordered Singleton to answer three additional interrogatories concerning ASIS's primary contentions. (Order Re June 27, 2007 Joint Letter [D.E. #242].) The Court's order warned: "Plaintiff will be precluded from introducing at trial or on summary judgment any facts to prove these contentions other than the facts set forth in response to these interrogatories." (*Id.*) Despite the Court's warning, Singleton failed to incorporate into ASIS's responses a range of information that he nevertheless attempted to submit on summary judgment:

- Josh Mohland's January 16, 2008 declaration and nine attachments summarizing Mohland's new "study" regarding the Emails' headers;

**AZOOGLE'S MPA IN SUPPORT OF MOTION FOR SANCTIONS**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

- Various Quicken Loans documents that Singleton failed even to authenticate, and that were thus inadmissible;

- Unauthenticated blog postings about spam, purportedly showing Azoogle's reputation as a spammer;

- A description of White's supposed attempt in 2005 to enter a second false lead into a second website, which attempt White failed to mention during her seven-hour deposition; and

- A description of the supposed domain history of wumort.net, purportedly showing some connection to Azoogle. (Objections to Evidence at 2:1-3:21.)

Singleton has yet to offer an excuse for his failure to comply with discovery obligations. Nor could he, since the Federal Rules of Civil Procedure do not permit withholding of discoverable information. At every stage of this litigation, Singleton's failure to provide discoverable information vexatiously multiplied Azoogle's burden of defense, and unreasonably increased Azoogle's costs in defending itself. Accordingly, the Court should grant sanctions under Section 1927.

### D. Singleton Engaged in Purposefully Obstructionist and Dilatory Tactics.

In addition to its reckless motion and discovery practice, Singleton engaged in misconduct that can only be perceived as purposefully obstructionist. This misconduct, initiated at Singleton's sole discretion, forced Azoogle to incur additional, avoidable costs:

- **Singleton Refused to Permit the Amendment of Discovery Response:** Early in discovery, Singleton refused to permit Azoogle to serve certain discovery responses after the initial deadline. (Azoogle delayed service of the responses based on Singleton's withholding of relevant information earlier requested by Azoogle.) (Defendant AzoogleAds.com, Inc.'s Motion for 1) Protective Order and 2) Leave to Amend Discovery Responses [D.E. #178] at 7:9-10:27.) Azoogle was forced to file a motion to amend. During an *in-camera* meet-and-confer over that motion, the Court

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

observed that Azoogle would "inevitably" be permitted to amend its responses. (Burgoyne Decl. ¶13.)

- **Singleton Refused to Consent to a Magistrate in its Second-Filed Case against Azoogle:** Initially, Singleton's second case against Azoogle was deemed related to this action, and so was also assigned to Your Honor. Singleton, however, refused to consent to have a magistrate hear the second case. As a consequence, both cases were referred to Judge Patel. At the initial case management conference, Judge Patel raised serious questions about Singleton's motives in refusing to consent to Your Honor, and even accused Singleton of forum shopping. As a result, Judge Patel sent this case back to Your Honor. Ultimately, Singleton's gambit delayed summary judgment by two months, and resulted in two separate actions to be litigated along two separate tracks.

- **Singleton Engaged in Improper, *Ex Parte* Communications with the Court.** During the first half of 2007, Singleton filed several improper *ex parte* letter briefs regarding discovery issues. They included letters filed on April 16 and April 23, 2007. On April 30, 2007 the Court ordered the parties "not to file any discovery motions or letters (other than joint letters) without leave of Court." (Order to Meet-and-Confer and Submit One Joint Letter Brief [D.E. #218].) Despite the Court's clear admonition, Singleton continued to file *ex parte* letter briefs. (*See, e.g.*, briefs filed May 3, 2007 [D.E. #219] and November 16, 2007 [D.E. #285].)

The above-described conduct had, and continues to have, the predictable result of harassing Azoogle and increasing Azoogle's costs of its defense. It is difficult to imagine any reasonable purpose to be served by so much of Singleton's litigation conduct. Section 1927 was intended to discourage these sorts of tactics. The Court should take advantage of that statute to award Azoogle its fees and costs resulting from Singleton's reckless and vexatious tactics.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

24

**E.    Singleton Indiscriminately Named Nearly 20 Defendants, which Led To Convoluted Inter-Party Communications, Negotiations & Filings.**

The SAC named nearly 20 defendants alleged to have conspired in the sending of the Emails.   On summary judgment, however, Singleton proffered no information sufficient to conclude that any defendant had anything to do with any of the Emails. Singleton's indiscriminate naming of defendants unnecessarily increased the costs for every named defendant, none of whom (save Azoogle) is now here to argue for its costs and fees.   It is one thing to file a raft of unprovable allegations against a single defendant.   It is quite another to file the same baseless charges against almost two score innocent parties.   But for Singleton's inclusion of so many parties, this litigation would have been significantly more streamlined, and could have been resolved at a much earlier time.   Because Singleton's shotgun approach unreasonably and recklessly increased the costs of this litigation to Azoogle and every other named defendant, the Court should grant sanctions under Section 1927.

## CONCLUSION

For all of the reasons set forth above, the Court should award sanctions to Azoogle, in the form of non-taxable costs attorneys' fees, in the amount of $912,413.84, or such portion of this sum as the Court believes is equitable and just.

Dated:  May 13, 2008

Henry M. Burgoyne, III
Karl S. Kronenberger
Jeffrey M. Rosenfeld
Margarita Calpotura
Kronenberger Burgoyne, LLP

By:                    /s/
         Henry M. Burgoyne, III

Attorneys for Defendant,
AZOOGLEADS.COM, INC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1

**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)

2

Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)

3

Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520

4

San Francisco, CA 94108
Telephone: (415) 955-1155

5

Facsimile: (415) 955-1158
hank@kronenbergerlaw.com

6

karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com

7

margarita@kronenbergerlaw.com

8

Attorneys for Defendant, AZOOGLEADS.COM, INC.

9

10

11

### UNITED STATES DISTRICT COURT

12

### NORTHERN DISTRICT OF CALIFORNIA

13

14

15

**ASIS INTERNET SERVICES,** a California
corporation,

16

Plaintiff,

17

vs.

18

**OPTIN GLOBAL, INC.,** a Delaware
Corporation, also dba Vision Media

19

Limited Corp., USA Lenders Network,
USA Lenders, and USA Debt

20

Consolidation Service; et al.,

21

Defendants.

22

Case No. C-05-5124 JCS

**DECLARATION OF HENRY M.
BURGOYNE, III IN SUPPORT OF
AZOOGLEADS.COM, INC.'S MOTION
FOR SANCTIONS**

Date:    June 20, 2008
Time:    1:30 AM
Ctrm:    A, 15th Floor

23

24

25

26

27

28

**DECL. OF H. BURGOYNE IN SUPPORT OF
AZOOGLE'S MOTION FOR SANCTIONS**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerl.com

I, Henry M. Burgoyne, III, declare as follows:

1.     I am an attorney admitted to practice in the State of California and the United States District Court for the Northern District of California.  I am a partner at the law firm of Kronenberger Burgoyne, LLP, counsel of record for Defendant AzoogleAds.com, Inc. ("Azoogle").  Unless otherwise stated, I have personal knowledge of the facts stated herein.

2.     Attached hereto as Exhibit A is a true and correct copy of an excerpt from the hearing transcript before the Honorable Claudia Wilken on April 21, 2006.

3.     Attached hereto as Exhibit B is a true and correct copy of a settlement proposal that Azoogle sent to counsel for ASIS Internet Services, Inc. ("ASIS") on April 16, 2008.  ASIS never responded to the letter.

4.     Attached hereto as Exhibit C is a true and correct copy of ASIS's verified response to Azoogle's Interrogatory No. 39.

5.     Attached hereto as Exhibit D is a true and correct copy of excerpts from the certified deposition transcript of Joshua Mohland.

6.     Attached hereto as Exhibit E is a true and correct copy of excerpts from the certified deposition transcript of Carl Scoles.

7.     Attached hereto as Exhibit F is a true and correct copy of an email I received from ASIS counsel Jason Singleton on January 8, 2007 responding to a request that ASIS withdraw the Second Amended Complaint ("SAC").

8.     Attached hereto as Exhibit G is a true and correct copy of experts from the hearing transcript before the Honorable Joseph C. Spero on March 21, 2008.

9.     Attached hereto as Exhibit H is a true and correct copy of a printout from the Singleton Law Group's website.  I printed Exhibit H at the date and time indicated thereon.

10.     In a January 2007 meet-and-confer telephone call regarding Azoogle's request that ASIS withdraw the SAC as to Azoogle, Mr. Singleton stated that ASIS named several defendants for the sole purpose of extracting information and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-law.com

**DECL. OF H. BURGOYNE IN SUPPORT OF AZOOGLE'S MOTION FOR SANCTIONS**

1   settlements.

2       11.     Attached hereto as Exhibit I are true and correct copies of ASIS's

3   interrogatories served on Azoogle.

4       12.     Attached hereto as Exhibit J are true and correct copies of ASIS's

5   requests for production served on Azoogle.

