**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant Member Source Media, LLC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES,** a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**MEMBER SOURCE MEDIA, LLC,** *et al.*,<br><br>Defendants. | CASE NO. CV-08-1321-EMC<br><br>**DECLARATION OF HENRY M. BURGOYNE, III IN SUPPORT OF MEMBER SOURCE MEDIA, LLC'S MOTION TO STAY CASE**<br><br>Date of Hearing:   August 27, 2008<br>Time of Hearing:   10:30 a.m.<br>Location:   Courtroom C |

CASE NO. CV-08-1321-EMC                1                **DECLARATION OF H. BURGOYNE ISO MTN. TO STAY CASE**

I, Henry M. Burgoyne, III, declare as follows:

1. I am an attorney admitted to practice in the State of California and the United States District Court for the Northern District of California. I am a partner at the law firm of Kronenberger Burgoyne, LLP, counsel of record for Defendant Member Source Media, LLC. ("Member Source"). Unless otherwise stated, I have personal knowledge of the facts stated herein.

2. I served as lead counsel for Defendant, AzoogleAds.com, Inc. ("Azoogle") in the case *ASIS Internet Services, Inc. v. Optin Global, Inc. et al.*, Case No. 05-5124 JCS (the "Prior Case"). During my work on the Prior Case, I learned numerous facts about Plaintiff ASIS Internet Services ("ASIS") through the documentary evidence and testimony produced by ASIS.

3. On April 24, 2008 ASIS filed its notice of appeal of the Prior Case (the "Appeal"). On August 4, 2008 ASIS filed a 60-page opening brief in the Appeal. In its opening brief, ASIS argued: 1) that the district court erred in finding that CAN-SPAM required a showing of a particular type of significant harm specific to an IAP beyond carrying unlawful emails over its facilities; 2) that the district court erred in using a notice standard to decide the question of conscious avoidance under CAN-SPAM; and 3) the district court erred in finding that the emails at issue were not fraudulent advertisements for the defendant. The Appeal is currently pending before the Court of Appeals.

4. Over the past few years, ASIS has brought ten CAN-SPAM lawsuits based on emails sent to ASIS's former customers. The complaints for the ten lawsuits are nearly identical.

5. I engaged in several meet-and-confers with ASIS's counsel, Jason Singleton, during which Mr. Singleton expressed his concern that a stay might result in spoliation of evidence. Specifically, Mr. Singleton argued that Member Source and/or third parties might purge documents containing information about the 5,000 emails at

issue in this case, which Mr. Singleton claimed could concern any number of third parties.

      6. Attached hereto as Exhibit A is a true and correct copy of an excerpt from the certified transcript of proceedings from the June 27, 2008 hearing before the Honorable Joseph C. Spero in *ASIS Internet Services v. Azoogle.com, Inc.*, Case No. 07-4630 JCS.

      7. Attached hereto as Exhibit B is a true and correct copy of the Notice of Related Case contained in ASIS's opening brief in the Appeal.

      8. Attached hereto as Exhibit C is a true and correct copy of the Statement of Issues contained in ASIS's opening brief in the Appeal.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct and that this Declaration was executed on August 12, 2008, at San Francisco, California.

                                              /s/
                                      Henry M. Burgoyne, III

**EXHIBIT A**

```
                                              Pages 1 - 6

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

        Before The Honorable Joseph C. Spero, Magistrate Judge

        ASIS INTERNET SERVICES,       )
                                      )
                Plaintiff,            )
                                      )
          VS.                         )   NO. C 07-4630 JCS
                                      )
        AZOOGLE.COM, INC.,            )
                                      )
                Defendant.            )
        _____)

                                          San Francisco, California
                                          Friday, June 27, 2008

           TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                                  RECORDING

        APPEARANCES:

        For Plaintiff:
                                Singleton Law Group
                                611 L Street - Suite A
                                Eureka, California  95501
                          BY:   JASON SINGLETON (via telephone)
                                ATTORNEY AT LAW

        For Defendant:
                                Kronenberger Burgoyne LLP
                                150 Post Street - Suite 520
                                San Francisco, California  94108
                          BY:   HENRY M. BURGOYNE
                                ATTORNEY AT LAW




        Reported By:    Kelly L. Bryce
                        Court Reporter Pro Tem


                    Computerized Transcription By Eclipse
```

