**Jason K. Singleton,** State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski,** State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
611 "L" Street, Suite A
Eureka, CA 95501

(707) 441-1177
FAX  441-1533

Attorneys for Plaintiff, ASIS INTERNET SERVICES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation<br><br>       Plaintiff,<br>vs.<br><br>MEMBER SOURCE MEDIA, LLC, a California limited liability company, et al.,<br><br>       Defendants. | Case No. C-08-1321 EMC<br><br>**PLAINTIFF'S REPLY TO DEFENDANT 'S OPPOSITION TO MOTION TO SEAL**<br><br>DATE:  September 3, 2008<br>TIME:    10:30 a.m.<br>CTRM: C, 15th floor |

**Plaintiff, ASIS INTERNET SERVICES,** herein replies to Defendant Member Source Media's Opposition to File Certain Documents under Seal..

Defendant asserts that the items requested sealed by Plaintiff do not meet the requirements for sealing as required by LR 79.5.

The documents requested sealed by Plaintiff are the actual emails sent to Plaintiff by Defendant's affiliates. These emails contain email accounts owned by Plaintiff ASIS. These emails are the corporate property of ASIS. Defendant is well aware of what is contained in these files and the sensitive nature of Plaintiff's email accounts. Unlike as asserted by Defendant, ASIS has never exposed its email addresses to public exposure and Defendant provides no evidence that these email addresses have ever been exposed. If Defendant has any such evidence then it should present it so that Plaintiff can begin prosecution of the offending parties. If Defendant has exposed Plaintiff's email accounts to bulk email

1 processors, then Defendant has done so in direct violation of the Protective Order in this case.
2 Plaintiff has always requested that its email addresses be kept confidential.

3 Plaintiff requests that its email addresses be kept confidential because of the exposure
4 to injury from spammers and hackers.  Hackers regularly attempt to illegally penetrate ISP's
5 directory servers with the intent of stealing email address lists to sell to spammers.  Exposing
6 this list of emails to the public would subject Plaintiff to even more SPAM attacks than it
7 currently endures.  In addition, most of the email addresses belonged to actual consumers at
8 one time.  Those consumers have the ability to re-activate those accounts.  They would then
9 be subject to increased spam attacks.  In addition, a portion of the email addresses are internal
10 administrative accounts used by ASIS to run its business.  Exposure of these addresses would
11 lead to a significant increase of SPAM, and since these are administrative accounts may also
12 lead to security breaches on Plaintiff's servers.

13 Defendant's aspersions that Plaintiff wishes to receive more SPAM in order to bring
14 SPAM suits is ridiculous.  Neither Plaintiff nor any other ISP needs to do anything to get more
15 SPAM.  Plaintiff receives approximately 200,000 SPAM emails per day.  Large ISPs such as
16 Microsoft or AOL receive over a billion emails a day.  Every ISP, including Plaintiff, must pay
17 continuously to filter and process these SPAM emails.  The estimated cost for processing
18 SPAM is $198 billion per year worldwide.  The Internet Direct Marketing industry (SPAMMERs)
19 generates about $2 billion per year in revenue.  This means that the public pays $198 billion
20 per year so the SPAMMERS can walk away with $2 billion.  This is why the legislature created
21 the **CAN SPAM ACT** and created a private attorney general action by ISPs.  That is why
22 Plaintiff is bringing suits in order to stop spamming by both injunction and statutory penalties.
23 This is the purpose of the **CAN SPAM Act of 2003** and the reason the legislature provided
24 standing to ISPs. Defendant is a well known spammer with multiple judgments  for spamming.
25 Plaintiff is asserting its rights as established under the **CAN SPAM Act of 2003** in prosecuting
26 a case against a known spammer who has misused Plaintiff's resources to send garbage to
27 Plaintiff's customers and Plaintiff's servers.  It is not true that these SPAM emails only went to
28 inactive accounts, they also went to live consumer accounts.  However, because Plaintiff is

1  adamant about protecting its customers it will not jeopardize their safety by involving them in
2  lawsuits against SPAMMERS.
3        Plaintiff delivered the SPAM emails with Plaintiff's un-redacted email accounts as proof
4  that Plaintiff had received the emails. Because of the volume of the emails, 5006 for MSM and
5  214 for Vantage, Plaintiff has to deliver the emails electronically on CD. The electronic form
6  used allows the Court to view the emails in an email browser without actually loading the
7  emails on its computer, thus avoiding the problems with viruses and worms prevalent in
8  SPAM. Therefore, while Plaintiff is only designating its email accounts as confidential, it is
9  impossible to produce the data in a manner that the Court can use without designating the
10 entire file confidential. If the Court requires, Plaintiff can produce a set of emails, not under
11 seal, with Plaintiff's email accounts redacted. However, in this form the emails will not
12 demonstrate that they were sent to "asis.com" email addresses.
13       Defendant's motives in making this claim are suspect, as Defendant's counsel have
14 always attempted to expose Plaintiff's corporate information in an attempt to force Plaintiff to
15 withdraw. The Court should not support the efforts of a known spammer to expose Plaintiff's
16 protected information.

**SINGLETON LAW GROUP**

Dated:     August 21, 2008          /s/ Jason K. Singleton
                                    Jason K. Singleton
                                    Richard E. Grabowski, Attorneys for Plaintiff,
                                    **ASIS INTERNET SERVICES**