**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         NORTHERN DISTRICT OF CALIFORNIA
7
8     ASIS INTERNET SERVICES,                    No. C-08-1321 EMC
9                    Plaintiff,
                                                 **ORDER RE CROSS-BRIEFS RE**
10         v.                                    **PREEMPTION**
11    MEMBER SOURCE MEDIA, LLC,
                                                 **(Docket Nos. 80-81)**
12                   Defendant.
      _____/
13
14
15         Plaintiff Asis Internet Services, a California corporation, filed suit against Defendant

16    Member Source Media, LLC ("MSM"), a California limited liability corporation.  The complaint

17    alleged two causes of action: (1) that MSM violated §§ 7704(a)(1), (2) and 7704(b)(1), (2) of Title

18    15 of the United States Code, also known as the Controlling the Assault of Non-Solicited

19    Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), and (2) that MSM violated § 17529.5

20    of the California Business and Professions Code.  On January 28, 2010, this Court dismissed, with

21    prejudice, Asis's first cause of action under the CAN-SPAM Act based on lack of standing.  *See*

22    Docket No. 79 (order).  The Court subsequently requested that the parties brief the issue of whether

23    the CAN-SPAM Act preempts the remaining state claim.

24         Having considered the parties' briefs and accompanying submissions, as well as the oral

25    argument of counsel and all other evidence of record, the Court hereby finds that the CAN-SPAM

26    Act preempts in part Asis's § 17529.5 claim.  The Court dismisses the preempted portion of the

27    claim and declines to exercise supplemental jurisdiction over the non-preempted portion.

28

**United States District Court**
For the Northern District of California

## I.   DISCUSSION

Asis claims that MSM violated the CAN-SPAM Act and § 17529.5 when MSM sent 5,006 commercial electronic mail messages (e-mails) to Asis's servers containing (1) "header information that was materially false or misleading" and (2) "subject line[s] that a person would know would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents of the message." Compl. ¶¶ 9, 11. The primary issue here is whether the CAN-SPAM Act preempts Asis's state claim.[1]

The CAN-SPAM Act contains a preemption provision which provides as follows:

> (1)   In general. This chapter supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.
>
> (2)   State law not specific to electronic mail. This chapter shall not be construed to preempt the applicability of:
>
> > (A)   State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or
> >
> > (B)   other State laws to the extent that those laws related to acts of fraud or computer crime.

15 U.S.C. § 7707(b)(1), (2). In short, the CAN-SPAM Act preempts any state statutes or regulations that regulate the use of e-mail for commercial messages, unless the statutes or regulations specifically prohibit "falsity or deception" in commercial e-mails.

Section 17529.5 is a statute prohibiting the distribution of any e-mail advertisement that "contains falsified, misrepresented, or forged header information" or "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(2), (3). Whether § 17529.5 is excepted from CAN-SPAM preemption hinges on the interpretation of the phrase "falsity or deception" as used in § 7707(b)(1) -- *i.e.*, whether falsity and/or deception requires a showing of all the elements of common law fraud, namely,

---

[1] On January 28, 2010, the Court granted MSM's motion to dismiss the federal claim under the CAN-SPAM Act based on lack of standing. *See* Docket No. 79 (order).

misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. *See Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). This interpretation is critical because § 17529.5 does not require the reliance and damages elements. *See Asis Internet Services v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 941 (N.D. Cal. 2009) (stating that "[s]ection 17529.5 does not . . . purport to require reliance or actual damages"). Further, Asis concedes that it would be unable to prove reliance or damages, although it contends that it does not need to. *See* Pl.'s Br. at 2. MSM, on the other hand, argues that all five elements must be met in order for a state law clam to survive preemption.[2] *See* Def.'s Br. at 5. Thus, the basic question for the Court is whether Asis must plead reliance and damages in order for its claim to be excepted from CAN-SPAM preemption.

A.     *Gordon*

In determining the issue at hand, the Court is guided by two well established principles: (1) "there is a presumption against supplanting 'the historic police powers of the States' by federal legislation 'unless that [is] the clear and manifest purpose of Congress" and (2) "express preemption statutory provisions should be given narrow interpretation." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) and *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005)).