6       13.     During a March 20, 2007, in camera meet-and-confer regarding Azoogle's

7   motion for a protective order and for leave to amend certain of Azoogle's discovery

8   responses, the Court commented that ASIS's first round of written discovery requests

9   would have to be "narrowed dramatically."  The Court further observed that Azoogle

10  would "inevitably" be permitted to amend its discovery responses, despite ASIS's

11  insistence that Azoogle's supposed failure to timely serve such responses was

12  dispositive of Azoogle's liability.

13      14.     Attached hereto as Exhibit K is a true and correct copy of the attachment to

14  the 120-plus subpoenas issued by ASIS.

15      15.     Attached hereto as Exhibit L is a true and correct copy of experts from the

16  certified deposition transcript of Nella White.

17                **Information Re Attorneys' Fees Pursuant to Local Rule 54-6(b)**

18      16.     Kronenberger Burgoyne, LLP devoted a total of 3,136 hours to defending

19  this case.  I am familiar with the legal fees charged by attorneys in the San Francisco

20  area for matters similar to the instant action.  Kronenberger Burgoyne's rates are

21  comparable to, and in many cases lower than, other qualified attorneys in this area.

22      17.     On April 10, 2008, counsel for Azoogle met-and-conferred with counsel for

23  ASIS regarding Azoogle's planned requests for attorneys' fees, with the hopes of

24  resolving this issue without the need for a motion.  During this conference, counsel for

25  ASIS stated that ASIS would not agree to pay a dime in costs or fees, and would file for

26  bankruptcy if any award of costs or fees was granted.

27      18.     The following employees and contractors of Kronenberger Burgoyne

28  assisted in the defense of Azoogle in this litigation:

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

- Henry M. Burgoyne, III – partner at Kronenberger Burgoyne;

- Karl S. Kronenberger – partner at Kronenberger Burgoyne

- Jeffrey M. Rosenfeld – senior associate at Kronenberger Burgoyne

- Deepa Krishnan – associate at Kronenberger Burgoyne

- Matthew M. Thomson – associate at Kronenberger Burgoyne

- Margarita Calpotura – associate at Kronenberger Burgoyne

- Peter Toushner – former legal assistant at Kronenberger Burgoyne

- Adam Schneider – legal assistant at Kronenberger Burgoyne

- Sumeena Birdi – legal assistant at Kronenberger Burgoyne

- Lauren Creamer – legal assistant at Kronenberger Burgoyne

- Rachael P. Melliar-Smith – temporary attorney at Kronenberger Burgoyne

- Christian J. Martinez – temporary attorney at Kronenberger Burgoyne

- Alan Cohen – temporary attorney at Kronenberger Burgoyne

**I.    Description of Relevant Qualifications, Hourly Charges, and Services Rendered**

19.    I received my undergraduate degree from Georgetown University, a masters degree in journalism from the University of Arizona, and my Juris Doctor from Stanford University.  I clerked for the Honorable William Alsup following law school.  For most of the past eight years, I have been litigating and advising clients on complex intellectual property and technology-related issues.  My hourly rate rose from $350 to $425 during the course of this action, as applied to my time spent on this matter (Kronenberger Burgoyne instituted firm-wide billing increases during the course of the litigation for all of its clients).  I served as lead litigation counsel for this matter and drafted and responded to discovery, engaged in motion practice, met and conferred with opposing counsel, performed legal and fact research, conducted and defended deposition, communicated with the client, and attended hearings before the Court. Throughout this case, I and every other Kronenberger Burgoyne partner and associate

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.com

listed below were members in good standing of the California Bar.  I billed 1,069.43 hours to Azoogle for my legal services in connection with this matter.

20.    Karl S. Kronenberger received his undergraduate degree from Notre Dame University and his Juris Doctor from the University of Cincinnati.  Following law school, he served as an officer of the Army JAG Corps.  For the past several years, Mr. Kronenberger has been litigating and advising clients on complex intellectual property and technology-related issues.  Mr. Kronenberger's hourly rate ranged from $350-$425 for his time spent on this matter.  Mr. Kronenberger reviewed and drafted pleadings and discovery responses, consulted on strategy, and communicated with the client regarding this matter.  Mr. Kronenberger billed 25.13 hours for his legal services in connection with this matter.

21.    Jeffrey M. Rosenfeld received his undergraduate degree from Stanford University and his Juris Doctor from Georgetown University Law Center.  Following law school, he worked as a litigation associate at Covington & Burling and Howard Rice Nemerovski Canady Falk & Rabkin.  For the past several years, Mr. Rosenfeld has been litigating and advising clients on complex intellectual property and technology-related issues.  Mr. Rosenfeld's hourly rate ranged from $280-$340 for his time spent on this matter.  Mr. Rosenfeld drafted and responded to discovery, engaged in motion practice, performed legal and fact research, communicated with the client, and attended hearings before the Court.  Mr. Rosenfeld billed 689.85 hours for his legal services in connection with this matter.

22.    Deepa Krishnan received her undergraduate degree from Princeton University and her Juris Doctor from the University of California, Los Angeles.  Following law school, she worked as a litigation associate at Winston & Strawn and Liner Yankelevitz Sunshine & Regenstreif.  Ms. Krishnan has obtained extensive experience in legal research and writing, and in technology-related and other complex litigation practice.  Ms. Krishnan's hourly rate was $260 for her time spent on this matter.  Ms. Krishnan drafted and responded to discovery, engaged in motion practice, met-and-

1  conferred with opposing counsel, and communicated with the client.  Ms. Krishnan billed

2  186.95 hours for her legal services in connection with this matter.

3      23.   Matthew M. Thomson received his undergraduate degree from University

4  of California, Santa Barbara and his Juris Doctor from George Washington Law School.

5  Following law school, he held legal positions with eMusic.com, the Recording Industry

6  Association of America, the Software & Information Industry Association, and the

7  International Intellectual Property Institute.  Mr. Thomson has obtained extensive

8  experience in legal research and writing, as well as in technology and intellectual

9  property law.  Mr. Thomson's hourly rate was $200 for his time spent on this matter.  Mr.

10  Thomson performed legal research as to relevant issues for this matter.  Mr. Thomson

11  billed 11.57 hours for his legal services in connection with this matter.

12      24.   Margarita Calpotura received her undergraduate degree from the

13  University of California, Davis and her Juris Doctor from the Golden Gate University.

14  Ms. Calpotura has obtained extensive experience in legal research and writing, as well

15  as in technology law generally and CAN-SPAM litigation in particular.  Ms. Calpotura's

16  hourly rate ranged from $180-$220 for her time spent on this matter.  Ms. Calpotura

17  drafted and responded to discovery, engaged in motion practice, and performed legal

18  and fact research as to relevant issues for this litigation.  Ms. Calpotura billed 404.31

19  hours for her legal services in connection with this matter.

20      25.   Peter Toushner, Adam Schneider, Sumeena Birdi, and Lauren Creamer

21  served as legal assistants at various times in connection with this litigation.  All four of

22  these individuals possess college degrees and have experience in litigation practice.

23  These legal assistants engaged in filing of documents, preparation of discovery

24  materials, calendaring of Court events, and other administrative matters.  The legal

25  assistants billed 720.28 hours for their legal services in connection with this matter.

26      26.   Rachael P. Melliar-Smith, Christian J. Martinez, and Alan Cohen provided

27  limited litigation support in this matter as temporary attorneys.  These individuals

28  assisted in drafting discovery documents.  To my knowledge, at all relevant times Ms.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1    Melliar-Smith, Mr. Martinez, and Mr. Cohen were members in good standing of the

2    California Bar.  The temporary attorneys billed 28.67 hours for their legal services in

3    connection with this matter.

4         27.    Kronenberger Burgoyne has kept detailed and contemporaneous time

5    records of the legal services provided in connection with this litigation.

6         28.    Attached hereto as Exhibit M are true and correct redacted copies of

7    Kronenberger Burgoyne's billing statements for legal services and costs incurred in

8    defending this action, in each case as tendered to Azoogle, in the total amount of

9    $806,978.84. These invoices contain more thorough descriptions of the specific services

10   rendered by each person for whose services fees are claimed together with a summary

11   of the time spent by each person.

12        29.    Attached hereto as Exhibit N is a true and correct excerpt from the hearing

13   before the Honorable Joseph C. Spero on June 1, 2007.

14        I declare under penalty of perjury under the laws of the United States that the

15   foregoing is true and correct and that this Declaration was executed this 13th day of May

16   2008, at San Francisco, California.

17                                          /s/
                                   _____

18                                          Henry M. Burgoyne, III

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, AZOOGLEADS.COM, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>**OPTIN GLOBAL, INC.,** a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,<br><br>        Defendants. | Case No. C-05-5124 JCS<br><br>**DECLARATION OF STEPHEN FOX IN SUPPORT OF AZOOGLEADS.COM, INC.'S MOTION FOR SANCTIONS**<br><br>Date:    June 20, 2008<br>Time:    1:30 AM<br>Ctrm:    A, 15th Floor |

DECL. OF S. FOX IN SUPPORT OF
AZOOGLE'S MOTION FOR SANCTIONS

I, Stephen Fox, declare as follows:

1.    I am an attorney admitted to practice in the State of New York, as well as various Federal Courts, and I am a partner at the law firm of Morris & Fox PC ("Morris Fox"), New York counsel for Defendant AzoogleAds.com, Inc. ("Azoogle").  Unless otherwise stated, I have personal knowledge of the facts stated herein.