Case 3:07-cv-04630-JCS   Document 43   Filed 07/14/2008   Page 2 of 7
Case 3:08-cv-01321-EMC   Document 40-2   Filed 08/12/2008   Page 3 of 15

2

```
 1    Friday - June 27, 2008                              1:31 p.m.
 2
 3             THE CLERK:  Calling case C 07-4630, Asis Internet
 4    Services versus Azoogle.com.
 5             Counsel, please state your appearances.
 6             MR. SINGLETON:  Good afternoon, Your Honor.  Jason
 7    Singleton appearing for the plaintiff Asis Internet Services.
 8             MR. BURGOYNE:  Hank Burgoyne of Kronenberger
 9    Burgoyne for defendant Azoogle.
10             THE COURT:  All right.  Thank you.
11             Here's my proposal:  Let's stay this case until the
12    appeal is decided on the first case.  What do people think
13    about that?
14             MR. SINGLETON:  First for the plaintiff, Your Honor,
15    that would be fine.  If the case has already been stayed since
16    August 24th, and I think there's -- that's 2007 -- I think
17    there's a reasonable probability that the electronic data that
18    the plaintiff needs, and I'm not certain, but at least a 50/50
19    chance that the electronic data from third parties is probably
20    no longer there.
21             By the time it gets back on appeal, it's likely that
22    that's true.  So, actually the plaintiff would like a
23    dismissal; and if there was some way to get that dismissal
24    without seeing a petition or a bill of costs, well, then,
25    plaintiff would be interested in that.
```

Case 3:07-cv-04630-JCS   Document 42   Filed 07/14/2008   Page 3 of 7
Case 3:08-cv-01321-EMC   Document 40-2   Filed 08/12/2008   Page 4 of 15

3

1           THE COURT:  Oh.  Oh.
2           MR. BURGOYNE:  Well, I can tell from the way that
3   everyone in the courtroom is looking at me --
4           THE COURT:  Yes, we're all looking at Mr. Burgoyne.
5           MR. BURGOYNE:  -- that I'm supposed to say, "What a
6   fantastic offer.  We'll take it."  And, of course, if that's
7   the direction we're moving, that's where we're going to end up.
8           The one thing I will add is that, even though we're
9   just a couple of ticks into this case, we're already talking
10  about five figures to our client.  I just can't say how unfair
11  I think it is that our client has to swallow that; and I think
12  what we should be talking about is a dismissal with some
13  negotiated amount which is sufficient for my client to
14  understand that it's been heard and it's --
15          THE COURT:  Well, I don't know.  I'm not going to
16  get into those negotiations and that wasn't the proposal.  The
17  proposal was a dismissal, each side to bear their own attorney
18  fees and costs.  If you want to do that, you want to do that.
19  If you don't want to do that, you don't want to do that.
20          My proposal was I'll just stay this case, because it
21  seems to me that there is an extreme likelihood that it rises
22  or falls with what the Circuit does on the first case.  So that
23  was my proposal.
24          But if there's a way to forever keep anybody from
25  having to spend another minute on this case, well, that might

Case 3:07-cv-04630-JCS   Document 42   Filed 07/14/2008   Page 4 of 7
Case 3:08-cv-01321-EMC   Document 40-2   Filed 08/12/2008   Page 5 of 15