To date, there have been only two circuit court decisions interpreting the CAN-SPAM preemption provision. *See Gordon*, 575 F.3d at 1040; *Omega World Travel, Inc. v.*

///

///

///

///

///

---

[2] The parties agree that Asis must, at a minimum, show that MSM made a material misrepresentation, that MSM knew the misrepresentation was false, and that MSM intended to mislead Asis.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1   *Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006).[3]  In the instant case, both parties argue that the

2   Ninth Circuit's decision in *Gordon* favors their position.

3        In *Omega World Travel*, Mummagraphics claimed that Omega World Travel had violated

4   the CAN-SPAM Act and Oklahoma law when it sent e-mails containing technical inaccuracies in

5   the header information and had failed to stop sending e-mails to recipients who had opted out.

6   *Omega World Travel, Inc.*, 469 F.3d at 352.  In analyzing the phrase "falsity or deception," the

7   Fourth Circuit determined that "'deception' requires more than bare error, . . . while 'falsity' . . . can

8   convey an element of tortiousness or wrongfulness ," ultimately concluding that the phrase refers to

9   "traditionally tortious conduct."  *Id.* at 354.  It found that the state statute was "not limited to

10  inaccuracies in transmission information that were material" and held that Mummagraphics' state

11  law claim was preempted because it was one for immaterial errors.  *Id.* at 353.

12       The Ninth Circuit was presented with an almost identical preemption issue when Gordon

13  alleged that Virtumundo violated Washington's Commercial Electronic Mail Act by sending e-mails

14  with header information that "misrepresent[ed] or obscur[ed] the identity of the sender."  *Gordon*,

15  575 F.3d at 1059.  The Ninth Circuit analyzed the preemption provision and came to the same

16  conclusion as the Fourth Circuit -- that "falsity or deception" refers to "traditionally tortious

17  conduct."  *Id.* at 1062 (citing *Omega World Travel*, 469 F.3d at 354).  The Ninth Circuit concluded

18  that Gordon's state law claim was preempted because it was based on mere technical and immaterial

19  allegations of header deficiencies, and was not based in "traditional tort theories."  *Gordon* 575 F.3d

20  at 1064.  Traditional tort theories of falsity and deception as contemplated by the savings claused

21  construed in *Gordon* require that the false or deceptive information be material and that the falsity

22  either be intended or tend to mislead.  *Id.* at 1062.

23

24  ─────────────

25       [3] Prior to *Gordon*, the federal district courts in California had been divided on the interpretation of the preemption provision, particularly with respect to whether plaintiffs must plead all the elements

26  of common law fraud to have their § 17529.5 claims survive preemption.  *See Kleffman v. Vonage Holding Corp.*, No. C-07-02406 GAF, 2007 WL 1518650, *3 (C.D. Cal. May 23, 2007) (holding that

27  plaintiff's claim was preempted because he did not allege a "traditional tort theory" of fraud); *Asis Internet Services v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935 (N.D. Cal. 2009) (holding

28  that plaintiff's claim was not preempted even though it did not plead reliance and damages); *Asis Internet Services v. Vistaprint USA*, 617 F. Supp. 2d 989 (N.D. Cal. 2009) (same).

United States District Court

For the Northern District of California

*Gordon* did not directly address the precise issue before the Court here -- *i.e.*, whether a plaintiff must plead reliance and damages in order for its state law claim to be saved from preemption. *See Asis Internet Services v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645, at *31 (N.D. Cal. Apr. 1, 2010) (Docket No. 24) (noting that *Gordon* "did not clearly resolve this split" in the Northern District as to whether plaintiffs could only plead falsity or deception by pleading all of the elements of common law fraud).  In addressing this issue in a recent decision of this Court, Judge Conti found these elements need not be alleged.