2.    Brown Rudnick Berlack Israels LLP ("Brown Rudnick") served as advisory counsel for Azoogle in the above-captioned matter.  Attached hereto as Exhibit A is a summary of the attorneys' fees and costs incurred by Brown Rudnick in connection with this litigation along with true and correct redacted copies of Brown Rudnick's invoices in connection with this litigation.

3.    Klein Zelman Rothermel LLP ("Klein Zelman") served as advisory and managing counsel for Azoogle in the above-captioned matter.  Attached hereto as Exhibit B is a summary of the attorneys' fees and costs incurred by Klein Zelman in connection with this litigation along with true and correct redacted copies of Klein Zelman's invoices in connection with this litigation.

4.    Morris Fox served as advisory and managing counsel for Azoogle in the above-captioned matter.  Attached hereto as Exhibit C is a summary of the attorneys' fees and costs incurred by Morris Fox in connection with this litigation along with true and correct redacted copies of Morris Fox's invoices in connection with this litigation.

5.    In connection with this litigation, Azoogle indemnified Aegis Lending Corporation and reimbursed it for its settlement with Plaintiff ASIS Internet Services.  Attached hereto as Exhibit D is a true and correct redacted copy of the payment receipt to Aegis Lending Corporation from Azoogle in the amount of $30,000.  Azoogle had indemnified Aegis for an additional $17,705.07 in or about 2006.

6.    Azoogle retained Dr. Frederick Cohen to serve as an expert witness in connection with this litigation.  Attached hereto as Exhibit E are true and correct copies of statements and invoices reflecting the costs incurred by Azoogle in connection with its retention of Dr. Cohen, in the amount of $105,435.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1        7.     Attached hereto as Exhibit F are true and correct copies of receipts for

2  non-taxable costs incurred by Azoogle in connection with this litigation in the amount of

3  $2,899.18.

4        I declare under penalty of perjury under the laws of the United States that the

5  foregoing is true and correct and that this Declaration was executed this 12th day of May

6  2008, at New York, New York.

7                              _____

                                    Stephen Fox

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Exhibit D

1

**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158

2

3

4

5

Attorneys for Defendant, AZOOGLEADS.COM, INC.

6

7

8

9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

11

12

**ASIS INTERNET SERVICES,** a California corporation,

Case No. C-05-5124 JCS

13

Plaintiff,

**DEFENDANT AZOOGLEADS.COM, INC.'S MOTION FOR 1) PROTECTIVE ORDER AND 2) LEAVE TO AMEND DISCOVERY RESPONSES**

14

vs.

15

**OPTIN GLOBAL, INC.,** a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,

16

17

Date:  April 20, 2007
Time:  9:30 A.M.
Courtroom A, 15th Floor
Honorable Joseph C. Spero

18

Defendants.

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

# TABLE OF CONTENTS

I.      INTRODUCTION...............................................................................1

II.     PLAINTIFF PROVIDES NO BASIS FOR ITS SWEEPING CLAIMS..................3

        A.      Plaintiff's Responses Demonstrate No Support for its CAN-SPAM Claim...3

        B.      Plaintiff's Responses Suggest No Basis for Liability Under CA Law..........4

III.    PLAINTIFF'S DISCOVERY TACTICS
        NECESSITATE A PROTECTIVE ORDER...............................................5

        A.      Standard for Granting a Protective Order...........................................5

        B.      Plaintiff's Discovery Demands Are Oppressively Broad.........................5

IV.     AZOOGLE DESERVES TO AMEND ITS SUPPOSED ADMISSIONS................7

        A.      Standard for Withdrawing Admissions...............................................7

        B.      Denial of Azoogle's Requests Would
                Preclude and Examination on the Merits............................................8

        C.      As a Matter of Law, Plaintiff Cannot Show Prejudice............................8

V.      AZOOGLE'S EFFORTS TO MEET AND CONFER.......................................9

VI.     CONCLUSION..............................................................................11

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

# TABLE OF AUTHORITIES

1

2  **Cases**

3  *Coleman v. American Red Cross* (6th Cir. 1994)
     23 F3d 1091, 1098...........................................................................1,5
4

5  *Dickey v. Churray* (E.D. Cal.)
     2006 WL 1153796, at p. 3...............................................................8

6  *Dynasty Apparel Industries, Inc. v. Rentz* (S.D.Ohio 2001)
     206 F.R.D. 596, 601-02....................................................................7
7

8  *Fernandez v. City of San Francisco* (N.D.Cal.)
     1996 WL 162993, at p. 5...................................................................8

9  *Hadley v. U.S.* (C.A.9 1995)
     45 F.3d 1345, 1348......................................................................1,7
10

11  *Hypertouch, Inc. v. Kennedy-Western University* (N.D.Cal.)
     2006 WL 648688, at *5-6 ...............................................................3-4

12  *Kerry Steel, Inc. v. Paragon Industries, Inc.* (6th Cir. 1997)
     106 F.3d 147, 154...........................................................................7
13

14  *Novopharm Ltd. v. Torpharm, Inc.* (E.D.N.C. 1998)
     181 F.R.D. 308, 310.........................................................................8

15  *Revlon Consumer Prods. Corp. v. L'Oreal, S.A.* (D.Del. 1997)
     170 F.R.D. 391, 404.........................................................................7
16

17  *Sonoda v. Cabrera* (9th Cir. 2001)
     255 F.3d 1035, 1039....................................................................2,7-8
18

19  *U.S. v. Branella* (D.N.J. 1997)
     972 F.Supp. 294, 301.......................................................................8

**Statutes and Treatises**

20

21  15 U.S.C. §§ 7701 et. seq. ("CAN-SPAM").............................................*passim*

22  California Business and Professions Code § 17529.5(a) ........................................4

23  *Rutter Group, Civil Procedure Before Trial* § 11:515.............................................1,5

24  *Rutter Group, Civil Procedure Before Trial* §11:1072............................................5

25  *Rutter Group, Civil Procedure Before Trial* § 11:1413.2.........................................6

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

## I.    INTRODUCTION

AzoogleAds.com, Inc. ("**Azoogle**") brings this motion for a protective order barring Plaintiff ASIS Internet Services, Inc. ("**Plaintiff**") from conducting sweeping discovery unrelated to any demonstrable connection between Azoogle and the wrongdoing alleged in Plaintiff's Second Amended Complaint ("**SAC**").  Azoogle also seeks an order excusing its two-week delay in responding to Plaintiff's requests for admissions, such delay having been occasioned by Plaintiff's apparent withholding of material information.

Plaintiff claims $16 million in damages based on more than 11,000 alleged violations of the CAN-SPAM Act and California law.  At present, however, Plaintiff's information demonstrates at most that <u>a single marketing lead generated in connection with a single one of those emails passed through Azoogle's systems while in transit from one third party to others</u>.  That's it.  Plaintiff has failed to provide <u>any</u> information suggesting that Azoogle sent or knew of that single email, or even that such email violated the law.  What's more, Plaintiff has proffered no cognizable theory by which it might extrapolate a violation relating to a single email into thousands and thousands of additional violations of the sort alleged in the SAC.

Still, Plaintiff has served written discovery seeking the majority of documents pertaining to Azoogle's marketing lead business going back two-and-a-half and, in one case, three years.[1]  In what smacks of an attempt to avoid an examination on the merits, Plaintiff also has refused to permit Azoogle to amend admissions supposed to result from a fifteen-day delay in Azoogle's service of its responses to Plaintiff's requests for admissions.[2]  Plaintiff's refusal is ironic – less because Azoogle overlooked Plaintiff's late service of its initial disclosures than because the deadline passed at a time Plaintiff apparently was withholding information material to its claims.  In any event, Plaintiff

---

[1] *See* Rutter, *Civil Procedure Before Trial* ("Rutter"), § 11:515 (*quoting Coleman v. American Red Cross*, 23 F3d 1091, 1098 (6th Cir. 1994) (protective order proper where discovery request would have required party "to search every file that exists" at its place of business)).

[2] *See Hadley v. U.S.*, 45 F.3d 1345, 1348 (C.A.9 1995) (admissions may be withdrawn where failure to do so "would practically eliminate any presentation of the merits of the case").

1

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1    cannot as a matter of law demonstrate prejudice.[3]  Accordingly, it would be grossly unfair

2    to reward Plaintiff for its gamesmanship.

3        Azoogle is not the first to be troubled by the disparity between Plaintiff's

4    grandiose demands on the one hand and its meager information on the other.  Almost a

5    year ago, then-Defendant Quicken Loans, Inc. ("**Quicken**") – which, like Azoogle,

6    received a single marketing lead from a single third party – made a motion for Plaintiff to

7    post security.  Judge Claudia Wilken denied that motion, but warned Plaintiff: "If you

8    had included [Quicken] in your amended complaint, you better give that some thought

9    and discuss it with your clients because I will not hesitate to award attorneys' fees for

10   Quicken if it turns out that they weren't properly included."  (Declaration of Henry M.

11   Burgoyne, III ("**Burgoyne Decl.**"), Exh. A at 16:17-21.)

12       Azoogle is not asking the Court to bar discovery.  It simply is asking the Court to

13   forestall discovery unrelated to the single, tenuous link between Azoogle and the mass

14   wrongdoing alleged in the SAC.  If that initial discovery suggests some greater

15   connection, Azoogle will work with Plaintiff to expand the boundaries of Plaintiff's inquiry.