4

1  be more advantageous; but the proposal wasn't to pay money, so
2  I don't know.
3              MR. BURGOYNE: Well, and just to be clear, Your
4  Honor, I think that --
5              THE COURT: I understand your position. I
6  understand your position. The question is: Are you willing to
7  agree that the Court should dismiss it right now each side to
8  bear their own attorney fees and costs?
9              I guess I should ask -- I guess, Mr. Singleton,
10 you're talking about with prejudice with respect to the issues
11 raised in this case?
12             MR. SINGLETON: That's correct, Your Honor.
13             MR. BURGOYNE: With prejudice, Your Honor, I can say
14 with 99 percent certainty. I would like to ask the client, and
15 I don't think it delays the process because, of course, we'd be
16 doing a stipulation, so...
17             THE COURT: Okay.
18             MR. BURGOYNE: Yeah, let's definitely pursue that.
19             THE COURT: Okay. So that is the proposal. The
20 proposal is a stipulation to dismissal with prejudice of this
21 case. Obviously the other case continues in the fashion of
22 it's subject to settlement, if you want to settle it or not;
23 but this case continues -- the other case continues.
24             This case, under the proposal, would be dismissed
25 with prejudice, each side to bear their own attorney fees and

Case 3:07-cv-04630-JCS   Document 42   Filed 07/14/2008   Page 5 of 7
Case 3:08-cv-01321-EMC   Document 40-2   Filed 08/12/2008   Page 6 of 15
5

1  costs. That proposal, if you can all agree to it, go ahead and
2  file the dismissal. If you can't agree to it, then we need to
3  have a conference I suppose.
4       Why don't I do this: I'm going to be out of town
5  for a couple of weeks starting, actually, tomorrow. Let me put
6  it on for a telephone status conference with you all in three
7  weeks, say like the 18th of July if that works for people.
8       **MR. SINGLETON:** Let me take a look here.
9       **THE COURT:** Yeah, why don't you take a look at your
10 calendars and see if the 18th works for a telephone call.
11 Obviously, if you've dismissed it, we won't have the telephone
12 call.
13      **MR. SINGLETON:** July 18th is good for plaintiff,
14 Your Honor. In the odd event that we can't get the dismissal
15 with prejudice, and plaintiff, of course, is going to enter a
16 stay during the appeal, there are a handful of subpoenas that
17 we'd like to send out to domain-name registration companies;
18 that -- these e-mails, as the Court may recall, do have the
19 Azoogle ads on them. They were sent by Asis whose -- basically
20 the e-mails were sent from a domain which was registered behind
21 the privacy service.
22      So at the very least, if the case is going to be
23 stayed, there is probably five or ten subpoenas -- probably
24 less than ten I would say -- that I would like to send out.
25      **THE COURT:** Well, here's what I would like you to

```
 1  do:  What I would like you to do is, if by the week of the 14th
 2  of July you all haven't agreed to dismiss the case, file a Case
 3  Management Statement which attaches whatever discovery you
 4  think you need during the appeal; and then we can talk about
 5  what, if any, will be going forward on the 18th.
 6          MR. SINGLETON:  That will work.
 7          THE COURT:  Okay.  But, I think, this may be the
 8  last we see of each other on this case.
 9          MR. BURGOYNE:  On this case.
10          THE COURT:  On this case.  Oh, no.  We're going to
11  see each other endlessly, and I made all these rulings that who
12  knows whether the Circuit is going to go along with.  We may be
13  buddies for a long time.
14          MR. BURGOYNE:  We wouldn't have it any other way.
15                  (Laughter)
16          THE COURT:  I'm sure Mr. Singleton feels the same
17  way.
18          Okay.  Well, thank you all for making yourselves
19  available on this Friday afternoon, and I'll talk to you in
20  three weeks.
21          MR. SINGLETON:  Excellent.  Thank you, Your Honor.
22          THE COURT:  Thank you.
23              (Proceedings adjourned at 1:37 p.m.)
24
25
```

# CERTIFICATE OF REPORTER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

__/S/ Kelly Bryce__        7/13/08
Signature of Transcriber    Date

# EXHIBIT B

No. 08-15979

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ASIS INTERNET SERVICES, a
California corporation,

    Plaintiff/Appellant,

vs.

AZOOGLE.COM, INC., a Delaware
corporation,

    Defendants/Appellees.

APPEAL
D.C. # CV-05-5124 JCS
Northern District of California

APPELLANT'S OPENING BRIEF

SINGLETON LAW GROUP
**Jason K. Singleton,** California Bar #166170
611 "L" Street, Suite A
Eureka, CA 95501
(707) 441-1177 / Fax 441-1533

Attorney for Plaintiff/Appellant,
ASIS INTERNET SERVICES

facts surrounding the emails indicate that there is a material issue of fact that should be sent to a jury to decide.