In *Asis Internet Services v. Subscriberbase,Inc.*, Judge Conti noted that the CAN-SPAM Act and § 17529.5 were only intended to prohibit "attempted or potential deception," those "subject lines that are only 'likely to mislead,' without regard to whether or not they have actually ever misled anyone." *Id.* at *34.  Noting that the preemption provision was created so that "preemption would turn on whether a state targets the behavior of advertisers," Judge Conti concluded that reliance and damages need not be pleaded because they relate only to the receiver's behavior, rather than that of the advertiser. *Id.* at *36.  Specifically, he stated that "whether the elements of reliance and damages manifest in any instance depends upon the naivete, vulnerability, or circumstance of the recipient." *Id.*  Judge Conti further held that requiring the fraud elements of reliance and damages was not necessary to a uniform regulation system of commercial e-mail, the ultimate purpose of the preemption provision; these elements only serve to limit who could sue under § 17529.5. *See id.* at *36, 38-39.

The Court has carefully reviewed Judge Conti's decision and is persuaded by its reasoning. Accordingly, the Court agrees with the holding in *Subscriberbase* and finds that Asis need not plead reliance and damages in order for its claim to be excepted from preemption.  To be sure, the Court is mindful of Congress' concern regarding frivolous lawsuits and the scope of plaintiffs allowed to bring suit against e-mail advertisers.  In a concurring opinion to *Gordon*, Judge Gould emphasized that "Congress did not aim to provide a remedy to anyone or any entity who sought out a position where the alleged harm might inevitably occur . . . for a person seeking to operate a litigation factory." *Gordon*, 575 F.3d at 1068.  Nevertheless, that concern of Congress does not warrant preemption under the express provision at issue here because the substantive behavior saved from

United States District Court

For the Northern District of California

1   preemption and proscribable by the states under *Gordon* is commensurate with the proscriptions

2   under the CAN-SPAM Act.  Only those e-mails which have materially deceptive or misleading

3   subject lines or header information are actionable.  *See id.* at 1063.  *Gordon's* interpretation ensures

4   "'one national standard' applicable across jurisdictions and prevents legitimate businesses from

5   being subjected to "inconsistent and possibly incompatible state regulations."  *Id.*  This assurance of

6   uniformity of substantive regulation is not upset by allowing variation in laws governing who may

7   bring suit.  Moreover, the risk of distorting the behavior of legitimate business as a result of any

8   chilling effect resulting from broader standing under California law is mitigated by the requirement

9   that to be saved from preemption acts of falsity or deception in e-mail advertisements must be

10  material and intended to deceive or likely to deceive.  *Gordon*, 575 F.3d at 1062.  Because "express

11  preemption statutory provisions should be given narrow interpretation," *id.* at 1060, the Court

12  concludes reliance and damages need not be demonstrated to save a lawsuit from preemption.

13  B.      Section 17529.5 Claim Based on Headers

14         Even though reliance and damages are not required for a § 17529.5 claim to be saved from

15  preemption, there is a portion of Asis's claim that is in fact preempted because it fails to meet the

16  standards established in *Gordon*.  In *Gordon*, the Ninth Circuit clearly held that falsity and deception

17  as used in the CAN-SPAM preemption provision require that a misrepresentation be material.  *See*

18  Gordon, 575 F.3d at 1062 (stating that "Congress did not intend that states retain unfettered freedom

19  to create liability for immaterial inaccuracies or omissions").  The Ninth Circuit agreed with the

20  Fourth Circuit's reasoning in *Omega World Travel* that "Congress could not have intended . . . to

21  allow states to enact laws that prohibit 'mere error' or 'insignificant inaccuracies . . . because

22  allowing a state to attach liability to bare immaterial error in commercial e-mails would be

23  inconsistent with the federal Act's preemption text and structure."  *Id.* at 1061.

24         In *Gordon*, the plaintiff had argued that the defendant sent e-mails that contained header

25  information which misrepresented or obscured the identity of the sender, and therefore violated

26  Washington's Commercial Electronic Mail Act (CEMA).  *See id.* at 1058.  The plaintiff conceded

27  that he was not deceived by the header information, but argued that "the headers in the e-mails . . .