16   If not, the parties can prepare for summary judgment.

17       Plaintiff claims CAN-SPAM cases are inherently complex.  If that's the case

18   generally, it's not so here.  The issue here is simple:  Do the Federal Rules entitle

19   Plaintiff to impose enterprise-wide discovery at a time it has failed to proffer any

20   information – not evidence, but <u>information</u> – suggesting Azoogle has done something

21   wrong?  Azoogle believes they do not, and on that basis requests an order:

22   1.    Protecting Azoogle from discovery unrelated to the single marketing lead that

23         transited Azoogle's systems and that Plaintiff alleges to have been generated

24         in connection with one of the alleged emails; and

25   2.    Permitting Azoogle to amend any admissions occasioned by Azoogle's failure

26         to timely serve its responses to Plaintiff's written discovery.

27

28   ---

[3] *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) ("[t]he prejudice contemplated by 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of the truth").

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

2        **AZOOGLE'S MO. 1) FOR PROT. ORD. AND
2) TO AMEND DISC. RESP.**

II.    **PLAINTIFF PROVIDES NO BASIS FOR ITS SWEEPING CLAIMS**

**A. Plaintiff's Responses Demonstrate No Support for Its CAN-SPAM Claim**

For a plaintiff to succeed under CAN-SPAM, it must prove, with respect to each alleged email, that the email embodies one or more CAN-SPAM violations and that the defendant initiated (sent), or "procured" the initiation of, the email.  15 U.S.C. §§ 7702(9) and (12), 7704.  In the context of an action by an ISP, "procure" means:

   i.    intentionally to pay or provide other consideration to, or to induce, another person to initiate such a message on one's behalf

   ii.   with actual knowledge, or by consciously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates [CAN-SPAM].

15 U.S.C. §§ 7702 (12), 7706(g)(2).  With respect to the second of those prongs, the naked assertion that a defendant generally "is aware that these third parties use unlawful email advertising" is insufficient, in particular where the defendant proffers evidence – for example, a declaration stating that it did not know or consciously avoid knowing of any wrongdoing – to the contrary.  *Hypertouch, Inc. v. Kennedy-Western University*, 2006 WL 648688, at *5-6 (N.D.Cal.) (Burgoyne Decl., Exh. S).

Plaintiff's discovery responses fail to disclose the email Plaintiff alleges to relate to the lead that transited Azoogle's systems.[4]  Nor do Plaintiff's responses specify the nature of the CAN-SPAM violation (violations?) embodied therein or the supposed connection between that email and the 11,000-plus other emails alleged in the SAC. Perhaps more fundamentally, Plaintiff's discovery responses and disclosures foreclose the possibility that Azoogle sent the alleged email, and provide no basis for believing that Azoogle knew, or consciously avoided knowing, that the sender was engaged, or would engage, in a pattern and practice of violating CAN-SPAM.

In prior filings, Plaintiff has attempted to fill that informational vacuum with what

---

[4] Plaintiff's responses to Azoogle's interrogatories and requests for documents, not including exhibits, are attached as Exhibits B and C, respectively, to the Burgoyne Decl.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1    amount to conspiracy theories – for example, that Internet marketing companies are part

2    of a "SPAM Cartel" organized for the purpose of laundering unlawful marketing leads.

3    (Burgoyne Decl., ¶ and Exh. D, 3:12-5:24.) While Plaintiff's "SPAM Cartel" reasoning

4    may have helped Plaintiff past the pleading stage, it did not inspired confidence in

5    Plaintiff's case generally. (*See id.* at Exh. A, at 16:17-21 (Judge Wilken: "I will not

6    hesitate to award attorneys' fees for Quicken if it turns out that they weren't properly

7    included").) Nor can Plaintiff seriously purport to rely on such theories, since, as

8    explained in *Hypertouch*, unsubstantiated "six degrees of separation"-type arguments

9    are not a proper basis for a CAN-SPAM claim. More recently, Plaintiff also has invoked

10   what amounts to "reputation" evidence – in the form of Internet printouts – though it isn't

11   clear what Azoogle's reputation has to do with Plaintiff's claims, given that the relevant

12   "pattern or practice" is that of the (as yet unidentified) sender of the alleged emails.

13   **B. Plaintiff's Responses Suggest No Basis for Liability Under CA Law**

14          California Business and Professions Code § 17529.5(a) states that it is "unlawful

15   for any person or entity to advertise in a commercial e-mail advertisement" embodying

16   any of a defined list of infirmities. An "advertiser" is any person or entity that "advertises

17   through the use of commercial e-mail advertisements." Cal. Bus. & Prof. Code. §

18   17529.1(a).

19          Plaintiff's discovery responses fail to disclose the alleged email (emails?) in which

20   Azoogle allegedly "advertised." It is probable that Azoogle did not advertise in any,

21   given that Azoogle is an Internet marketing company and that the SAC describes the

22   alleged emails as relating to mortgage lending services. In any event, if and when the

23   Court enters judgment as to Plaintiff's CAN-SPAM claims, it will ask the Court to dismiss

24   Plaintiff's California law claims for lack of subject matter jurisdiction, thereby obviating

25   Plaintiff's lack of proof. *See Hypertouch*, 2006 WL 648688 at *6 (dismissing California

26   claims after judgment for defendant entered as to CAN-SPAM).

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1    III.    **PLAINTIFF'S DISCOVERY TACTICS NECESSITATE A PROTECTIVE ORDER**

2         **A. Standard for Granting a Protective Order**

3              For good cause shown, a court may "make any order which justice requires to

4    protect a party or person from annoyance, embarrassment, oppression, or undue burden

5    or expense" resulting from another party's discovery demands.  FRCP 26(c).  Good

6    cause includes a showing that the burden or expense of the requested discovery would

7    outweigh its likely benefit, as in the case of a request that would require a party "to

8    search every file that exists" at its place of business.  Rutter, § 11:515 (*quoting Coleman*

9    *v. American Red Cross*, 23 F3d 1091, 1098 (6th Cir. 1994)).  The first factor to be

10   considered in determining the appropriateness of a protective order:  "[W]hether the

11   information is being sought for a legitimate purpose."  Rutter, § 11:1072.

12        **B. Plaintiff's Discovery Demands Are Oppressively Broad**

13             Plaintiff has failed to provide any basis to suspect that Azoogle is liable for a

14   single violation of CAN-SPAM or California law.  Still, Plaintiff has propounded discovery

15   – 20 interrogatories (22 counting compound ones), 43 requests for admissions, 39

16   document requests – requiring Azoogle to produce virtually every document relating to

17   its marketing lead business going back two-and-one-half years. [5]  One request seeks

18   _____

19   [5] *See* Burgoyne Decl., Exh. E ("**Plain. Int.**"), Exh. F ("**Plain. RFAs**"), and Exh. G ("**Plain. Doc. Req.**").
     Collectively, Plaintiff's written discovery demands that Azoogle produce or provide (among other things):

20        • Contact information for each of Azoogle's thousands of third party lead providers, along with
            Azoogle's agreements with those entities, each demonstrating a "written or electronic signature …

21          or proof of electronic signature"; a month-by-month, entity-by-entity accounting of every payment
            by Azoogle to those entities; and all documents relating to those payments, in each case going

22          back to August 1, 2005.  (Plain. Doc. Req. Nos. 4 and 7; Plain. Int. Nos. 9 and 12);

          • All communications between Azoogle and any of the identified lead providers, also since August

23          1, 2005.  (Plain. Doc. Req. No. 8);

          • Contact information for every entity to which Azoogle had provided marketing leads, along with a

24          month-by-month, entity-by-entity accounting of every payment received by Azoogle from those
            entities, in each case going back to August 1, 2005.  (Plain. Int. Nos. 10 and 11);

25        • Month-by-month accountings of marketing emails: i) sent by Azoogle's third-party lead providers

26          to asis.com; and ii) sent by Azoogle and its third party lead providers to any "Protected Computer,"
            as defined by CAN-SPAM, accompanied by sample copies of all such emails, in each case since
            August 15, 2005.  (Plain. Doc. Req. Nos. 15 and 16; Plain's Int. Nos. 4 and 5);

27        • All correspondence between Azoogle and any entity or person on the subject of unlawful email

28          advertising since August 1, 2005.  (Plain. Doc. Req. No. 9);

          • All court complaints against Azoogle stating causes of action for false email advertising or other

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1    documents from almost two years before the first alleged violation. (*See* Plain. Doc.