On this basis the Court should overturn the District Court's holding as to *California Business and Professions Code* §17529.5.

## VII. CONCLUSION

The District Court's ruling regarding standing should be reversed as it incorporates an incorrect definition of adverse affect. The District Court's other rulings should be reversed as discussed above.

Dated:    August 1, 2008

JASON K. SINGLETON
SINGLETON LAW GROUP

## NOTICE OF RELATED CASES

**PLEASE TAKE NOTICE** the within action raises substantially the same or closely related issues as the appeal now pending before the above entitled court entitled: *JAMES S. GORDON v VIRTUMUNDO, INC.*, Case No. 07-35487, on appeal from the Western District of Washington, Case No. CV-06-0204 JCC.

Respectfully submitted,

SINGLETON LAW GROUP

Dated:    August 1, 2008

Jason K. Singleton, Attorney for
Appellant ASIS INTERNET SERVICES

**EXHIBIT C**

No. 08-15979

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ASIS INTERNET SERVICES, a California corporation,

    Plaintiff/Appellant,

vs.

AZOOGLE.COM, INC., a Delaware corporation,

    Defendants/Appellees.

## APPEAL
D.C. # CV-05-5124 JCS
Northern District of California

## APPELLANT'S OPENING BRIEF

**SINGLETON LAW GROUP**
**Jason K. Singleton**, California Bar #166170
611 "L" Street, Suite A
Eureka, CA 95501
(707) 441-1177 / Fax 441-1533

Attorney for Plaintiff/Appellant,
ASIS INTERNET SERVICES

## I.    JURISDICTION

The federal District Court for the Northern District Of California had jurisdiction over this action pursuant to 28 *USC* §1331 for violations of the *CAN-SPAM Act of 2003* (15 *USC* §§7701 et seq) (hereafter "CSA"). Pursuant to pendant jurisdiction, and related causes of action, arising from the same facts, were also brought under California law, including, but not limited to, violations of *California Business and Professions Code* §17529.5.

The Court of Appeals has jurisdiction pursuant to 28 *USC* §1291 to review an appeal from a Federal District Court's final decision.

The District Court issued its Final Order on March 27, 2008, granting Defendant's Motion for Summary Judgment. Appellant filed its notice of appeal on April 18, 2008. The notice of appeal was timely filed within 30 days per *FRAP* 4(a)(1)(A).

## II.    STATEMENT OF ISSUES

1. Under the *CSA* to establish standing is it sufficient for an Internet Access Provider (IAP) to show proof that the emails were carried over the facilities of the IAP or must the IAP demonstrate "significant" harm specific to the emails and peculiar to an IAP to show adverse affect within the meaning of 15 *USC* §7706(g)(1)?

2. Under the *CSA* to show conscious avoidance and procurement is it sufficient

for an Internet Access Provider to produce evidence that Defendant internet marketer did no investigation of its hired affiliates or must the IAP show evidence that Defendant had actual notice that an affiliate would violate the *CSA* to meet the requirements of 15 *USC* §7706(g)(2)?

3. Under *California Business and Professions Code* §17529.5 is it sufficient for an IAP to produce circumstantial proof that a defendant is the advertiser in an email or must direct proof be produced?

### III.  STATEMENT OF THE CASE

The purpose of the *CSA* is to stop senders of commercial emails from sending emails with false and misleading header information and subject lines, and protect recipients and providers of Internet Services from such emails. The *CSA* specifically provides standing to a provider of Internet Services, adversely affected, to bring an action under the *CSA*.

The FTC has found that Internet Service Providers (also known as Internet Access Providers (hereafter "IAP")) by use of SPAM filters have significantly reduced the effect of SPAM on consumers. **FTC Staff Report:** *Spam Summit: The Next Generation of Threats and Solutions*, November 2007, P 2 and Appendix A (Courtesy Copy – Vol.4, P770-808).

However, the IAPs efforts have come at a cost. Through good planning and diligent effort IAPs have put into place filtering systems, bandwidth, and

2