28  violated CEMA because they fail[ed] to clearly identify [the defendant] as the e-mails' sender."  *Id.*

**United States District Court**
For the Northern District of California

1   at 1063. He further claimed that the additional step of consulting "a WHOIS-type database" in

2   order to ascertain the identity of the sender caused the CEMA violation as well. *See id.* at 1064.

3       Similar to the plaintiff in *Gordon*, Asis contends here that MSM violated § 17529.5 when it

4   sent thousands of e-mails with header information that was "materially false or materially

5   misleading." Compl. ¶ 32. Asis argued that the header information was false or misleading because

6   the messages were sent from accounts with domain names such as "greenthe.com,"

7   "consumerbargrewards.com," and "innocenttruthrevealed.com." Compl. ¶ 32. Asis further argued

8   that, like Gordon, it had to undertake a "WHOIS" check of the domain name registration, which

9   indicated that the domain names were registered using a privacy service that conceals the true

10   identity of the domain name registrant. *See* Compl. ¶ 32. Asis also alleged that at least 1,856 e-

11   mails were sent from IP addresses that were "obtained through false representations." The basis of

12   this claim stems from the allegation that the purported sub-lessee of the IP addresses, Frank Peters,

13   provided a mailing address and Asis' investigations indicated that no Frank Peters resided at the

14   address. *See* Compl. ¶ 33.

15       These claims, however, amount to the same allegations that Gordon made: that the header

16   information was deceptive because it did not clearly identify MSM as the sender. *See Gordon*, 575

17   F.3d at 1063. Nevertheless, the Ninth Circuit determined, "[t]here is nothing inherently deceptive in

18   . . . [the] use of fanciful domain names." *Id.* This is not a situation where, *e.g.*, the recipient

19   receives an e-mail indicating the sender was an actual person known to the recipient, but, in fact,

20   was sent by an advertiser. *See Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, slip op., at 11

21   (N.D. Cal. Mar. 31, 2010) (Docket No. 107). Because the Court concludes that the alleged

22   misrepresentations contained in the headers are not material as required by *Gordon*, the § 17529.5

23   claim based on the headers has "no basis in traditional tort theories," and this portion of Asis's claim

24   is therefore preempted.[4]

25

26

27 _____

28       [4] The Court notes that *Gordon* did not analyze the facial validity of the state statute, but determined preemption on an as-applied basis to the particular claims brought under the statute.

C.      Section 17529.5 Claim Based on Subject Lines

In contrast to the header information allegations, Asis's allegations regarding the subject lines go well beyond immaterial inaccuracies or omissions.  Asis alleges that MSM violated § 17529.5 when it sent 5,006 e-mails containing subject lines that were materially false and would be likely to mislead a recipient about the contents of the message.  *See* Compl. ¶ 35.  The subject lines in the e-mails sent by MSM -- *e.g.*, "Wal*Mart 500 Dollar Gift Card Inside," Second Attempt: $500 Target Gift Card Inside," and "Second Attempt: Victoria's Secret Gift Card Inside" -- intended to have the recipients open the e-mails by enticing them with free gifts.  *See* Compl. ¶ 35.  The e-mails, however, did not actually contain free gifts or gift cards.

One question that remains is whether the recipient is likely to be deceived by these subject lines, a question of fact that should be answered by a jury, unless "[n]o reasonable trier of fact could conclude otherwise."  *Subscriberbase*, 2010 U.S. Dist. LEXIS 33645, at *5 (citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006)).  In this case, a reasonable trier of fact could find that recipients of e-mails with these subject lines could likely be deceived.  MSM allegedly sent several thousand e-mails containing subject lines representing to the recipients that the message contained free gift certificates, when, in fact, they did not.  These allegations are nearly identical to those allegations it made in *Subscriberbase* where Judge Conti found that "a reasonable fact finder could conclude that a large number of the subject lines could mislead a reasonable recipient."  *Id.* at *13.