2    Req. No. 22.)  Much of the information sought by Plaintiff is stored in backup files, some

3    kept offsite and some of which Azoogle could search only by means of custom search

4    scripts.  (Declaration of Don Mathis in Support of Defendant's Motion (**"Mathis Decl."**)

5    ¶¶4-6.)  The estimated cost of complying with Plaintiff's written discovery:  Hundreds of

6    person hours and potentially tens of thousands of dollars in costs.  (*Id.* at ¶5.)

7        Additionally, Plaintiff has demanded the depositions of Azoogle employees Ryan

8    McVey and Lee Herrera[6] – the latter of whom, as repeatedly disclosed to Plaintiff, is a

9    technical support representative in his early twenties whom Plaintiff's "expert" identified

10   during phone calls to Azoogle.  (Burgoyne Decl., Exh. H.)  Plaintiff claims its expert

11   made those calls before Azoogle was named as a defendant.  (*Id.* at Exh. I at 2-3.)

12   Plaintiff's credibility is strained, though, since Plaintiff previously represented – twice –

13   that it identified Mr. Herrera on the Internet.  (*Id.*, Exh. J.)[7]

14       The overwhelming bulk of information sought by Plaintiff is unlikely to assist

15   Plaintiff in any way.  Azoogle's contracts and correspondence with its thousands of lead

16   providers will not reflect whether Azoogle knew, or consciously avoided knowing, that a

17   single marketing lead was procured by unlawful means.  Azoogle's communications

18   regarding unlawful email marketing will not demonstrate whether the alleged emails

19   embody violations of CAN-SPAM.  And thousands of month-by-month accountings, each

20   going back two-and-a-half years, will play no part in calculating damages, if for no other

21

22       unlawful email marketing, breach of consumer privacy, false claims act demands, libel, defamation
         or fraud.  (Plain. Doc. Req. No. 10); and

23   •   All strategic or marketing plans for Azoogle going back to January 1, 2004.  (Plain. Doc. Req. No.
         22.)

24   [6] Azoogle initially agreed to produce Mr. McVey but withdrew that offer after concluding that Plaintiff had
     withheld documents to be used at Mr. McVey's deposition.  Azoogle did not agree to voluntarily produce

25   Mr. Herrera, since Plaintiff wouldn't disclose how Plaintiff identified Mr. Herrera or why Plaintiff wanted to
     depose him, and since Mr. Herrera is not a managing agent of Azoogle.  (Burgoyne Decl., Exh. 9 (*citing*

26   Rutter, Federal Civil Procedure Before Trial ("Rutter"), § 11:1413.2 (parties are under no obligation to
     produce other than managing agents.))

27   [7] Plaintiff also has demanded a deposition of Azoogle's spam "abuse manager," spam "abuse team"

28   supervisor, or "PMK" on spam issues, but has refused invitations to specify a list of topics as would be
     required under FRCP 30(b)(6).  (*Id.* at Exh. K.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1 | reason than Plaintiff's repeated assertion that it seeks only statutory damages. (*Id.* at

2 | Exh. L, 3:1-6, and Plain. Int. Resp. No. 11.)

3 |       As stated, Azoogle is not asking the Court to halt discovery. Rather, it is asking

4 | the Court to draw boundaries reflective of the single, tenuous link between Azoogle and

5 | the mass wrongdoing alleged in the SAC. If Plaintiff develops a cogent theory based

6 | upon that information, or otherwise discovers additional relevant information, it can

7 | explain as much to Azoogle and the Court, and on that basis request additional

8 | discovery. If not, the parties can begin preparing for summary judgment.

9 | **IV.    AZOOGLE DESERVES TO AMEND ITS SUPPOSED ADMISSIONS**

10 | **A. Standard for Withdrawing Admissions**

11 |       "[T]wo requirements must be met before an admission may be withdrawn: (1)

12 | presentation of the merits of the action must be subserved, and (2) the party who

13 | obtained the admission must not be prejudiced by the withdrawal." *Sonoda v. Cabrera*,

14 | 255 F.3d 1035, 1039 (9th Cir. 2001).

15 |       The first prong of that test is satisfied where the court's refusal to allow withdraw

16 | or amendment "would practically eliminate any presentation of the merits of the case."

17 | *Hadley v. U.S.*, 45 F.3d 1345, 1348 (C.A.9 1995). The presentation of the merits is

18 | practically eliminated where, for example, the party opposing amendment seeks to use

19 | the other party's supposed admission as the basis for summary judgment. *Dynasty*

20 | *Apparel Industries, Inc. v. Rentz*, 206 F.R.D. 596, 601-02 (S.D.Ohio 2001).

21 |       As for the second prong, "[t]he prejudice contemplated by 36(b) is not simply that

22 | the party who obtained the admission will now have to convince the factfinder of the

23 | truth; rather, it relates to the difficulty a party may face in proving its case, for example by

24 | the unavailability of key witnesses in light of the delay." *Sonoda*, 255 F.3d at 1039.

25 | Prejudice does not equal the need to obtain evidence; instead, it equals a handicap in

26 | the form of "sudden" need to obtain evidence. *Kerry Steel, Inc. v. Paragon Industries,*

27 | *Inc.*, 106 F.3d 147, 154 (6th Cir. 1997); *see Revlon Consumer Prods. Corp. v. L'Oreal,*

28 | *S.A.*, 170 F.R.D. 391, 404 (D.Del. 1997) (prejudice resulted from fact that discovery

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1   already had closed).[8]  The burden of proving prejudice is on the party opposing

2   amendment.  *Sonoda*, 255 F.3d at 1039.

### B. Denial of Azoogle's Request Would Preclude An Examination of the Merits

4   It cannot be questioned that denying Azoogle's motion to amend would subserve

5   the presentation of this action's merits.  Plaintiff has stated its intention to use Azoogle's

6   supposed admissions as the basis for a motion for summary adjudication, likely to

7   include the issue of Azoogle's supposed knowledge of the SAC's alleged wrongdoing.

8   (Burgoyne Decl., ¶26.)  Permitting Plaintiff to do so would foreclose any examination of

9   that and other fundamental issues, despite that <u>Plaintiff's discovery responses provide

10  no basis to suspect that Azoogle did anything wrong</u>.  If Plaintiff believes Azoogle to be

11  connected to the 11,000-plus alleged violations, it should disclose the information

12  supporting that belief.  Otherwise, it should cease erecting procedural roadblocks to a

13  full and fair adjudication of its claims.

### C. As a Matter of Law, Plaintiff Cannot Show Prejudice

15  Plaintiff cannot, as a matter of law, demonstrate prejudice from Azoogle's failure

16  to sooner serve its responses to Plaintiff's requests for admissions.  Azoogle, the last

17  named defendant, did not become an active participant in this litigation until the

18  December 15, 2006 status conference, which the Court reset in order to give Azoogle

19  time to answer the SAC.  What's more, Azoogle served its responses just <u>15 days late</u>,

20  and within hours of the March 9 mediation.  At the time, summary judgment had been

21  indefinitely postponed and trial was not scheduled to begin for almost a year.  Under

22  those circumstances, it strains Plaintiff's credibility to even suggest prejudice.

23  Plaintiff's refusal to waive Azoogle's untimeliness is especially ironic in light of

24  Plaintiff's own apparent withholding of information material to Azoogle's responses.

25

---

26  [8] *See also Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 310 (E.D.N.C. 1998) (no prejudice from
    responses served 14 days late); *U.S. v. Branella*, 972 F.Supp. 294, 301 (D.N.J. 1997) (no prejudice from
27  responses served two weeks late, where opposing party did not rely on responses when preparing for
    trial); *Dickey v. Churray*, 2006 WL 1153796, at p. 3 (E.D. Cal.) (no prejudice from responses served 14
    days late); *Fernandez v. City of San Francisco*, 1996 WL 162993, at p. 5 (N.D.Cal.) (no prejudice from
28  responses filed 48 days late, even when motion to amend not brought until a year later).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  Beginning February 8, Plaintiff promised a full preview of its case at the parties' March 9

2  mediation. (Plaintiff refused to disclose the planned basis of that presentation on the

3  ground that it was "attorney work product.") (*Id.* at ¶ 17, Exh. I at p. 11 (Plaintiff letter

4  brief, referring to Plaintiff's mediation statement, not received by Azoogle until March 2).)

5  Plaintiff's responses to Azoogle's requests for documents repeatedly stated that

6  responsive documents "will be produced," though none ever was. (Id. at Exh. B, Nos. 2,

7  6-10, 16-17.) Then, during the parties' February 19 meet-and-confer, Plaintiff claimed to

8  know of up to 800 documents establishing Azoogle's knowledge of the SAC's alleged

9  wrongdoing. Those and other statements – combined with Plaintiff's vacuous discovery

10  responses, deficient even in comparison to those served on Quicken – convinced

11  Azoogle that Plaintiff was withholding material information. (*compare* Exh. B, Plain. Int.

12  Resp. Nos. 1, 3-4 *with* Exh. M (Plaintiff's Response to Quicken's First Set of

13  Interrogatories) Nos. 1, 3 and 4.) It would be grossly unfair for Plaintiff to benefit from

14  that gamesmanship.