Judge Conti ultimately concluded that "plaintiffs' theory is grounded in a much more substantial variety of intentional deception" and thus was not preempted.  *Id.* at *33.  This Court likewise finds that Asis has sufficiently alleged a material claim arising from the traditional tort theories, and thus its claim under § 17529.5(a)(3) to the extent based on the subject lines (and not the headers) is not preempted by the CAN-SPAM Act.

D.      Supplemental Jurisdiction

Because this Court finds that Asis's claim under § 17529.5(a)(3) is not entirely preempted, it must next determine whether to maintain supplemental jurisdiction over this remaining claim.  As

United States District Court

For the Northern District of California

1   noted above, previously, the Court dismissed the CAN-SPAM Act, leaving only the § 17529.5

2   claim.  *See* Docket No. 79 (order).

3        Whether or not to exercise supplemental jurisdiction is a matter of discretion.  *See* 28 U.S.C.

4   § 1367(c)(3) (providing that a district court "may decline to exercise supplement jurisdiction over a

5   claim under subsection (a) if . . . the district court has dismissed all claims over which it has original

6   jurisdiction").  Factors that are generally considered in making this determination include the values

7   of judicial economy, convenience, fairness, and comity.  The Supreme Court has held that, "in the

8   usual case in which all federal-law claims are eliminated before trial, the balance of [the above]

9   factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."

10   *Carnegie-Mellon Univ.*, 484 U.S. 343, 350 n.7.  Lower courts have indicated that exercising

11   supplemental jurisdiction would be inefficient, inconvenient, and unfair in cases where the action

12   has carried on for a relatively short period of time; where only a small amount, if any, of the

13   discovery has been completed; where dismissal of the federal claim occurred at a relatively early

14   stage; and where the court has not decided substantive or dispositive motions.  *See Trustees of the*

15   *Construction Industry and Laborers Health and Welfare Trust v. Desert Valley Landscape &*

16   *Maintenance, Inc.*, 333 F.3d 923 (9th Cir. 2003); *Valencia v. Lee*, 316 F.3d 299 (2d Cir. 2003).

17   Conversely, where the case is ready for trial it is proper for the court to exercise supplemental

18   jurisdiction.

19        Weighing the above factors, this Court concludes that it is proper to decline supplemental

20   jurisdiction over that part of the § 17529.5 claim that is not preempted.  Even though this case was

21   originally filed two years ago, other factors regarding fairness to the parties and the efficient use of

22   judicial resources weigh in favor of declining jurisdiction.  This case is not one where a trial date is

23   near, whereby declining to exercise jurisdiction over the remaining state law claim so close to the

24   beginning of trial would cause a great deal of unfairness to the parties.  Discovery has been allowed,

25   but only in very limited circumstances to maintain the status quo of electronic documents.  Thus, the

26   parties have not themselves expended a great deal of resources and time in carrying out discovery.

27   Aside from the motion to stay, which essentially froze the litigation for over a year, and the motion

28   to dismiss the federal claim, there have been no other substantive or dispositive rulings from this

Court.  Overall, this would not be an appropriate case to retain jurisdiction over, and so this Court declines to exercise supplemental jurisdiction.  Little has been invested herein in litigating the § 17529.5 claim based on the subject lines.

Because this action did not originate in state court, there is no need to remand to the state court for adjudication.  *See Carnegie-Mellon Univ.*, 484 U.S. at 357; *Valencia*, 316 F.3d at 308. Thus, the remaining state law claim, specifically § 17529.5(a)(3), is dismissed without prejudice. *See Carnegie-Mellon Univ.*, 484 U.S. at 350.

## II.   CONCLUSION

For the foregoing reasons, the Court concludes that Asis's § 17529.5 claim is preempted to the extent based on the headers.  However, the § 17529.5 claim based on the subject lines is not preempted, but the Court declines supplemental jurisdiction over the claim.  Because the § 17529.5 claim did not originate in state court, the Court **DISMISSES** the non-preempted portion without prejudice.

The Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file in this case.


IT IS SO ORDERED.


Dated:  April 20, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

10