15      The only arguable prejudice is Plaintiff's burden in opposing portions of this

16  motion. And Plaintiff invited that prejudice when it denied Azoogle's repeated requests

17  for an extension. When Plaintiff served its initial disclosures on the day of the December

18  15, 2006 status conference, no defendant cried foul. (Burgoyne Decl., ¶14.) Plaintiff

19  should have followed that lead. Because Plaintiff cannot show prejudice, the Court

20  should grant Azoogle's motion to amend its responses to Plaintiff's requests for

21  admission.

22              V.    **AZOOGLE'S EFFORTS TO MEET AND CONFER**

23      In early January, Azoogle and Plaintiff began an ongoing meet-and-confer

24  process over their discovery requests and responses.[9] On February 8, Azoogle initiated

25  a meet and confer regarding Plaintiff's discovery responses, culminating in a February

26  19 in-person meeting. (*Id.* at Exhs. N and O.) Plaintiff's counsel opened that meeting by

27

28  [9] Azoogle was not the only party to encounter difficulty managing discovery with Plaintiff. (*See, e.g., Id.* at Exh. P (five emails and four letters from Quicken or Plaintiff concerning discovery and other disputes).)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  stating that the parties were "unlikely to reach agreement" on any of the issues raised in

2  Azoogle's letter.  At points during the meeting, Plaintiff's counsel:

3     • Responded, when asked whether Plaintiff could identify the particular Azoogle
4       lead providers alleged to be "spammers":  "I don't know if I can or not";

5     • Refused to place any potential limits – numerical or otherwise – on the scope of
     Plaintiff's planned third-party discovery from Azoogle's lead providers; and

6     • Stated, "it's not [Plaintiff's] obligation to tell you" what Plaintiff considered to be
7       the violations embodied in the 11,000-plus alleged emails … and instructed that if
     Azoogle wanted that information it should examine those emails for itself.

8  (*Id.* at ¶20.)

9       Plaintiff and Azoogle met again after the parties' March 9 mediation.  In preceding

10  days, the parties had corresponded about two issues:  i) Plaintiff's designation of email

11  addresses as "Highly Confidential-Attorneys Eyes Only"; and ii) Plaintiff's refusal to grant

12  Azoogle an extension to respond to Plaintiff's requests for admission.  (*Id.* at Exh. Q.)

13  Azoogle suggested the parties broaden the meeting to encompass all outstanding

14  discovery, although Plaintiff's counsel refused to engage in a "quid pro quo" discussion.

15  Plaintiff refused to reconsider its stance on either issue.  (*Id.* at ¶22.)

16       The week of March 12, the parties met-and-conferred at length concerning

17  Plaintiff's refusal to allow Azoogle to amend its supposed admissions and regarding

18  Plaintiff's discovery requests and Azoogle's response thereto.  (*See Id.* at Exh. R.)

19  Counsel for Plaintiff and Azoogle spoke on March 14 and March 15.  During the March

20  15 call, which lasted for more than an hour, Plaintiff agreed to reconsider certain of its

21  positions, and to limit certain of its demands to exclude information regarding the

22  provision of marketing leads unrelated to email.  Azoogle also agreed to reconsider

23  certain of its positions.  Plaintiff refused, however, to permit Azoogle to amend its

24  supposed admissions, and stated its intention to use them in support of a motion for

25  summary adjudication, likely to include the issue of Azoogle's alleged knowledge.  (*Id.* at

26  ¶26.)  Now certain that the issues raised herein would not be resolved short of Court

27  intervention, Azoogle filed this motion.

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

## VI.    CONCLUSION

Plaintiff's discovery responses and disclosures provide no basis to suspect that Plaintiff will be able to prove a single CAN-SPAM or California Business and Professions Code violation, much less 11,000 of them.  In the face of that reality, it would be grossly unfair to permit Plaintiff to heap months and months of costly discovery on Azoogle, or to benefit from supposed admissions occasioned by Plaintiff's own apparent withholding information.  When the merits phase of this litigation is over, and perhaps sooner, Azoogle, like Quicken before it, will ask the Court to shift to Plaintiff the growing financial burden of this litigation.  In the meantime, and in the interest of sooner arriving at that point, Azoogle requests that the Court enter Azoogle's proposed order:

1.    Protecting Azoogle from discovery unrelated to the single marketing lead that passed through Azoogle's systems and that Plaintiff alleges to have been generated in connection with one of the alleged emails; and

2.    Permitting Azoogle to amend any admissions occasioned by Azoogle's failure to timely serve its responses to Plaintiff's written discovery.

**KRONENBERGER BURGOYNE, LLP**

Dated:      March 16, 2007                    _____/s/_____
                                              Henry M. Burgoyne, III, Attorneys for
                                              Defendants
                                              **AZOOGLEADS.COM, INC.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

1

**<u>CERTIFICATE OF SERVICE</u>**

2

  I hereby certify that on March 16, 2007, I electronically filed with the Clerk of

3

Court the following documents through the ECF system:

4

**1)  DEFENDANT AZOOGLEADS.COM, INC.'S MOTION FOR 1) PROTECTIVE**

5

**ORDER AND 2) LEAVE TO AMEND DISCOVERY RESPONSES**

6

**2)  DECLARATION OF HENRY M. BURGOYNE IN SUPPORT OF**
**AZOOGLEADS.COM, INC.'S MOTION FOR 1) PROTECTIVE ORDER AND 2) LEAVE**

7

**TO AMEND DISCOVERY RESPONSES**

8

**3)  [PROPOSED] ORDER GRANTING DEFENDANT AZOOGLEADS.COM, INC.'S**
**MOTION FOR 1) PROTECTIVE ORDER AND 2) LEAVE TO AMEND DISCOVERY**

9

**RESPONSES**

10

All parties will be provided Notice of this filing through the ECF system.

11

12

13

         _/s/_____

14

         Peter Touschner

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerl.aw.com

Exhibit E

## EXHIBIT "A"

1.  All emails, letters, correspondence, notes, memoranda and electronic data, which references and or relates to, any SPAM complaint regarding or relating to Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.)

    By SPAM, we mean any electronic email message that is unsolicited, violates the CAN-SPAM Act, or caused any person or entity to complain about such email message. If actual complaint emails from consumers fall within this demand, the contact data from such consumers should be redacted.

2.  All emails, letters, correspondence, notes, memoranda and electronic data exchanged between you, (responding party) and Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.)

3.  All contracts between you (responding party) and Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.)   What is particularly requested, is the actual executed (signed) contracts.

4.  All applications and information forms requested by and submitted to Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.)

5.  The electronic data, if any, representing any email address suppression list provided by Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.) to you (responding party).

6.  All domain names, URL's, and IP addresses of all internet web pages (or documents sufficient to identify same) used by you to generate mortgage leads, including the electronic files representing such web pages.

7.  If you purchased mortgage leads from any entity or person, where such mortgage leads were, or could have been sold to Azoogle, produce documents or correspondence sufficient to identify such person or entity.

8.  If you (responding party) sold any mortgage leads to Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.) and such leads were not transmitted to Azoogle in real time, but were rather sent to Azoogle in a flat file, Excel file, or similar electronic file, produce all such electronic files.

9.  All newsletters, marketing materials, administrative notices, and marketing creatives provided by Azoogle, Inc. (Azoogle.com, Inc., Azoogleads.com, Inc.) to you (responding party).

Please contact Jason Singleton, or Richard Grabowski, (707.441.1177) to arrange for reimbursement for production\reproduction costs incurred.

Exhibit F

1

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4    ASIS INTERNET SERVICES,        )

5                    PLAINTIFF,  )

6    VERSUS                        )  CASE NO. CO5-5124 JCS

7                                  )  JUNE 1, 2007

8    OPTIN GLOBAL, INC.            )  SAN FRANCISCO, CALIFORNIA

9                    DEFENDANT.  )

10   _____)

11            BEFORE THE HONORABLE JOSEPH C. SPERO

12          UNITED STATES DISTRICT COURT MAGISTRATE

13

14   APPEARANCES:

15   FOR PLAINTIFF:    JASON SINGLETON, ESQ.

16

17

18

19

20   FOR DEFENDANT:    HANK BURGOYNE, ESQ.

21

22   ***APPROPRIATE APPEARANCES WILL APPEAR

23   ON HARD COPY TO BE FORWARDED SHORTLY.

24   REPORTED BY:    JUANITA GONZALEZ

25                 CSR NO. 3003

2

1          THE CLERK:  CALLING CASE CO5 -5124, ASIS INTERNET

2   SERVICES VERSUS OPTIN GLOBAL, INC.

3          YOUR APPEARANCES, PLEASE, COUNSEL.

4          MR. SINGLETON:  GOOD MORNING.  JASON SINGLETON FOR

5   PLAINTIFF.

6          MR. BURGOYNE:  HANK BURGOYNE, KRONENBERGER AND

7   BURGOYNE, ALONG WITH JEFF ROSENFELD, FOR DEFENDANT.

8          THE COURT:  SO BOTH MOTIONS ARE DENIED WITHOUT

9   PREJUDICE.  THIS IS SINGULARLY INAPPROPRIATE FOR SUMMARY

10  ADJUDICATION, AND I'M NOT ABOUT TO MAKE RULINGS ON ULTIMATE

11  ADMISSIBILITY ON SUMMARY JUDGMENT WITHOUT ACTUALLY HAVING THE

12  CASE TEE'D UP.  I CERTAINLY THINK THAT THE WAY THAT, MR.

13  SINGLETON, YOU COUCHED YOUR MOTIONS, IS COMPLETELY INAPPROPRIATE

14  FOR SUMMARY JUDGMENT.  IT'S NOT A SUMMARY JUDGMENT MOTION.

15          I'LL ALSO TAKE YOU TO TASK, BUT I'LL LEAVE IT AT THAT,

16  FOR DEFYING THE STIPULATION YOU ENTERED INTO -- COMPLETELY

17  INPROPER.  NOW, GETTING BEYOND THAT, THIS IS A DISCOVERY

18  QUESTION, AND I AM GOING TO MAKE YOU SIT IN MY JURY ROOM 'TILL

19  YOU'RE ALL DONE, BUT I'LL GIVE YOU SOME GUIDANCE.  HERE IS THE

20  GUIDANCE.  THIS IS NOT YOUR ORDINARY GUIDANCE.  THIS IS SORT OF

21  THE GUIDANCE IN THE "BETTER FOLLOW THIS GUIDANCE" OR HAVE TO

22  MAKE A RULING.

23          BUT I DON'T UNDERSTAND EXACTLY WHAT JUDGE LAPORTE DID.

24          MR. BURGOYNE:  I DON'T EITHER, YOUR HONOR.

25          THE COURT:  HAVE YOU LOOKED AT IT?  YOU DIDN'T SAY

4

1   E-MAILS TO BE SENT.  RIGHT?  THAT'S WHAT WE'VE GOT HERE, THAT'S

2   THE ALLEGATION, SO I DON'T SO HOW IT'S ANY DIFFERENT.  I WAS

3   HOPING THAT IN YOUR WISDOM, YOU WOULD HAVE ACTUALLY LOOKED AT

4   THAT SINCE MR. SINGLETON DIDN'T GIVE ME ANY OF THE BRIEFS IN THE

5   CASE, NO IDEA WHAT SHE WAS TALKING ABOUT.  IF YOU DIDN'T, YOU

6   DIDN'T.  THAT'S FINE.

7            SECOND, I DON'T SEE, MR. SINGLETON, HOW YOU CAN PROVE

8   YOUR CASE UNLESS YOU CAN CAN FIND WHO SENT THE E-MAILS.  I DON'T

9   BELIEVE THAT -- I DON'T BELIEVE YOU CAN, UNDER THE STATUTE.  I

10  THINK IN ORDER FOR THERE TO BE A PROCUREMENT OF AN UNLAWFUL

11  E-MAIL, THERE MUST BE AN IDENTITY OF THE SPECIFIC SENDER OF THE

12  E-MAIL; THAT YOU CAN PROVE THAT THIS DEFENDANT PROCURED THE

13  SPECIFIC ACTIVITY AND KNOWINGLY OR IN CONSCIOUS DISREGARD OF THE

14  FACT THAT THAT THIRD PARTY WAS GOING TO, HAD, OR DID, ACT IN

15  VIOLATION OF THE CAN-SPAM ACT.  I DON'T SEE HOW YOU CAN POSSIBLY

16  PROVE THIS CASE WITHOUT THAT.

17           MR. SINGLETON:  DEFENDANT ENTERED INTO A CONTRACT FOR

18  THE CONTRACTOR TO SEND OUT E-MAILS TO GENERATE LEADS WHICH

19  AZOOGLE CONTRACTED TO PURCHASE.  THEY HAVE, I THINK, 20,000

20  AFFILIATES, IS WHAT CAME OUT IN THE DEPOSITION OF DON MATHIS.

21  THERE CAN NEVER BE SPECIFIC SCIENTER AS TO A PARTICULAR

22  AFFILIATE OR A SPECIFIC SET OF E-MAILS THAT WOULD EVISERATE THE

23  CAN-SPAM ACT.  THEY HAVE A PATTERN IN PRACTICE OF HIRING --

24           THE COURT:  THAT'S  JUST -- THIS IS NOT AT PATTERN OF

25  PRACTICE ISSUE.  YOU HAVE TO SHOW THAT, AND YOU MAY BE ABLE TO

Exhibit G

**E-Filing**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASIS INTERNET SERVICES,

        Plaintiff,

    v.

OPTIN GLOBAL, INC., ET AL.,

        Defendants.

                    /

No. C-05-05124 JCS

**ORDER DENYING MOTION FOR ISSUANCE OF LETTERS ROGATORY [Docket No. 220]**

## I.    INTRODUCTION

Plaintiff, Asis Internet Services, brings a Motion for Issuance of Letters Rogatory (the "Motion") seeking issuance of letters rogatory directed to the appropriate judicial authority in Montreal, Quebec, Canada, requesting an oral examination of, and document production by, the Corporate Secretary of third party Bluerockdove.com, Inc., ("Bluerockdove") or, in the alternative, the employee who is most knowledgeable regarding Bluerockdove's e-marketing software and relationship with Defendant AzoogleAds.com, Inc. ("Azoogle"). Plaintiff contends that discovery from this third party is necessary to prove that Defendant Azoogle knew or consciously avoided knowing that its affiliates sent commercial e-mails that violated the CAN-SPAM Act. For the reasons stated below, the Motion is DENIED.

## II.    BACKGROUND

### A. Facts

Plaintiff Asis Internet Services, a California based internet access provider, received in excess of 10,000 unsolicited commercial e-mails between the period of October 25, 2005, and November 14, 2005. Second Amended Complaint for Damages and Injunctive Relief at 1, 7. Each

1  e-mail contained a link directing the recipient to various internet sites, including wwmort.com,
2  bbmort.com, and xxmort.com. Declaration of Richard E. Grabowski in Support of Plaintiff's
3  Motion for Letter Rogatory ("Grabowski Decl.") at 5. Each of these links led to the same actual site
4  with identical information, requesting that an individual fill out a profile to receive free financial
5  quotes. *Id.* On October 27, 2005, Plaintiff's President, Nella White, filled out a request form linked
6  from one of the e-mails using the fictitious name Bruce Wolf. *Id.* The next day, various mortgage
7  brokers left messages on an answering machine set up to receive any responses made to the Bruce
8  Wolf profile. *Id* at 6. Several mortgage brokers subsequently stated that they received the Bruce
9  Wolf lead from Azoogle, an internet marketing company, and Azoogle has stated that it received the
10  Bruce Wolf lead from one of two different entities, John Strothers or Seamless Media Corp. *Id.* 6.

11  Bluerockdove, based in Quebec, Canada, offers e-mail marketing software designed to help
12  businesses "plan, develop, and implement successful e-marketing campaigns." Declaration of Jason
13  Singleton in Reply to Opposition to Motion For Issuance of Letters Rogatory ("Singleton Decl."),
14  Ex. A. According to Bluerockdove's company profile, the key features of this software include a
15  complaint management tool, data segmentation, web integration, and advanced server and IP
16  management. *Id.* Each Bluerockdove customer is also assigned an account manager providing
17  direct support with delivery assistance, business development, and understanding industry trends. *Id.*
18  Bluerockdove and Azoogle were listed as "partners in spam" for 2005 in reports issued by
19  SPAMHAUS's Register of Known Spamming Operations ("ROKSO"). Grabowski. Decl. at 3, 7.

20  **B. Procedural History**

21  In its Second Amended Complaint, Plaintiff alleges that the over 10,000 unsolicited
22  commercial e-mails received by its server violated provisions of the CAN-SPAM Act, specifically 15
23  U.S.C. §§ 7704(a)(1), (2), (3), and (5), and 15 U.S.C. §§ 7704(b)(1) and (2), as well as California
24  Business and Professions Code § 17529.5. Second Amended Compl. at 8-14. Plaintiff alleges that
25  Defendants were part of a joint business venture working together to generate leads for the mortgage
26  brokers through the use of these "spam" e-mails. Second Amended Compl. at 6.

27  Although it has been unable to identify the actual senders of the offending e-mails, Plaintiff
28  contends that Defendant Azoogle was the entity responsible for inducing the senders to send them.

United States District Court
For the Northern District of California

1 Second Amended Compl. at 8. The CAN-SPAM Act provides a cause of action against one who
2 induces another to violate the Act "with actual knowledge, or by consciously avoiding knowing,"
3 that the other party will do so. 15 U.S.C. § 7706(g)(2). Accordingly, a key issue is the relationship
4 between Defendant and other entities to determine whether Defendant did, in fact, procure the
5 sending of the e-mails. Grabowski Decl. at 5.

6      On May 10, 2007, Plaintiff filed this motion for issuance of letters rogatory requesting an
7 oral deposition of, and production of documents by, Bluerockdove's Corporate Secretary or
8 representative most knowledgeable about Bluerockdove's e-marketing products and its relationship
9 with Azoogle. Motion at 2. Plaintiff alleges that the deposition of this Bluerockdove witness is
10 necessary to prove its case that Azoogle knew or consciously avoided knowing that its affiliates sent
11 the e-mails at issue in violation of the CAN-SPAM Act. Grabowski Decl. at 6. Specifically,
12 Plaintiff believes that discovery of the data contained in the software allegedly provided by
13 Bluerockdove to Azoogle will lead to further evidence linking Azoogle to the e-mails at issue in this
14 case. *Id.* at 7.

15      In support of the Motion, Plaintiff alleges, first, that Bluerockdove provided Defendant
16 Azoogle with software that it used in 2005 to manage its affiliate network. *Id.* Plaintiff believes that
17 Azoogle used this software to, among other things, track sales and manage payments to its affiliates.
18 *Id.* However, Plaintiff cites no evidence on the record indicating that Azoogle did, in fact, use the
19 software provided by Bluerockdove.

20      Second, Plaintiff contends that Bluerockdove was an affiliate of Azoogle during the alleged
21 incident period. *Id.* Plaintiff bases this allegation on the fact that Azoogle and Bluerockdove are
22 listed as "partners in spam" by SPAMHAUS ROKSO reports for 2005. *Id.* Plaintiff does not,
23 however, provide detail as to the significance or credibility of being labeled "partners in spam" on
24 this list.

25      Defendant Azoogle argues that there is good cause for denying Plaintiff's Motion because it
26 is an example of excessive third party discovery that Plaintiff is using as a "fishing expedition."
27 AzoogleAds.com, Inc.'s Opposition to Plaintiff's Motion For Letters Rogatory at 3-6. Defendant
28 also contends that even if the claims in Plaintiff's Motion are true, the information Plaintiff is

3

1  seeking concerning Bluerockdove's software would not serve to advance its case because it would
2  not provide evidence regarding who actually sent the offending e-mails. *Id.* Accordingly, Defendant
3  asserts that the Motion is beyond the scope of discovery provided by the Federal Rules and should be
4  denied. *Id.*

5  **III.  ANALYSIS**

6  **A.  The Court has the discretionary authority to issue letters rogatory**

7  A letter rogatory is a formal written request sent by a court to a foreign court asking that the
8  testimony of a witness residing within that foreign court's jurisdiction be taken pursuant to the
9  direction of that foreign court and transmitted to the requesting court for use in a pending action.
10 *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129 (3rd Cir. 1983); Wright, Miller, & Marcus, Federal
11 Practice and Procedure (2007), § 2083.  A letter rogatory can also include requests for the production
12 of documents. *See United States v. Reagan*, 453 F.2d 165, 168 (6th Cir. 1971) (affirming district
13 court's issuance of letters rogatory seeking documents from investigation conducted by German
14 authorities).  Federal Rule of Civil Procedure 28(b) stipulates that a deposition may be taken in a
15 foreign country "(2) pursuant to a letter of request (whether or not captioned a letter rogatory)."  Fed.
16 R. Civ. Pro. 28(b).  The Canada Evidence Act also specifically provides that a court outside of
17 Canada may serve letters rogatory upon a Canadian court.  R.S.C. 1985, c. C-5, s. 46.

18 A court is inherently vested with the authority to issue letters rogatory. *See United States v.*
19 *Staples*, 256 F.2d 290, 292 (9th Cir. 1958); *Reagan*, 453 F.2d at 172.  28 U.S.C. § 1781 also
20 implicitly provides federal courts with authority to issue letters rogatory.  28 U.S.C. § 1781(a)(2).[1]
21 Whether to issue such a letter is a matter of discretion for the court. *See United States v. Mason,*
22 1990 WL 185894, 3 (4th Cir. 1990).  When determining whether to exercise its discretion, a court
23 will generally not weigh the evidence sought from the discovery request nor will it attempt to predict
24 whether that evidence will actually be obtained. *DBMS Consultants Ltd. v. Computer Assocs. Int'l,*
25 *Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990); *B & L Drilling Elecs. v. Totco*, 87 F.R.D. 543, 545 (W.D.

26

27 [1] 28 U.S.C. § 1781 provides the State Department with the power "to receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international
28 tribunal, officer, or agency to whom it is addressed, and to receive and return it after execution."  28 U.S.C. § 1781(a)(2).

United States District Court
For the Northern District of California

1  Okla. 1978); *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 27 (D. Conn. 2003).

2  Ultimately, a court's decision whether to issue a letter rogatory requires an application of Rule 28(b)

3  in light of the scope of discovery provided for by the Federal Rules of Civil Procedure. *See Evanston*

4  *Ins.*, 2006 WL 1652315 at 2 (stating that Rule 28(b) "must be read together" with Rule 26(c) in

5  determining whether to issue letter rogatory); *B & L Drilling Elecs.*, 87 F.R.D. at 545 (stating that

6  Rule 28(b) "must be read together" with Rule 26(c) in determining whether to issue a letter

7  rogatory); *DBMS Consultants Ltd.*, 131 F.R.D. at 369-70 (holding that request for letter rogatory was

8  consistent with liberal discovery provisions of Rule 26(a), b(1)).

9       **B.     Application to the facts of the present matter**

10      In the present matter there is good cause for the Court to deny Plaintiff's motion for the

11  issuance of a letter rogatory. There is insufficient evidence in the record linking Azoogle and

12  Bluerockdove, and, consequently, the request does not "appear[] reasonably calculated to lead to the

13  discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Were Plaintiff to demonstrate that

14  Azoogle did in fact utilize the software operated by Bluerockdove as alleged, the Court may have

15  grounds for granting the Motion by issuing a letter rogatory requesting a deposition based on written

16  questions pursuant to Rule 31. Given the absence of such evidence, Plaintiff's motion should be

17  denied.

18      Plaintiff contends that Bluerockdove provided Defendant with the software that Defendant

19  used to manage its affiliate network during the alleged incident period. Grabowski Decl. at 7.

20  Plaintiff asserts that accessing this software and the corresponding database operated by

21  Bluerockdove "would provide invaluable evidence in tracking down the relationship between the

22  actual senders of the e-mails and Azoogle." Motion at 2. Specifically, Plaintiff believes that the

23  Bluerockdove software may have utilized "click through tracking information" thereby allowing

24  Defendant to track which affiliates generated which leads for payment purposes. Reply to

25  Opposition to Motion for Issuance of Letters Rogatory at 5. Plaintiff also contends that

26  Bluerockdove's status as designer of this software and operator of the corresponding database

27  suggests that Bluerockdove would have access to certain types of detailed information concerning

28  Defendant's affiliate tracking that Defendant itself would not have. Grabowski Decl. at 7. Finally,

5

1 Plaintiff contends that Bluerockdove was an affiliate of Azoogle's for the purpose of sending
2 commercial e-mail, and that, accordingly, information regarding their relationship could shed light
3 on Azoogle's relationship with other affiliates. *Id.*

4 Although these assertions concerning the alleged relationship between Defendant and
5 Bluerockdove have some force, Plaintiff offers no concrete evidence to support them. The only
6 evidence that Plaintiff offers linking Azoogle and Bluerockdove is that they are listed as "partners in
7 spam" in SPAMHAUS ROKSO reports. Plaintiff does not, however, provide any information
8 regarding the legitimacy of this organization, how its reports were created, the time period that the
9 reports cover, or the meaning of the "partners in spam" label. Plaintiff has not provided any
10 justification for why the Court should draw the inference that Defendant utilized Bluerockdove's
11 software or that the companies were affiliates during the period in which the offensive e-mails were
12 sent. Thus, it appears that this discovery request is a "wholly exploratory operation." *Mack v. Great*
13 *Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989). If Plaintiff were to produce evidence
14 demonstrating that Azoogle did in fact use the software provided by Bluerockdove to manage its
15 affiliates, then the Court could justifiably reconsider its ruling. In such a case, the Court might issue
16 a letter requesting that the deposition be conducted pursuant to written questions in accordance with
17 Rule 31. Absent such a showing, the Motion is denied.

18 **IV. CONCLUSION**

19 For the foregoing reasons, the Motion is DENIED.

20 IT IS SO ORDERED.

21

22 Dated: June 29, 2007

23

24 JOSEPH C. SPERO
United States Magistrate Judge

25

26

27

28

6

Exhibit H

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   ASIS INTERNET SERVICES,                    No. C-05-05124 JCS

9          Plaintiff,                          **ORDER DENYING PLAINTIFF'S**
                                               **MOTION FOR EVIDENTIARY**
10     v.                                      **SANCTIONS FOR FAILURE TO**
                                               **PRODUCE WITNESS AT DEPOSITION**
11  OPTIN GLOBAL, INC., ET AL.,                **[Docket No. 285]**

12         Defendants.
    _____/

13

14         Plaintiff has filed a Motion for Evidentiary Sanctions for Failure to Produce Witness [Jen

15  Evans] at Deposition (the "Motion") [Docket No. 285].  The Court has determined that the Motion is

16  appropriate for decision without oral argument.  The Court has reviewed the record in this case, and

17  it is clear to the Court that both sides bear some measure of responsibility in the difficulty in

18  scheduling Ms. Evans' deposition.  Moreover, Ms. Evans has now been deposed.  Accordingly,

19  good cause appearing, the Motion is DENIED.

20         IT IS SO ORDERED.

21

22  Dated: December 4, 2007

23                                             _____

24                                             JOSEPH C. SPERO
                                               United States Magistrate Judge
25

26

27

28